IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER, | )<br>)<br>) |
| Plaintiff, | ) Case No. 22-108 |
| v. | )<br>) |
| TENNESSEE VALLEY AUTHORITY, | )<br>) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Southern Environmental Law Center ("SELC") respectfully alleges as follows:

### NATURE OF THE ACTION

1. This Freedom of Information Act ("FOIA") suit challenges Defendant Tennessee Valley Authority's ("TVA" or the "agency") unlawful failure to fully disclose public records in response to Plaintiff's request.

2. SELC, a nonprofit public interest organization dedicated to protecting the environment of the Southeast, requested information in TVA's custody about the agency's communications with gas companies regarding planned methane infrastructure projects.

3. TVA responded by sending two severely redacted contracts describing finished deals between the agency and gas companies.

1

4. TVA attempted to justify its heavy redactions by citing FOIA "Exemption 4" and "Exemption 5." Because those exemptions do not apply to the information that TVA redacted from the subject contracts, TVA should be required to disclose the requested information.

5. SELC seeks a declaration that TVA's application of FOIA's exemptions was unlawful. SELC also requests an order directing TVA to disclose the documents at issue to the extent FOIA requires.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this FOIA action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201, and 5 U.S.C. § 552(a)(4)(B).

7. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B), which provides for judicial review in the district "in which the agency records are situated"; under 28 U.S.C. § 1391(b)(2), which provides for venue in a district in which a substantial part of the events or omissions giving rise to the claim occurred; under 28 U.S.C. § 1391(e), which provides for venue in the district in which a defendant resides or in which substantial part of the events or omissions giving rise to the claim occurred in actions against an agency of the United States; and/or under 28 U.S.C. § 1391(c)(2), which provides for venue in a district where the defendant is subject to the court's personal jurisdiction.

## PARTIES

### TVA

8. Defendant TVA is a corporate agency and instrumentality of the United States created by and existing pursuant to the Tennessee Valley Authority Act of 1933. *See* 16 U.S.C. § 831 *et seq.* ("the TVA Act"). The TVA Act provides that TVA "[m]ay sue or be sued in its corporate name." 16 U.S.C. § 831c(b).

9. TVA is an "agency" within the definition provided by FOIA. *See* 5 U.S.C. § 551(1).

10. TVA maintains its headquarters and FOIA office in Knoxville, Tennessee.

11. TVA has possession or control of the information at issue in this case.

### Southern Environmental Law Center

12. Plaintiff SELC is a 501(c)(3), nonprofit public interest environmental law firm with a focus on six Southeastern states.

13. SELC is a "person" within the definition provided by FOIA. *See* 5 U.S.C. § 551(2).

14. SELC uses public advocacy and the law to protect the people and the natural resources of the Southeast and, in particular, to gather, analyze, and disseminate public information about activities affecting human health and the environment in the Southeast. SELC disseminates public information it gathers to the general public through its website, *southernenvironment.org*, which is updated regularly, as well as press releases, social media, and public comment letters. SELC

3

attorneys regularly attend and speak at public meetings and hearings throughout the region, informed by and sharing their analysis of public information.

15. SELC has submitted public comments on TVA's power generation plans throughout the Southeast on its own behalf and on behalf of other interested organizations. Those comments include descriptions of the impacts of the methane gas generation projects that would be served by the infrastructure addressed by the redacted contracts. SELC has also made information about TVA's methane gas projects available to the public through articles on its website. SELC is hampered in its efforts to provide effective public advocacy on behalf of itself and organizations whose members are TVA ratepayers when the agency unlawfully denies access to public information like the contracts at issue in this case.

## SELC's FOIA REQUEST

16. On August 5, 2021, SELC requested information in TVA's custody relating to the agency's communications with methane gas companies. SELC requested that information to inform SELC's and other organizations' meaningful participation, on behalf of themselves and their members who are TVA ratepayers, in public processes undertaken by TVA and the Federal Energy Regulatory Commission relating to the agency's plans to build new methane gas-fired power plants throughout its territory.

17. A copy of SELC's FOIA request is attached as Exhibit 1.

18. TVA sent, as an interim response, two heavily redacted contracts called "Precedent Agreements." Those Precedent Agreements included: a contract between

4

TVA and Tennessee Gas Pipeline Company, attached as Exhibit 2, and a contract between TVA and East Tennessee Natural Gas, attached as Exhibit 3.

19. TVA cited 5 U.S.C. § 552(b)(4) (FOIA's "Exemption 4") as the basis for its redaction of the contracts.

20. When citing Exemption 4 as the basis for its redactions, TVA did not initially identify any foreseeable harm that would result from the disclosure of the redacted contract terms.

21. Each contract was negotiated at arms-length between TVA and a methane gas pipeline company.

22. Each contract was jointly authored by TVA, a public power company funded entirely by ratepayers, and a methane gas pipeline company.

23. Each contract demonstrates the parties' understanding that neither party was the instrument's sole drafter.

24. On February 2, 2022, while the request was still pending, SELC withdrew the remainder of its request.

25. On February 4, 2022, TVA sent a final determination letter regarding SELC's request and advising SELC of its appeal and mediation rights. A copy of that letter is attached as Exhibit 4.

26. On February 7, 2022, SELC timely appealed TVA's improper use of Exemption 4 to withhold large portions of the contracts. A copy of that appeal letter is attached as Exhibit 5 and incorporated herein by reference.

27. On March 7, 2022, TVA's FOIA appeals officer affirmed the agency's prior determination, citing FOIA Exemption 4 again and adding, for the first time, 5 U.S.C. § 552(b)(5) (FOIA's "Exemption 5") as a new reason for TVA to withhold the redacted information. A copy of TVA's letter conveying its appellate determination is attached as Exhibit 6.

28. TVA's appellate determination conveyed the gas pipeline companies' unsupported and vague assertions that revealing the Precedent Agreements would cause the gas pipeline companies competitive harm and that "TVA has no basis for questioning this statement." *See* Exhibit 6 at 1. TVA also added its own general language claiming that disclosure of the redacted portions of the Precedent Agreements would "reveal TVA's strategies for this type of transaction" and "undermine TVA's ability to conduct . . . future negotiations." *Id.*

29. SELC has exhausted the administrative remedies available to it under FOIA and the applicable TVA implementing regulations. 18 C.F.R. § 1301.9(e).

## **FOIA EXEMPTIONS 4 AND 5**

30. The Freedom of Information Act reflects "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quoting legislative history) (internal quotation marks omitted). FOIA "seeks to ensure that government officials are held accountable to an informed electorate," and "'[d]isclosure, not secrecy, is the dominant objective of the Act.'" *Schell v. U.S. Dep't of Health & Hum.*

6

*Servs.*, 843 F.2d 933, 937 (6th Cir. 1988) (quoting *Department of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

31. In 2016, Congress added language amending FOIA to further clarify, among other things, that an agency can <u>only</u> withhold information when it "reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)." FOIA Improvement Act of 2016, Pub. L. No. 114-185, § 2, 130 Stat. 538, 539 (2016).

32. Exemption 4 permits an agency sometimes to withhold "trade secrets and commercial or financial information <u>obtained from a person</u> and privileged or confidential." 5 U.S.C. § 552(b)(4) (emphasis added). Although Exemption 4 is intended to promote candor with federal agencies, it is not intended to allow federal agencies to shield legally binding contracts from public view. *See Racal-Milgo Gov't Sys. v. Small Bus. Admin.*, 559 F. Supp. 4, 6 (D.D.C. 1981).

33. TVA's FOIA implementing regulations require that, for commercial information to be withheld, the submitter "must use good faith efforts to designate by appropriate markings, <u>at the time of submission</u>, any portion of its submission that it considers to be protected from disclosure under Exemption 4." 18 C.F.R. § 1301.8(b) (emphasis added).

34. Exemption 5 allows an agency to withhold some "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption only applies if a document is "both predecisional and deliberative," *Schell v. U.S.*

7

*Dep't of Health & Hum. Servs.*, 843 F.2d 933, 940 (6th Cir. 1988) (internal quotation marks omitted), and "a claim of commercial privilege based on anything other than executive privilege or the attorney-client privilege must be viewed 'with caution' when arising in the context of Exemption 5," *see Morrison-Knudsen Co. v. Dep't of the Army of U.S.*, 595 F. Supp. 352, 355–56 (D.D.C. 1984) (quoting *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 355 (1979)).

## CLAIM FOR RELIEF

**Count 1 - TVA Violated FOIA by Failing to Fully Disclose the Contracts**

35. All allegations stated above are incorporated herein by reference.

36. The Precedent Agreements are "information" within the meaning of 5 U.S.C. § 552(a)(1)(A).

37. Exemption 4 sometimes allows an agency to withhold "trade secrets and commercial or financial information <u>obtained from a person</u> and privileged or confidential." That exemption does not apply to the Precedent Agreements because TVA did not obtain those contracts from anyone. TVA jointly created them in collaboration with its business partners, the gas pipeline companies.

38. Because TVA paid its lawyers to jointly craft the subject contracts during arms-length negotiations, it cannot legitimately claim that those same contracts are "information obtained from a person" and thus shielded from disclosure under Exemption 4. *See, e.g.*, *Det. Watch Network v. United States Immigr. & Customs Enf't*, 215 F. Supp. 3d 256, 263 (S.D.N.Y. 2016) (holding Exemption 4 did not apply to contract terms "negotiated and agreed on by the Government, as one

8

would expect in an arms-length transaction" because the information was "not obtained from a person" within the meaning of Exemption 4); *Bloomberg, L.P. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 601 F.3d 143, 149 (2d Cir. 2010) ("[I]t cannot be said that the government 'obtained' information as to its own acts and doings from external sources or persons."); *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 68 (D.D.C. 2012) ("[T]he mere fact that information was the product of negotiations between a 'person' and the agency does not make that information 'obtained from a person' under Exemption 4.").

39. Courts routinely hold that FOIA Exemption 4 does not allow an agency to withhold every detail of deals that it makes with private parties. *See, e.g.*, *Cause of Action Institute v. Export-Import Bank of the United States*, 2022 WL 252028, at *17 (D.D.C. Jan. 27, 2022) (ordering disclosure of "the terms of a guarantee" made by government defendant to private company); *Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 525 F. Supp. 3d 90, 97 (D.D.C. 2021) (ordering disclosure of names and addresses of labs with whom defendant worked); *WP Co. LLC v. U.S. Small Bus. Admin.*, 502 F. Supp. 3d 1, 16 (D.D.C. 2020) (ordering disclosure over agency's FOIA-based objection of the "names, addresses, and precise loan amounts of all . . . borrowers" participating in the Paycheck Protection Program); *see also Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin.*, 559 F. Supp. 4, 6 (D.D.C. 1981) ("Disclosure of prices charged the Government is a cost of doing business with the Government. It is unlikely that companies will stop competing for Government contracts if the prices contracted for are disclosed.").

40. The Precedent Agreements do not contain a "confidential" or comparable watermark, header, or footer specifically designating the agreements confidential under Exemption 4.

41. An agency cannot justify withholding a completed contract under Exemption 5 on the basis that disclosure would harm the agency's commercial interests or frustrate its mission <u>after</u> the contract has been awarded. *Merrill*, 443 U.S. at 360 (1979) ("The theory behind a privilege for confidential commercial information generated in the process of awarding a contract, however, is . . . that the Government will be placed at a competitive disadvantage or that the consummation of the contract may be endangered. Consequently, the rationale for protecting such information expires <u>as soon as the contract is awarded</u> or the offer withdrawn.") (emphasis added); *see also Taylor-Woodrow Int'l v. U.S. Dep't of Navy*, 1989 WL 1095561, at *3 (W.D. Wash. Apr. 5, 1989) ("Normally, once the government awards a contract, all negotiations end and the contract price becomes fixed. In that instance, there would be no reason to continue to withhold the information.").

42. Under the FOIA Improvement Act of 2016, agencies may withhold information "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in [FOIA] subsection (b)." 5 U.S.C. 552(a)(8)(A)(i).

43. Neither TVA's unqualified acceptance of the gas pipeline companies' generic assertions that revealing the redacted information would cause harm, nor TVA's vague assertion that disclosure would interfere with the agency's mission,

satisfies the agency's obligation under FOIA to provide "a relatively detailed justification for its withholding, specifically identifying the reasons why a particular exemption is relevant." *Naumes v. Dep't of the Army*, 2022 WL 594541, at *2 (D.D.C. Feb. 28, 2022).

44. The redactions include material that appears to describe the parties' obligations to comply with federal environmental law. The redactions include, for example, all of the text following a heading that reads "Shipper's Project Environmental Reviews." *See* Exhibit 2 at 14.

45. TVA's redactions are unwarranted and overly broad as explained in SELC's appeal letter attached as Exhibit 5. That appeal letter is incorporated herein by reference.

46. SELC has a statutory right to receive copies of the Precedent Agreements under FOIA unredacted if no exemption applies or, if an exemption does apply in part, copies with only those redactions that are proper under the applicable exemption. *See* 5 U.S.C. § 552.

47. Other than Exemptions 4 and 5, TVA has not cited any other basis for withholding the redacted portions of the Precedent Agreements.

48. Neither Exemption 4, 5, nor any other statutory exemption justifies withholding the redacted portions of the Precedent Agreements.

49. TVA improperly withheld the redacted portions of the subject agreements.

50. By failing to fully disclose the agreements, TVA violated FOIA.

11

51. The subject contracts contain the kind of information about activities affecting human health and the environment in the Southeast that SELC regularly gathers, analyzes, and disseminates to the public. SELC needs to review the redacted contractual provisions to continue to fully participate in public decision-making processes about TVA's power generation decisions, and to determine whether TVA has complied with the National Environmental Policy Act (NEPA) in connection with its plan to build new gas plants.

52. SELC is directly and adversely aggrieved by TVA's failure to provide complete and unredacted records responsive to its FOIA request. TVA's failure to provide the complete Precedent Agreements hampers SELC's ability to engage in advocacy on behalf of organizations whose members are TVA ratepayers before the Federal Energy Regulatory Commission, and it restricts SELC's ability to ascertain whether TVA has complied with the National Environmental Policy Act (NEPA).

53. Unless ordered by this Court to fully disclose the agreements, TVA will continue to improperly withhold public information from SELC in violation of FOIA.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations contained in the foregoing paragraphs, SELC respectfully requests relief in the form of an order:

a) declaring that TVA violated FOIA by improperly withholding portions of public records;

b) directing TVA to provide unredacted copies of the Precedent Agreements, or copies with only those redactions the Court deems proper, without delay;

c) awarding SELC its reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

d) awarding SELC such other relief as the Court deems just and proper.

Respectfully submitted this 24th day of March 2022,

s/ Amanda Garcia
Amanda Garcia, BPR#033773
Southern Environmental Law Center
1033 Demonbreun Street, Suite 205
Nashville, TN 37203
Telephone: (615) 921-9470
Facsimile: (615) 921-8011
agarcia@selctn.org

*Attorney for Southern Environmental Law Center*