# Exhibit 5



February 7, 2022

*Via Email to* foia@tva.gov
*and Certified Mail, Return Receipt Requested to:*

TVA FOIA Appeals Official
Tennessee Valley Authority
400 W. Summit Hill Drive (WT 7C)
Knoxville, TN 37902–1401

**RE:  Appeal of TVA Response to FOIA Request #21-FOI-00178**

Under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, the Southern Environmental Law Center ("SELC") appeals the Tennessee Valley Authority's ("TVA") decision to redact large portions of two contracts produced in response to the above referenced FOIA request.  On August 5, 2021, SELC requested:

> Records of communications, including all attachments thereto, with Tennessee Gas Pipeline, Kinder Morgan, Texas Eastern Transmission, East Tennessee Natural Gas, or Enbridge regarding possible or planned gas infrastructure projects, including pipelines, compressor stations, and gas plants, to be constructed after January 2021.[1]

In an interim response to that request, TVA released redacted copies of two contracts: (1) a precedent agreement between TVA and Tennessee Gas Pipeline Company ("TGPC"), and (2) a precedent agreement between TVA and East Tennessee Natural Gas ("ETNG").[2]  On February 2, 2022, SELC agreed to withdraw the remainder of its request, and TVA sent a final determination letter on February 4, 2022 advising SELC of its right to appeal within 90 days of the date of that letter.[3]

TVA heavily redacted the two contracts that it produced.  The redactions all cited as their basis 5 U.S.C. §552(b)(4)—FOIA "Exemption 4," which sometimes allows an agency to withhold "trade secrets and commercial or financial information <u>obtained from a person</u> and privileged or confidential." (emphasis added).  Exemption 4 does not apply because TVA did not "obtain" the subject contracts from anyone.  TVA jointly created them.  TVA, in collaboration with its business partners (the gas companies), jointly created the contracts during arms-length negotiations.  Because TVA paid its lawyers to craft the provisions of the redacted agreements, TVA

---

[1] SELC's Request is included here as Attachment 1.
[2] Copies of the agreements are included here as Attachments 2 and 3, respectively.
[3] A copy of TVA's final determination letter is included here as Attachment 4.

cannot legitimately claim that those contract provisions are "information obtained from a person" under Exemption 4.

The fact that TVA created the subject contract provisions during arms-length negotiations is reflected by the agreements themselves, which provide for example that "[e]ach and every provision of this Precedent agreement shall be considered as prepared through the joint efforts of the Parties."[4] Because Courts do not permit agencies to use Exemption 4 to withhold contract provisions created by an agency,[5] TVA is required to produce unredacted copies of the contracts.

In addition, assuming *arguendo* that the redacted contract provisions fall within the scope of Exemption 4 (which they don't), TVA cannot withhold those provisions because TVA as not identified any harm that would arise from their disclosure. Under the FOIA Improvement Act of 2016, agencies may withhold information "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in [FOIA] subsection (b)."[6] TVA has not identified any harm at all that would occur by releasing the remaining portions of the redacted agreements. Moreover, courts routinely hold that FOIA Exemption 4 does not allow an agency to withhold every detail of deals that it makes with private parties.[7]

Further, TVA's own FOIA regulations provide that, in order for commercial information to be withheld, the submitter "must use good faith efforts to designate by appropriate markings, at the time of submission, any portion of its submission that

---

[4] *See* Attachment 3, ETNG Agreement at §17(C). The TGCP Agreement contains simpler language capturing the same intent: "[n]o presumption shall operate in favor of or against any Party as a result of any responsibility or role that any Party may have had in the drafting of this Agreement." *See* TGCP Agreement at §12.H.

[5] *See, e.g.*, *Det. Watch Network v. United States Immigr. & Customs Enf't*, 215 F. Supp. 3d 256, 263 (S.D.N.Y. 2016) (holding Exemption 4 did not apply to contract terms "negotiated and agreed on by the Government, as one would expect in an arms-length transaction" because the information was "not obtained from a person" within the meaning of Exemption 4); *Bloomberg, L.P. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 601 F.3d 143, 149 (2d Cir. 2010) ("[I]t cannot be said that the government 'obtained' information as to its own acts and doings from external sources or persons."); *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 68 (D.D.C. 2012) ("[T]he mere fact that information was the product of negotiations between a 'person' and the agency does not make that information 'obtained from a person' under Exemption 4.").

[6] 5 U.S.C. 552(a)(8)(A)(i).

[7] *See, e.g.*, *Cause of Action Institute v. Export-Import Bank of the United States*, 2022 WL 252028, at *17 (D.D.C. Jan. 27, 2022) (ordering disclosure of "the terms of a guarantee" made by government defendant to private company); *Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 525 F. Supp. 3d 90, 97 (D.D.C. 2021) (ordering disclosure of names and addresses of labs with whom defendant worked); *WP Co. LLC v. U.S. Small Bus. Admin.*, 502 F. Supp. 3d 1, 16 (D.D.C. 2020) (ordering disclosure over agency's FOIA-based objection of the "names, addresses, and precise loan amounts of all . . . borrowers" participating in the Paycheck Protection Program); *see also Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin.*, 559 F. Supp. 4, 6 Government (D.D.C. 1981) ("Disclosure of prices charged the Government is a cost of doing business with the Government. It is unlikely that companies will stop competing for Government contracts if the prices contracted for are disclosed.").

it considers to be protected from disclosure under Exemption 4."[8]  None of that happened.  When the subject contracts were signed, no one submitted them to TVA with a "confidential" water mark or stamp or other "appropriate markings" indicating that the submitter was making good faith efforts to designate certain portions as being protected under Exemption 4.[9]  Thus, TVA's FOIA regulations require disclosure of the unredacted agreements.

Finally, even if the agreements contain some information that would be appropriate to withhold under Exemption 4, TVA's redactions are plainly overbroad. In the TGPC Agreement, for example, TVA redacted the content of a heading titled "Shipper's Project Environmental Reviews," despite those reviews being the subject of an ongoing, public National Environmental Policy Act ("NEPA") process.[10]  TVA also redacted the portion of the contract entitled "Reimbursement by Shipper of Reimbursable Costs" even though the Shipper (TVA) is a public utility accountable to its publicly appointed governing board and even though TVA's bond holders are entitled to accurate information about TVA's costs.[11]  In the ETNG agreement, the company's address and a definition of the "Kingston Project" are both redacted despite the address being readily available online and despite TVA's publicly available NEPA Scoping Report describing the Kingston Project in detail.[12]  In addition, TVA redacted portions of the contract entitled "Shipper Approvals" and "Termination" even though there is no reason to believe that those provisions contain confidential pricing information or other similar information arguably exempting them from disclosure.[13]  Likewise, TVA redacted portions of the "Definitions" section of the contract without any indication of why such information is confidential.[14]  Such redactions contravene FOIA's requirement that TVA release every "reasonably segregable" portion of the agreements, even if some parts are properly withheld.[15]

---

[8] 18 CFR § 1301.8(b).
[9] The ETNG agreement appears to contain no confidentiality provision. Although the TGCP agreement contains a confidentiality provision, the contract specifically permits disclosure "as requested or required by law, order, rule or regulation of any duly constituted governmental body." *See* Attachment 2, TGPC Agreement at § 12.I.
[10] *See* Attachment 2, TGCP Agreement at § 7.B.iv; *see also* TVA, *Cumberland Fossil Plant Retirement*, https://www.tva.com/environment/environmental-stewardship/environmental-reviews/nepa-detail/cumberland-fossil-plant-retirement.
[11] *See* Attachment 2, TGCP Agreement at § 9.
[12] *See* Attachment 3, ETNG Agreement at 4, 28; *see also* TVA, *Kingston Fossil Plant Retirement*, https://www.tva.com/environment/environmental-stewardship/environmental-reviews/nepa-detail/kingston-fossil-plant-retirement.
[13] *See* Attachment 3, ETNG Agreement at 8, 18.
[14] *Id.* at 2-7.
[15] *See, e.g.*, *Ramaci v. Fed. Bureau of Investigation*, 2021 WL 4896277, at *10 (S.D.N.Y. Oct. 20, 2021) ("Under FOIA, any 'reasonably segregable' information in a responsive record must be released.").

For the foregoing reasons, SELC respectfully requests that TVA release unredacted copies of both precedent agreements. If you have any questions regarding this request, please do not hesitate to contact me at (615) 921-9470 or gnolan@selctn.org.

Sincerely,

s/ *George Nolan*

George Nolan
Daniel J. Metzger
Southern Environmental Law Center