# Exhibit 6



**Tennessee Valley Authority**, 1101 Market Street, Chattanooga, Tennessee 37402

March 7, 2022

Mr. George Nolan (gnolan@selctn.org)
Southern Environmental Law Center
1033 Demonbreun Street, Suite 205
Nashville, TN 37203

Dear Mr. Nolan:

This responds to your February 7, 2022, appeal of the initial determination by the Tennessee Valley Authority (TVA) on the Southern Environmental Law Center's (SELC) Freedom of Information Act (FOIA) request for information related to gas pipeline companies. This request was processed under tracking number 21-FOI-00178. As noted in your appeal letter, TVA provided an interim response on October 28, 2021, and SELC withdrew the remainder of the request. By letter dated February 4, 2022, the FOIA Officer provided TVA's final response. For the reasons set forth below, this decision will be upheld on appeal.

Exemption 4 provides that agencies may withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). "Confidential" in this context refers to "commercial or financial information [that] is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Food Mktg. Inst. v. Argus Leader Media*, 139 S.Ct. 2356, 2366 (2019).

In accordance with TVA's standard practice, the FOIA Officer contacted the submitters of the requested information to determine if the information is considered confidential. The submitter stated that this information is confidential commercial information and reflects the submitter's proprietary approaches to planning, structuring, and operating natural gas transportation projects, which it shared with TVA only upon the condition that it be treated as confidential. The submitter has stated that revealing this information would cause it competitive harm, and TVA has no basis for questioning this statement.

Contrary to your assertions, the fact that TVA engaged in negotiations with the submitter does not mean that the contract cannot be covered by Exemption 4. Even negotiated provisions may include information provided by a counterparty which would reveal confidential commercial information if disclosed. Such material may still be subject to Exemption 4 and withheld. *See Pub. Citizen Health Rrsch. Grp. v. NIH*, 209 F. Sup. 2d 37, 44 and 49-51 (D.D.C. 2002) (holding that even though a final royalty rate was achieved through negotiation, the submitter was required to provide the information to the government in order to enter into an agreement and therefore it came from the submitter. Given that the information was confidential and could harm the submitter if released, Exemption 4 applied to the negotiated item). In this case, even those provisions negotiated between the parties reflect the submitter's proprietary strategy for these projects. As such, this material falls within the scope of Exemption 4. If TVA discloses this type of confidential information, companies would be deterred from seeking out contracts with TVA as opposed to other entities with whom they could do business, which would have the foreseeable harm of interfering with TVA's ability to carry out its statutory mission. Therefore, I find that Exemption 4 applies to this matter.

As to the suggestion that TVA's FOIA regulations require submitters to mark documents as confidential at the time they are created, this is a misunderstanding of TVA's regulations and the FOIA process. 18 CFR § 1301.8 describes the process by which those whose material may be subject to Exemption 4 are asked to describe whether they consider the material to be confidential. This process is not required to take place at any point prior to a FOIA request being received, nor is it a component of contract negotiation. As noted above, TVA's FOIA Officer requested the submitter to state whether the information was considered confidential and why, and the submitter did so. TVA is thus in compliance with its regulations.

I also note that while the FOIA Officer's initial determination only referenced FOIA Exemption 4, the information is also protected under Exemption 5. Exemption 5 allows the government to withhold, among other things, confidential business information if the release of such information would harm the government's commercial or financial interests or prevent an agency from performing its mission. The redacted information would, as with the submitter, reveal TVA's strategies for this type of transaction, and TVA treats these strategies as confidential in order to protect its ability to negotiate with counterparties in the future. Release of this information would significantly undermine TVA's ability to conduct such future negotiations.

Based on the foregoing, I concur in the initial determination.

This is TVA's final determination on this FOIA request. Under the FOIA, you have the opportunity to seek judicial review of this final determination. The provisions of 5 U.S.C. § 552(a)(4)(B) provide the processes for seeking such review.

Alternatively, the Office of Government Information Services (OGIS), and the Federal FOIA Ombudsman, offer mediation services to resolve disputes between FOIA requesters and federal agencies as a non-exclusive alternative to litigation.  Using OGIS services does not affect your right to pursue litigation.  You may contact OGIS in any of the following ways:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road (OGIS)
College Park, MD 20740-6001
ogis@nara.gov
ogis.archives.gov
Phone: 202-741-5770
Phone (toll-free) 1-877-684-6448

Sincerely,

Buddy Eller
Vice President, Communications & Public Relations