# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER, | ) ) ) | |
| Plaintiff, | ) ) | No. 3:22-cv-00108-DCLC-DCP |
| v. | ) ) | |
| TENNESSEE VALLEY AUTHORITY, | ) ) | |
| Defendant, and | ) ) ) | |
| EAST TENNESSEE NATURAL GAS, LLC, | ) ) ) | |
| Intervenor. | ) | |

## SOUTHERN ENVIRONMENTAL LAW CENTER'S
## MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

George Nolan, BPR#014974
Amanda Garcia, BPR#033773
Daniel J. Metzger, BPR#039187
Southern Environmental Law Center
1033 Demonbreun Street, Suite 205
Nashville, TN 37203
Telephone: (615) 921-9470
Facsimile: (615) 921-8011
gnolan@selctn.org
agarcia@selctn.org
dmetzger@selctn.org

TABLE OF CONTENTS

INTRODUCTION AND SUMMARY .......................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ........................................................................................................................4

    I.      Legal Standard Under FOIA ..........................................................................4

    II.    The Precedent Agreements are not "information obtained from a person" within
       the meaning of Exemption 4 because TVA co-created the agreements. ........................5

    III.   TVA's redactions are not proper under FOIA Exemption 5 because the Precedent
       Agreements are final contracts no longer subject to competition....................................7

    IV.   In the alternative, if the Precedent Agreements fall within the scope of a FOIA
       exemption (which they don't), TVA cannot withhold those contracts because
       TVA cannot establish that disclosure will harm an interest protected by FOIA. ...........10

    V.    If TVA is allowed to redact anything, it should only be allowed to redact pricing
       information, engineering specifications, construction timelines, product formulas,
       credit worthiness representations, and insurance amounts. ...........................................12

    CONCLUSION...................................................................................................................13

Case 3:22-cv-00108-DCLC-DCP    Document 26    Filed 05/27/22    Page 2 of 20
PageID #: 257

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                **Page(s)**

*100Reporters v. United States Dep't of State*,
   2022 WL 1223709 (D.D.C. Apr. 26, 2022) ...........................................................................11

*Am. Soc'y of Pension Actuaries v. I.R.S.*,
   746 F. Supp. 188 (D.D.C. 1990) ...................................................................................9

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
   601 F.3d 143 (2d Cir. 2010)..........................................................................................5

*Burkholder v. Peters*,
   58 F. App'x 94 (6th Cir. 2003).....................................................................................13

*Carney v. U.S. Dep't of Just.*,
   19 F.3d 807 (2d Cir. 1994)............................................................................................5

*Cause of Action Inst. v. Export-Import Bank of the United States*,
   No. 19-1915, 2022 WL 252028 (D.D.C. Jan. 27, 2022)...............................................6

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979)......................................................................................................7

*Detention Watch Network v. United States Immigration and Customs
Enforcement*,
   215 F. Supp. 3d 256 (S.D.N.Y. 2016)..........................................................................6

*Fed. Credit Union v. Nat'l Credit Union Admin.*,
   No. Civ.A. 96–478–A, 1996 WL 33497625 (E.D. Va. Dec. 24, 1996)........................9

*Fed. Open Mkt. Comm. v. Merrill*,
   443 U.S. 340, 355 (1979).............................................................................................8

*Food Marketing Institute v. Argus Leader Media*,
   139 S. Ct. 2356 (2019)................................................................................................12

*Forest Guardians v. U.S. Fish & Wildlife Serv.*,
   611 F.3d 692 (10th Cir. 2010) ....................................................................................13

*Gen. Motors Corp. v. Marshall*,
   654 F.2d 294, 297 (4th Cir. 1981) ................................................................................7

*Gov't Land Bank v. Gen. Servs. Admin.*,
   671 F.2d 663 (1st Cir. 1982).........................................................................................9

*Hack v. Dep't of Energy*,
   538 F. Supp. 1098 (D.D.C. 1982) ................................................................................9

Case 3:22-cv-00108-DCLC-DCP    Document 26    Filed 05/27/22    Page 3 of 20
PageID #: 258

*Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  525 F. Supp. 3d 90 (D.D.C. 2021) ..................................................................................6

*Martin Marietta Aluminum, Inc. v. Adm'r, Gen. Servs. Admin.*,
  444 F. Supp. 945 (C.D. Cal. 1977) ................................................................................9

*MCI Telecomms. Corp. v. Gen. Servs. Admin.*,
  No. 89–0746, 1992 WL 71394 (D.D.C. Mar. 25, 1992)..................................................8

*Milner v. Dep't of Navy*,
  562 U.S. 562 (2011).......................................................................................................4

*Morrison-Knudsen Co. v. Dep't of the Army*,
  595 F. Supp. 352 (D.D.C. 1984) .................................................................................8, 9

*Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*,
  36 F. Supp. 3d 384 (S.D.N.Y. 2014)..............................................................................6

*Payne Enters., Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) .......................................................................................8

*Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin.*,
  559 F. Supp. 4 (D.D.C. 1981) ........................................................................................7

*Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*,
  3 F.4th 350 (D.C. Cir. 2021) ........................................................................................11

*Rimmer v. Holder*,
  700 F.3d 246 (6th Cir. 2012) .........................................................................................5

*Rugiero v. U.S. Dep't of Just.*,
  257 F.3d 534 (6th Cir. 2001) ................................................................................4, 5, 12

*S. All. for Clean Energy v. U.S. Dep't of Energy*,
  853 F. Supp. 2d 60 (D.D.C. 2012) .................................................................................5

*Schell v. U.S. Dep't of Health & Hum. Servs.*,
  843 F.2d 933 (6th. Cir. 1988) .....................................................................................4, 8

*Synopsis, Inc. v. U.S. Dep't of Lab.*,
  Nos. 20-16414, 20-16416, 2022 WL 1501094 (9th Cir. May 12, 2022)..................................7

*Taylor-Woodrow Int'l, Ltd. v. U.S. Dep't of Navy*,
  No. C88-429R, 1989 WL 1095561 (W.D. Wash. Apr. 5, 1989) ...........................................9

*Vaughn v. Rosen*,
  484 F.2d 820 (D.C.Cir.1973) .......................................................................................12

*WP Co. v. U.S. Small Bus. Admin.*,
　502 F. Supp. 3d 1 (D.D.C. 2020) ...............................................................................7

**Statutes**

5 U.S.C. § 552 .............................................................................................................1

5 U.S.C. § 552(a)(8)(A)(i)(I) .................................................................................4, 10

5 U.S.C. § 552(b) ......................................................................................................12

5 U.S.C. § 552(b)(4) .................................................................................................3, 5

5 U.S.C. § 552(b)(5) .................................................................................................3, 7

16 U.S.C. § 831 *et seq.*..............................................................................................1

18 U.S.C. § 1905.........................................................................................................7

FOIA Improvement Act of 2016, Pub. L. No. 114-185 (2016) .....................................10

National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*................................1, 13

**Other Authorities**

DEP'T OF JUSTICE GUIDE TO THE FREEDOM OF INFORMATION ACT (2019) .......................8

Federal Rule of Civil Procedure 56 .........................................................................2, 5

House Report No. 94-880 (1976)................................................................................7

Memorandum for Heads of Departments and Agencies from Attorney Gen. Janet
　Reno Regarding the Freedom of Information Act (Oct. 4, 2013)...........................10

Senate Report No. 114-4 (2015) ...............................................................................10

TVA, Annual Report Pursuant to Section 13, 15(D), or 37 of the Securities
　Exchange Act of 1934 (Form 10-K) (Nov. 15, 2021)..............................................1

## INTRODUCTION AND SUMMARY

This litigation is an action under the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552. Plaintiff Southern Environmental Law Center ("SELC") filed this litigation requesting complete copies of two government contracts signed by Defendant Tennessee Valley Authority ("TVA").

TVA is the largest public power utility in the United States. As a public power utility, virtually all of TVA's funding comes from electricity ratepayers.[1]

A creature of federal statute, TVA was established by an act of Congress, specifically the TVA Act of 1933. 16 U.S.C. § 831 *et seq.* As a federal agency, TVA is subject to FOIA. 5 U.S.C. § 552. Because FOIA encourages public disclosure, rather than government secrecy, the statute does not allow a federal agency like TVA to play hide-the-ball when asked to disclose written contracts reflecting how the agency spends public funds.

TVA is in the process of deciding whether to replace aging coal-burning power plants with new methane-burning facilities. Under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, TVA is required to complete a public facing environmental review process, including a thorough analysis of reasonable alternatives, before deciding to replace coal-burning plants with methane-burning plants or some other form of power generation. TVA hasn't completed that NEPA analysis. Instead of completing the required alternatives analysis before making a final decision, TVA signed written contracts apparently committing itself to spending billions of ratepayer dollars building new gas plants and purchasing the gas that each will burn.

---

[1] Tenn. Valley Auth, Annual Report Pursuant to Section 13, 15(D), or 37 of the Securities Exchange Act of 1934 (Form 10-K) (Nov. 15, 2021) at 11–12, https://www.sec.gov/ix?doc=/Archives/edgar/data/0001376986/000137698621000028/tve-20210930.htm.

Accordingly, pursuant to FOIA, Plaintiff SELC requested copies of those signed written contracts.

In response to SELC's request, TVA produced heavily redacted copies of the signed contracts. By blacking-out huge portions of those written agreements, in violation of FOIA, TVA is preventing ratepayers from holding it accountable for its spending decisions and its environmental review obligations.

TVA now attempts to justify its heavy redactions by relying on FOIA Exemptions 4 and 5, and it relies upon those exemptions even though the exemptions say nothing about shielding bilateral government contracts from public view. As explained below, FOIA requires TVA to produce signed contracts. No exemption contained in the statute provides otherwise. Because Congress intended FOIA to help citizens hold their government accountable, courts routinely require federal agencies to produce information contained in government contracts.

Pursuant to Fed. R. Civ. P. 56, Plaintiff SELC requests entry of summary judgment adjudicating the legal issues raised in this FOIA litigation. Specifically, Plaintiff requests an order directing TVA to produce the subject contracts to the extent FOIA requires.

## BACKGROUND

### SELC's FOIA Request

On August 5, 2021, SELC requested information in TVA's custody relating to the agency's communications with methane gas pipeline companies. Dkt. 1-6. In response to that request, TVA produced two heavily redacted signed contracts called "Precedent Agreements." Those Precedent Agreements included a contract between TVA and Tennessee Gas Pipeline Company (the "TGP Contract," Dkt. 1-7) and a contract between TVA and East Tennessee Natural Gas (the "ETNG Contract," Dkt. 1-8). Before producing those signed contracts, TVA blacked-out huge portions of them. *See, e.g.*, ETNG Contract at 3–27.

2

TVA originally cited FOIA Exemption 4 as the basis for its redactions. Dkt. 1-9. Exemption 4 sometimes allows an agency to withhold records that are "trade secrets and commercial or financial information <u>obtained from a person</u> and privileged or confidential." 5 U.S.C. § 552(b)(4) (emphasis added). SELC filed a timely administrative appeal asserting, *inter alia*, that the jointly created agreements were not "obtained from a person" as contemplated by Exemption 4 and therefore are not shielded from public review. Dkt. 1-10. TVA did not "obtain" those bilateral contracts from anyone. Rather, TVA paid its legal counsel to create those instruments during arms-length contract negotiations.

### TVA's Appellate Determination

On appeal, TVA upheld its initial decision to apply Exemption 4, and it added another justification for the agency's redactions: FOIA Exemption 5. Dkt. 1-11 at 3. FOIA Exemption 5 sometimes allows an agency to withhold "inter-agency or intra-agency <u>memorandums or letters</u> that would not be available by law to a party other than an agency in litigation with the agency . . . ." 5 U.S.C. § 552(b)(5) (emphasis added). The exemption says nothing about shielding final signed government contracts from disclosure.

TVA's appellate determination also stated that TVA had contacted the pipeline companies to determine whether the information was confidential, and that those submitters said it was. Dkt. 1-11 at 2. TVA asserted that "[t]he submitter has stated that revealing this information would cause it competitive harm, and TVA has no basis for questioning this statement." *Id.* Other than making that bald assertion, TVA did virtually nothing to establish that producing unredacted Precedent Agreements will harm an interest protected by a FOIA exemption.

### The Precedent Agreements

The two contracts are materially the same for purposes of this motion. Each is a final

3

bilateral agreement negotiated between TVA and a business partner, and each is signed by the contracting parties. Each legal instrument governs the purchase and delivery of methane gas for a potential TVA power plant, one at Kingston and one at Cumberland City, Tennessee. TGP Contract at 1; ETNG Contract at 2.

The unredacted portions of the Precedent Agreements confirm that, when the parties prepared the contracts, they shared responsibility for jointly creating those documents: In the ETNG Contract, TVA and ETNG wrote: "Each and every provision of this Precedent Agreement shall be considered as prepared through the joint efforts of the Parties and shall not be construed against either Party as a result of the preparation or drafting thereof." ETNG Contract at § 17(C). The TGP Contract comparably states that "[n]o presumption shall operate in favor of or against any Party as a result of any responsibility or role that any Party may have had in the drafting of this Agreement." TGP Contract at § 12(H).

<u>**ARGUMENT**</u>

**I.      Legal Standard Under FOIA**

Congress enacted FOIA to ensure public access to information by creating a judicially enforceable public right to obtain information from government agencies. *See Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). By enacting FOIA, Congress sought to ensure "that government officials are held accountable to an informed electorate." *Schell v. U.S. Dep't of Health & Hum. Servs.*, 843 F.2d 933, 937 (6th. Cir. 1988). As a result, "[d]isclosure, not secrecy, is the dominant objective of the Act." *Id.*

FOIA requires an agency to disclose public records unless the agency establishes: (1) that the records fit within one of several statutory exemptions, and (2) that disclosing the records will harm an interest that the exemption protects. *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 543 (6th Cir. 2001); 5 U.S.C. § 552(a)(8)(A)(i)(I). "[FOIA's] exceptions are to be narrowly construed . . . ,

4

and the burden is on the agency to justify its action." *Rugiero*, 257 F.3d at 543.

Challenges to a government agency's response to a FOIA request are usually resolved on summary judgment. *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"[T]o prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing . . . that any withheld documents fall within an exemption to the FOIA" *Carney*, 19 F.3d at 812. A district court reviews the government's decision to withhold documents *de novo*. *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012). "The agency's decision that the information is exempt from disclosure receives no deference . . . ." *Bloomberg, L.P. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 601 F.3d 143, 147 (2d Cir. 2010).

## II. The Precedent Agreements are not "information obtained from a person" within the meaning of Exemption 4 because TVA co-created the agreements.

Exemption 4 only applies to "information <u>obtained from a person</u> and privileged or confidential." 5 U.S.C. § 552(b)(4) (emphasis added). Information which the government itself creates is not "obtained" from another person and therefore falls outside the scope of Exemption 4. *See Bloomberg, L.P.*, 601 F.3d at 149 ("[I]it cannot be said that the government 'obtained' information as to its own acts and doings from external sources or persons."). "[I]nformation generated by the government is not exempt from disclosure under Exemption 4 simply because it is based upon information supplied by persons outside the agency." *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 75 (D.D.C. 2012).

When responding to SELC's administrative appeal, TVA conceded that the Precedent Agreements are the product of negotiations between TVA and the pipeline companies. *See* Dkt. 1-11 at 3. Accordingly, TVA did not "obtain" those contracts from anyone. TVA co-created those

legal instruments when it paid its lawyers to prepare them in collaboration with its business partners.

In *Detention Watch Network v. United States Immigration and Customs Enforcement*, 215 F. Supp. 3d 256, 263 (S.D.N.Y. 2016), the District Court held that Exemption 4 did not apply to information in government contracts between United States Immigration and Customs Enforcement and private companies. The District Court found that those contracts are not "information obtained from a person" as contemplated by Exemption 4 and that FOIA gives the plaintiff a right to scrutinize the government's spending decisions. *Id.* at 262–63. The District Court stated:

> Plaintiff do not seek the bid documents, they seek documents that show the ultimate terms of the government contracts, including the contracts themselves. The terms of those contracts are not "obtained from" the contractors.

*Id.* at 263. Like the Plaintiffs in *Detention Watch Network*, SELC is not requesting bid documents or similar competitive materials. SELC is only requesting final signed contracts—legal instruments that were negotiated at arms-length. Such contracts are not covered by Exemption 4. *Id.*

The fact that contract negotiations may have started with information that the pipeline companies provided to TVA does not make the jointly created agreements exempt from disclosure. *See Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384, 400 (S.D.N.Y. 2014) ("[F]or Exemption 4 to apply, it is not enough to note that governmental analysis, at some level, was based on data provided by an outside 'person.'"). Moreover, courts routinely hold that FOIA Exemption 4 does not allow an agency to withhold every detail of business deals that it makes with private parties. *See, e.g.*, *Cause of Action Inst. v. Export-Import Bank of the United States*, No. 19-1915, 2022 WL 252028, at *17 (D.D.C. Jan. 27, 2022) (ordering disclosure of "the terms of a guarantee" made by government defendant to private company); *Jud. Watch, Inc. v. U.S. Dep't of*

*Health & Hum. Servs.*, 525 F. Supp. 3d 90, 98 (D.D.C. 2021) (ordering disclosure of names and addresses of labs with whom defendant worked); *WP Co. v. U.S. Small Bus. Admin.*, 502 F. Supp. 3d 1, 7 (D.D.C. 2020) (ordering disclosure over agency's FOIA-based objection of the "names, addresses, and precise loan amounts of all . . . borrowers" participating in the Paycheck Protection Program); *see also Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin.*, 559 F. Supp. 4, 6 (D.D.C. 1981) ("Disclosure of prices charged the Government is a cost of doing business with the Government. It is unlikely that companies will stop competing for Government contracts if the prices contracted for are disclosed."). Accordingly, TVA cannot meet its burden of establishing that the redacted contract terms are shielded from disclosure by Exemption 4.[2]

### III. TVA's redactions are not proper under FOIA Exemption 5 because the Precedent Agreements are final contracts no longer subject to competition.

After SELC appealed TVA's initial decision to redact the contracts, the agency added FOIA Exemption 5 as an additional basis to withhold the contracts. Dkt. 1-11 at 3. Exemption 5 allows an agency to not disclose "inter-agency or intra-agency <u>memorandums or letters</u> that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (emphasis added). The exemption says nothing about shielding binding legal

---

[2] Contrary to TVA's apparent assertion in its Answer (Dkt. 16, Eleventh Defense), the Trade Secrets Act does not permit TVA to withhold information that FOIA requires the agency to disclose. "[T]he Trade Secrets Act, 18 U.S.C. § 1905, which relates only to the disclosure of information where disclosure is not authorized by law, would not permit the withholding of information otherwise required to be disclosed by the Freedom of Information Act, since the disclosure is there authorized by law. Thus, for example, if material did not come within the broad trade secrets exemption contained in the Freedom of Information Act, section 1905 would not justify withholding . . . ." *Chrysler Corp. v. Brown*, 441 U.S. 281, 299 n.29 (1979) (quoting H.R. Rep. No. 94-880, at 23 (1976)) (internal quotation marks omitted). Consistent with the Supreme Court's understanding, courts have "long held that 'the scope of section 1905 and exemption (4) of the FOIA are the same or coextensive.'" *Synopsis, Inc. v. U.S. Dep't of Lab.*, Nos. 20-16414, 20-16416, 2022 WL 1501094, at *4 (9th Cir. May 12, 2022) (quoting *Gen. Motors Corp. v. Marshall*, 654 F.2d 294, 297 (4th Cir. 1981)).

instruments, like signed contracts, from public view. Moreover, the exemption only applies if a document is "both predecisional and deliberative," *Schell*, 843 F.2d at 940 (internal quotation marks omitted), and "a claim of commercial privilege based on anything other than executive privilege or the attorney-client privilege must be viewed 'with caution' when arising in the context of Exemption 5," *Morrison-Knudsen Co. v. Dep't of the Army*, 595 F. Supp. 352, 355–56 (D.D.C. 1984) (quoting *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 355 (1979)).

The Supreme Court recognized that Exemption 5 "incorporates a qualified privilege for confidential commercial information," but emphasized that the "rationale for protecting such information expires as soon as the contract is awarded or the offer withdrawn." *Merrill*, 443 U.S. at 360. The Department of Justice's guidance on how courts apply Exemption 5 provides that the "qualified privilege [discussed in *Merrill*] . . . expires upon the awarding of the contract or upon the withdrawal of the offer."[3]

TVA's unsupported assertion that "Exemption 5 allows the government to withhold . . . confidential business information if the release of such information would harm the government's commercial or financial interests or prevent an agency from performing its mission," Dkt. 1-11 at 3, is at odds with overwhelming weight of authority. Courts have held, again and again, that once a contract is final, Exemption 5 does <u>not</u> apply. *See MCI Telecomms. Corp. v. Gen. Servs. Admin.*, No. 89–0746, 1992 WL 71394, at *4 (D.D.C. Mar. 25, 1992) (announcing that FOIA Exemption 5 does not protect "validations and verifications of offeror cost data and technical claims . . . after a contract has been awarded."); *Payne Enters., Inc. v. United States,* 837 F.2d 486, 488, 494 (D.C. Cir. 1988) (holding that [requestor] "has an *undeniable* right to the bid *information*—whether or

---

[3] *Exemption 5, in* Dep't of Justice Guide to the Freedom of Information Act 68 (2019), https://www.justice.gov/oip/page/file/1197816/download.

not it is compiled in the form of bid abstracts" where bid abstracts were described as "listing the offerors' names and aggregate offer prices for negotiated contracts once those contracts had been awarded") (first emphasis added); *Gov't Land Bank v. Gen. Servs. Admin.*, 671 F.2d 663, 665 n.2 (1st Cir. 1982) (noting the "explicit time limitation on Exemption 5 documents": until the contract is awarded); *Taylor-Woodrow Int'l, Ltd. v. U.S. Dep't of Navy*, No. C88-429R, 1989 WL 1095561, at *3 (W.D. Wash. Apr. 5, 1989) ("The purpose of the confidential commercial privilege is to protect the release of potentially damaging commercial information, but only while the opportunity to take unfair advantage of the government agency continues to exist."); *cf. Marriott Emps.' Fed. Credit Union v. Nat'l Credit Union Admin.*, No. Civ.A. 96–478–A, 1996 WL 33497625, at *2 (E.D. Va. Dec. 24, 1996) (ordering previously-withheld documents relating to a real estate sale disclosed only "once the sale is completed"); *Am. Soc'y of Pension Actuaries v. I.R.S.*, 746 F. Supp. 188, 190 (D.D.C. 1990) (noting that Exemption 5's protection for predecisional communications "ends abruptly the moment a decision is made by the executive"); *Morrison-Knudsen Co.*, 595 F. Supp. at 355 (agreeing Exemption 5 applies to bids on a government contract *while the bidding is in progress* where the same records would "soon be made public once bids are filed under seal and an award made."); *Hack v. Dep't of Energy*, 538 F. Supp. 1098, 1104 (D.D.C. 1982) (allowing an agency to withhold cost estimates used in negotiation with private companies only "until the contract for the project has been let."); *Martin Marietta Aluminum, Inc. v. Adm'r, Gen. Servs. Admin.*, 444 F. Supp. 945, 950 (C.D. Cal. 1977) (concluding that appraisal reports for excess government equipment "need not be disclosed . . . before the sale of the equipment is consummated").

Courts rarely accept claims that Exemption 5 protects government information after a contract is awarded. To rule otherwise would allow TVA to opt out of ratepayer scrutiny of its

spending decisions. Such an outcome would be contrary to FOIA's text and central purposes.

**IV.  In the alternative, if the Precedent Agreements fall within the scope of a FOIA exemption (which they don't), TVA cannot withhold those contracts because TVA cannot establish that disclosure will harm an interest protected by FOIA.**

Assuming *arguendo* that the Precedent Agreements fall within the scope of a FOIA exemption (which they don't), TVA cannot withhold those contracts from public disclosure because TVA cannot establish foreseeable harm as required by the FOIA Improvement Act of 2016. *See* FOIA Improvement Act of 2016, Pub. L. No. 114-185, § 2 (2016). Under the FOIA Improvement Act of 2016 ("FIA"), when documents appear to fall within the scope of a FOIA exemption, agencies are required to determine whether releasing those records will cause foreseeable harm to an interest protected the exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I). By passing that statutory amendment, Congress clarified that unless "the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in [FOIA]," the government may not withhold public records. *Id.*

The FIA codified the Department of Justice's "foreseeable harm" standard, in which the Department announced it will not defend agency decisions to withhold information solely because the records arguably fit one of FOIA's exemptions.[4] Agencies must establish foreseeable harm of an interest protected by an exemption for the exemption to apply.  Congress indicated that codifying the foreseeable harm standard means that "the content of a particular record should be reviewed and a determination made as to whether the agency reasonably foresees that disclosing that particular document, given its age, content, and character, would harm an interest protected by the applicable exemption." S. Rep. No. 114-4, at 8 (2015). Since then, courts closely examine

---

[4] Memorandum for Heads of Departments and Agencies from Attorney Gen. Janet Reno Regarding the Freedom of Information Act (Oct. 4, 1999), https://www.justice.gov/oip/blog/foia-update-attorney-general-renos-foia-memorandum.

assertions of foreseeable harm because agencies cannot support withholding information on the basis of "mere speculative or abstract fears, or fear of embarrassment." *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) (internal quotation marks omitted) (quoting S. Rep. No. 114-4, at 8 (2015)).

The foreseeable harm requirement is an "independent and meaningful" burden on agencies to "specifically and thoughtfully" determine whether releasing information will harm an interest that FOIA protects. *100Reporters v. United States Dep't of State*, 2022 WL 1223709, at *17 (D.D.C. Apr. 26, 2022). TVA's bare assertions that the pipeline companies have "stated that revealing this information would cause [them] competitive harm," and that "TVA has no basis for questioning this statement," Dkt. 1-11 at 2, are not the specific and thoughtful agency review of foreseeable harm that Congress intended. Similarly, TVA's justification for applying Exemption 5 consists of speculation and abstract fears: TVA claims, without explanation, that the public cannot know about the details of TVA contracts because disclosure would "reveal TVA's strategies for this type of transaction" and thus undermine its ability to negotiate with counterparties in the future. *Id.* at 3. Without specific and meaningful proof about how such vague fears will materialize, TVA cannot justify withholding the Precedent Agreements. Because TVA cannot establish foreseeable harm of an interest protected by FOIA, it cannot withhold documents under any exemption, even if one applies (which it doesn't).[5]

---

[5] By releasing the redacted Precedent Agreements, TVA has already conceded that neither of its claimed exemptions justifies withholding the entirety of the documents. If either exemption applies at all, TVA must at a minimum produce a Vaughn Index giving the court enough information to understand what has been withheld, the exemption that applies, and the harm that TVA claims would occur if the redactions were removed. *See Rugiero*, 257 F.3d at 544 ("[A] 'Vaughn index[]' [is] a routine device through which the agency describes the documents responsive to a FOIA request and indicates the reasons for redactions or withholdings in sufficient detail to allow a court

TVA may attempt to argue that it is not required to establish foreseeable harm under the Supreme Court's holding in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019).  In that case, the Court overruled D.C. Circuit precedent holding that the definition of "confidential" records under Exemption 4 includes an element of "substantial competitive harm." *Id.* at 2366. However, the *Argus Leader* decision does not obviate TVA's obligation to comply with the FIA.  *Argus Leader* does not discuss, or even mention, the requirements of the FIA because the disclosure decisions that the Court reviewed in *Argus Leader* occurred before Congress amended FOIA in 2016 by the passing the FIA.  Thus, TVA cannot escape its obligation to comply with Congress' 2016 amendments by relying on an opinion that does not address, or even mention, those new statutory requirements.

**V.      If TVA is allowed to redact anything, it should only be allowed to redact pricing information, engineering specifications, construction timelines, product formulas, credit worthiness representations, and insurance amounts.**

Congress directed agencies to release all non-exempt portions of records whenever it is feasible to redact only those portions of the records that are exempt. 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). In the spirit of narrowing disputed issues, SELC is willing to accept something less than unredacted Precedent Agreements in their entirety. SELC is willing to forgo receipt of pricing information, engineering specifications, construction timelines, product formulas, credit worthiness representations, and insurance amounts.

SELC seeks to evaluate whether TVA violated NEPA, 42 U.S.C. § 4321 *et seq*., by signing

---

to make an independent assessment of the claims for exemptions from disclosure under the Act.") (citing *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973)).

the subject Precedent Agreements. Under NEPA, TVA is required to complete a statutorily prescribed environmental review process, including a thorough analysis of reasonable alternatives, before irretrievably committing agency resources to a particular course of action. *See Burkholder v. Peters*, 58 F. App'x 94, 97–98 (6th Cir. 2003); *Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 714–15 (10th Cir. 2010). Despite that statutory obligation, TVA signed lengthy written contracts apparently obligating itself to spend billions building new gas plants and purchasing methane, and TVA made those commitments even though TVA has not completed the required NEPA analysis. Because SELC plans to require TVA to follow NEPA, SELC is primarily interested in receiving those portions of the Precedent Agreements addressing TVA's NEPA and other environmental review obligations, any contract contingencies, and any liquidated damages or cost reimbursement clauses.

If TVA is allowed to redact anything, it should only be allowed to redact pricing information, engineering specifications, construction timelines, product formulas, credit worthiness representations, and insurance amounts. All other portions of the Precedent Agreements should be produced.

## CONCLUSION

TVA cannot meet its burden of establishing that signed agency contracts are exempt from disclosure under FOIA. Moreover, TVA cannot establish that public disclosure of the subject contracts will harm an interest that FOIA protects. In fact, disclosure of the subject agreements will achieve the opposite. By promoting transparency and accountability, public scrutiny of TVA contracts will help the agency comply with its statutory mission and mandates. SELC respectfully requests that the Court find that the Precedent Agreements are not exempt from disclosure under FOIA, and accordingly order TVA to disclose the unredacted agreements in their entirety.

In the alternative, if the Court prefers a more narrow remedy, SELC requests that TVA only be allowed to redact pricing information, engineering specifications, construction timelines, product formulas, credit worthiness representations, and insurance amounts.  TVA should be required to produce all other portions of the Precedent Agreements.

Respectfully submitted,

DATE: May 27, 2022

*s/ George Nolan*
George Nolan, BPR#014974
Amanda Garcia, BPR# 033773
Daniel J. Metzger, BPR#039187
Southern Environmental Law Center
1033 Demonbreun Street, Suite 205
Nashville, TN 37203
Telephone: (615) 921-9470
Facsimile: (615) 921-8011
gnolan@selctn.org
agarcia@selctn.org
dmetzger@selctn.org

14

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer. Notice of this filing will be sent by operation of the Court's ECF system to all parties as indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

*s/ George Nolan*
Attorney for Southern Environmental Law Center
