**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION**

| | | |
|---|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 3:22-cv-00108 |
| TENNESSEE VALLEY AUTHORITY, | ) ) ) | Hon. Clifton L. Corker U.S. District Judge |
| Defendant, | ) ) | Hon. Debra C. Poplin U.S. Magistrate Judge |
| and | ) ) | |
| EAST TENNESSEE NATURAL GAS, LLC, and TENNESSEE GAS PIPELINE COMPANY LLC, | ) ) ) ) | |
| Intervenor Defendants. | ) ) | |

**INTERVENOR EAST TENNESSEE NATURAL GAS, LLC'S
BRIEF IN SUPPORT OF ITS CROSS-MOTION FOR
SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION
<u>TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ................................................................................ 1

LEGAL STANDARDS ............................................................................................... 2

I.     Summary Judgment ....................................................................................... 2

II.    FOIA Exemption 4 ........................................................................................ 3

     A.    Commercial or Financial Information ................................................. 3

     B.    Obtained from a Person ....................................................................... 4

     C.    Privileged or Confidential ................................................................... 5

     D.    FIA Considerations ............................................................................. 6

ARGUMENT ............................................................................................................ 6

I.     SELC Misstates the Law Under FOIA Exemption 4 and the FIA. ..................................... 6

     A.    FOIA Exemption 4's "obtained from a person" requirement involves a nuanced consideration of whether an agency has altered third party information submitted to it, and does not involve a bright-line rule that all information in a contract with an agency cannot be "obtained from a person." ............................................................................................ 6

     B.    The FIA does not require an agency to establish foreseeable harm to a FOIA exemption-protected interest when an agency withholds information pursuant to Exemption 4, because disclosure of such information is prohibited by law; and even if so, the disclosure of such information does in fact harm the FOIA exemption-protected interest of confidentiality .................... 14

II.    Under the Correct Legal Standards, TVA Has Properly Withheld Information in the Ridgeline Precedent Agreement Under FOIA Exemption 4 ............................................. 16

     A.    The redacted information in the Ridgeline Precedent Agreement constitutes commercial or financial information. .................................................... 16

     B.    TVA obtained the redacted information in the Ridgeline Precedent Agreement from East Tennessee—a person within the meaning of FOIA Exemption 4. ..................................................................................... 18

     C.    East Tennessee customarily keeps the redacted information in the Precedent Agreement with TVA confidential, and East Tennessee provided such information to TVA under the assurance of privacy. ....................... 20

     D.    TVA's withholding of the redacted information in its Precedent Agreement with East Tennessee meets any requirement provided for in the FIA. ............. 23

CONCLUSION ........................................................................................................ 24

i

## TABLE OF AUTHORITIES

**Cases**

*60 Ivy St. Corp. v. Alexander*,
822 F.2d 1432 (6th Cir. 1987) ................................................................................................ 2

*Am. Small Bus. League v. U.S. Dep't of Def.*,
411 F. Supp. 3d 824 (N.D. Cal. 2019) ............................................................................. 15, 23

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................................. 3

*Baker & Hostetler LLP v. U.S. Dep't of Com.*,
473 F.3d 312 (D.C. Cir. 2006) ........................................................................................... 4, 16

*Besson v. U.S. Dep't of Com.*,
480 F. Supp. 3d 105 (D.D.C. 2020) ........................................................................................ 4

*Bloomberg L.P. v. Bd. of Governors of the Fed. Reserve Sys.*,
649 F. Supp. 2d 2627 (S.D.N.Y. 2009) .......................................................................... 9, 11, 12

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*,
601 F.3d 143 (2d Cir. 2010) ............................................................................................... 8, 9

*Cause of Action Inst. v. Exp.-Imp. Bank of the U.S.*,
No. 19-1915 (JEB), 2022 WL 252028 (D.D.C. Jan. 27, 2022) .............................................. 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................................. 2

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) ........................................................................................................... 14, 23

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Com.*,
No. 1:18-cv-03022 (CJN), 2020 WL 4732095 (D.D.C. Aug. 14, 2020) ................................ 22

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
567 F. Supp. 3d 204 (D.D.C. 2021) ....................................................................................... 16

*COMPTEL v. FCC*,
910 F. Supp. 2d 100 (D.D.C. 2012) ......................................................................................... 4

*Ctr. for Auto Safety v. U.S. Dep't of Treasury*,
133 F. Supp. 3d 109 (D.D.C. 2015) ............................................................................... 4, 6, 18

*Det. Watch Network v. U.S. Immigr. & Customs Enf't*,
215 F. Supp. 3d 256 (S.D.N.Y. 2016) .......................................................................... 11, 12, 13

*Dow Jones Co. v. Fed. Energy Reg. Comm'n*,
219 F.R.D. 167 (C.D. Cal. 2003) ........................................................................................... 16

*Fed. Trade Comm'n v. GlaxoSmithKline*,
294 F.3d 141 (D.C. Cir. 2002) ............................................................................................... 20

*Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*,
CV 19-3749 (CKK), 2021 WL 4206594 (D.D.C. Sept. 16, 2021) ........................................... 5

*Food Mktg. Inst. v. Argus Leader Media,*
139 S. Ct. 2356 (2019)..................................................................................... 5, 15, 20, 22

*Gellman v. Dep't of Homeland Sec.,*
No. 16-CV-635 (CRC), 2020 WL 1323896 (D.D.C. Mar. 20, 2020)......................................... 5

*Gulf & W. Indus., Inc. v. United States,*
615 F.2d 527 (D.C. Cir. 1979)............................................................................... 7, 18

*Jud. Watch, Inc. v. Exp.-Imp. Bank,*
108 F. Supp. 2d 19 (D.D.C. 2000)................................................................................ 4

*Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.,*
525 F. Supp. 3d 90 (D.D.C. 2021)............................................................................. 13

*Lansing Dairy, Inc. v. Espy,*
39 F.3d 1339 (6th Cir. 1994) ..................................................................................... 2

*McKee Foods Corp. v. Aryzta, LLC,*
No. 1:17-cv-00280-CHS, 2020 WL 9074718 (E.D. Tenn. Sept. 14, 2020) ............................ 19

*Merit Energy Co. v. U.S. Dep't of Interior,*
180 F. Supp. 2d 1184 (D. Colo. 2001)........................................................................ 17

*Mingus Constructors, Inc. v. United States,*
812 F.2d 1387 (Fed. Cir. 1987) ................................................................................. 3

*Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior,*
36 F. Supp. 3d 384 (S.D.N.Y. 2014) ........................................................................... 6

*Nat'l Ass'n of Home Builders v. Norton,*
309 F.3d 26 (D.C. Cir. 2002)..................................................................................... 3

*OSHA Data/CIH, Inc. v. U.S. Dep't of Labor,*
220 F.3d 153 (3d Cir. 2000) ..................................................................................... 7

*Pac. Architects & Eng'rs Inc. v. U.S. Dep't of State,*
906 F.2d 1345 (9th Cir. 1990) ................................................................................. 15

*Parker v. Bureau of Land Mgmt.,*
141 F. Supp. 2d 71 (D.D.C. 2001)............................................................................. 20

*Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.,*
704 F.2d 1280 (D.C. Cir. 1983)................................................................................. 4

*Pub. Citizen Health Rsch. Grp. v. Nat'l Insts. of Health,*
209 F. Supp. 2d 37 (D.D.C. 2002)................................................................ 7, 8, 13, 18

*Pub. Citizen v. U.S. Dep't of Health and Hum. Servs.,*
975 F. Supp. 2d 81 (D.D.C. 2013)............................................................................. 16

*Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin.,*
559 F. Supp. 4 (D.D.C. 1981)................................................................................... 13

*Rugiero v. U.S. Dep't of Just.,*
257 F.3d 534 (6th Cir. 2001) ................................................................................... 3

*S. All. for Clean Energy v. U.S. Dep't of Energy*,
  853 F. Supp. 2d 608 (D.D.C. 2012) ................................................................... passim

*Seife v. Food & Drug Admin.*,
  492 F. Supp. 3d 269 (S.D.N.Y. 2020) ................................................................... 20

*Synopsys, Inc. v. U.S. Dep't of Labor*,
  Nos. 20-16414, 20-16416, 2022 WL 1501094 (9th Cir. May 12, 2022) ............................ 15, 23

*Taft Broad. Co. v. United States*,
  929 F.2d 240 (6th Cir. 1991) ................................................................................. 3

*U.S. Cent. Intel. Agency v. Sims*,
  471 U.S. 159 (1985) ............................................................................................. 3

*Varnum LLP v. U.S. Dep't of Labor*,
  No. 1:18-cv-1156, 2021 WL 1387773 (W.D. Mich. Mar. 15, 2021) ....................................... 5

*Wash. Post Co. v. U.S. Dep't of Health & Hum. Servs.*,
  690 F.2d 252 (D.C. Cir. 1982) ................................................................................. 4

*WP Co. LLC v. U.S. Small Bus. Admin.*,
  502 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................... 13

## Statutes

18 U.S.C. § 1905 ...................................................................................................... 14

5 U.S.C. § 551(2) ................................................................................................. 4, 18

5 U.S.C. § 552 ......................................................................................................... 1

5 U.S.C. § 552(a)(3) ................................................................................................. 3

5 U.S.C. § 552(a)(4)(B) ............................................................................................. 3

5 U.S.C. § 552(a)(8) ................................................................................................. 3

5 U.S.C. § 552(a)(8)(A)(i) .................................................................................. 6, 14, 23

5 U.S.C. § 552(a)(8)(A)(ii) ......................................................................................... 6

5 U.S.C. § 552(b) ..................................................................................................... 3

5 U.S.C. § 552(b)(4) ......................................................................................... 3, 6, 16

5 U.S.C. § 552(c) ..................................................................................................... 3

Pub. L. No. 114-185, 130 Stat. 538 (2016) ....................................................................... 3

## Rules

Fed. R. Civ. P. 56(a) ................................................................................................. 2

## Regulations

18 C.F.R. § 388.112 ................................................................................................. 21

## INTRODUCTION AND SUMMARY

In 2021, East Tennessee Natural Gas, LLC ("East Tennessee") and the Tennessee Valley Authority ("TVA") negotiated and executed a "precedent agreement" discussing the mutual obligations and commitments of the two parties in order to provide for the transportation of natural gas by East Tennessee on its interstate pipeline system to TVA's new power plant in Kingston, Tennessee in the event that TVA chooses to build a natural gas-fired power plant at the same site where TVA plans to retire an existing coal-fired power plant. The executed agreement, which the parties refer to as the "Ridgeline Precedent Agreement," includes the terms and conditions under which East Tennessee, subject to conditions precedent, will design, obtain permits for, and construct project facilities as part of its natural gas pipeline system to provide the firm natural gas transportation service required by TVA.

Plaintiff Southern Environmental Law Center ("SELC") now challenges TVA's decision to withhold several sections of the Ridgeline Precedent Agreement from public disclosure, including under Exemption 4 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In doing so, SELC advocates for this Court to adopt a bright-line rule that information in executed contracts between a government agency and a third-party can never be withheld under Exemption 4 because such information is not "obtained from a person." Yet SELC's argument is inconsistent with the substantial body of case law establishing that information obtained from an outside party that is reproduced in a government-authored document or a negotiated agreement between that party and the government can still qualify for protection from disclosure under Exemption 4. For this reason, SELC's assertion that the information in the Ridgeline Precedent Agreement cannot be covered by Exemption 4 is simply wrong.

The Ridgeline Precedent Agreement is not a typical "government contract" that is authored primarily by the government and written on the government's standard form with the government's

standard terms and clauses. Instead, East Tennessee was the primary drafter of the Ridgeline Precedent Agreement. In particular, the sections of the Ridgeline Precedent Agreement in dispute in this litigation are identical (or nearly identical) to the drafts submitted by East Tennessee to TVA during the negotiation. As such, those sections were "obtained [by TVA] from a person." Moreover, the terms and conditions in question reflect East Tennessee's proprietary business judgments regarding project development and risk allocation, and they also contain sensitive financial information. For this reason, East Tennessee customarily and actually treats this information as private and confidential, and East Tennessee submitted the information to TVA under an assurance of privacy. As such, the information plainly qualifies for protection under Exemption 4 under relevant Supreme Court precedent.

For these reasons, discussed in more detail below, the Court should find that TVA properly withheld the disputed sections of the Ridgeline Precedent Agreement from disclosure, deny Plaintiff's motion for summary judgment, and grant TVA's and East Tennessee's cross-motions for summary judgment.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The dispute must be genuine, and the "facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). "The fact that both parties have filed summary judgment motions does not alter the standard [of] review." *Lansing*, 39 F.3d at 1347.

2

"Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted).

## II.     FOIA Exemption 4

Under 5 U.S.C. § 552(a)(3), FOIA requires the government to make available records that are requested by the public, unless those records are exempt from disclosure under § 552(b) or excluded from FOIA's scope under § 552(c). *See U.S. Cent. Intel. Agency v. Sims*, 471 U.S. 159, 166–67 (1985) ("Congress recognized . . . that public disclosure is not always in the public interest and thus provided that agency records may be withheld from disclosure under any of the nine exemptions defined in 5 U.S.C § 552(b)."). Specifically, Exemption 4 shields from mandatory disclosure (a) commercial or financial information (b) that has been obtained from a person and (c) that is privileged or confidential. 5 U.S.C. § 552(b)(4). Additionally, the FOIA Improvement Act of 2016 (the "FIA") contains further guidance on when an agency can withhold information under a FOIA exemption. *See* Pub. L. No. 114-185, 130 Stat. 538, 539 (2016) (codified in relevant part at 5 U.S.C. § 552(a)(8)). "An agency's denial of a FOIA request is reviewed by a district court de novo." *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 543 (6th Cir. 2001) (citing 5 U.S.C. § 552(a)(4)(B)).

### A.     Commercial or Financial Information

The terms "financial" and "commercial" are to be given their ordinary meanings. *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002) (quoting *Pub. Citizen Health*

3

*Rsch. Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)). Accordingly, "commercial information" is broad and "applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency" and "is *not* confined only to records that 'reveal basic commercial operations . . . or relate to the income-producing aspects of a business.'" *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 319 (D.C. Cir. 2006) (quoting *Pub. Citizen Health Rsch. Grp.*, 704 F.2d at 1290). Moreover, "the plain language of Exemption 4 covers all financial information, despite the apparent commercial focus of the Exemption." *Besson v. U.S. Dep't of Com.*, 480 F. Supp. 3d 105, 112 (D.D.C. 2020) (quoting *Wash. Post Co. v. U.S. Dep't of Health & Hum. Servs.*, 690 F.2d 252, 266 (D.C. Cir. 1982)).

### B. Obtained from a Person

 "Person" is defined in FOIA to include corporations, partnerships, associations, and other private organizations. *See* 5 U.S.C. § 551(2). "[I]nformation originally obtained from an outside source but later included in agency documents, may be considered 'obtained from a person.'" *COMPTEL v. FCC*, 910 F. Supp. 2d 100, 117 (D.D.C. 2012). Specifically, "information in an agency-generated [document] is still 'obtained from a person' if such information was supplied to the agency by a person or could allow others to 'extrapolate' such information." *Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133 F. Supp. 3d 109, 123 (D.D.C. 2015) (internal citations and quotation marks omitted); *see also Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000) ("[D]ocuments prepared by the federal government may be covered by Exemption 4 if they contain summaries or reformulations of information supplied by a source outside of the government."). However, information "generated within the Government" is not "obtained from a person" and therefore does not fall under Exemption 4. *E.g.*, *Ctr. for Auto Safety*, 133 F. Supp. 3d at 119.

4

## C. Privileged or Confidential

Regarding confidential information specifically, information is confidential if it is "customarily kept private, or at least closely held, by the person imparting it," and "if the party receiving it provides some assurance that it will remain secret." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019). Information is customarily kept private under Exemption 4 if it is not "readily available" outside of the agency and is "closely held" by its owner. *See Varnum LLP v. U.S. Dep't of Labor*, No. 1:18-cv-1156, 2021 WL 1387773, at *4-5 (W.D. Mich. Mar. 15, 2021); *see also Gellman v. Dep't of Homeland Sec.*, No. 16-CV-635 (CRC), 2020 WL 1323896, at *11 (D.D.C. Mar. 20, 2020) ("The bulletins here are prepared for the [Office of the Director of National Intelligence] under contract and there is no suggestion in the record that they are readily available outside of the agency. They are thus 'closely held' by the vendor.").

Information is conveyed under an assurance of privacy when reasonably understood, whether explicitly or implied, to be provided to the agency "in confidence." *Argus Leader*, 139 S. Ct. at 2363; *see Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*, CV 19-3749 (CKK), 2021 WL 4206594, at *8 (D.D.C. Sept. 16, 2021) (finding that information provided by Boeing to the Federal Aviation Administration was confidential when Boeing's declarations detailed "'implied' assurances of privacy based on the context and the history of the FAA and Boeing's relationship"). The Supreme Court has made clear that, while courts previously also required a showing of a likelihood of substantial competitive harm to the person that submitted the information, such decisions were incorrect—confidentiality under FOIA Exemption 4 can be established if information is "both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Argus Leader*, 139 S. Ct. at 2366.

5

### D. FIA Considerations

The FIA provides that an agency can withhold information under a FOIA exemption only if it "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). Under the FIA, an agency is also to "consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible" and "take reasonable steps necessary to segregate and release nonexempt information." *Id.* § 552(a)(8)(A)(ii).

## ARGUMENT

### I. SELC Misstates the Law Under FOIA Exemption 4 and the FIA.

**A. FOIA Exemption 4's "obtained from a person" requirement involves a nuanced consideration of whether an agency has altered third party information submitted to it, and does not involve a bright-line rule that all information in a contract with an agency cannot be "obtained from a person."**

It is true that Exemption 4 only applies to information "obtained from a person." 5 U.S.C. § 552(b)(4). However, determining whether information in a jointly-prepared or agency-authored document that was initially supplied to the agency from a third party is "obtained from a person" involves a nuanced review by the examining court. As succinctly described by one court, when considering the "obtained from a person" requirement in connection with such a document, "the key distinction" is whether the information in the requested records is "repeated verbatim or slightly modified by the agency" or "is substantially reformulated by the agency, such that it is no longer a 'person's' information but the agency's information." *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 68 (D.D.C. 2012); *see also Ctr. for Auto Safety*, 133 F. Supp. 3d at 123 (outlining same); *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384, 400 (S.D.N.Y. 2014) (outlining same). The former meets the "obtained from a person"

6

requirement, while the latter does not, with the court acknowledging that the distinction "will obviously be blurry in many instances." *S. All. for Clean Energy*, 853 F. Supp. 2d at 68.

To be clear, information provided to an agency by third parties that is then used in the agency's own documents can be and has been found to be subject to Exemption 4. For instance, the D.C. Circuit has found that certain information in an agency-generated audit report was "obtained from a person" because that information was either supplied to the agency by a third party or could allow others to "extrapolate[ ]" information supplied to the agency by a third party. *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 529-30 (D.C. Cir. 1979). Further, the Third Circuit has found that a ratio calculated by an agency was "obtained from a person" because it was based upon certain individual components provided by third parties. *OSHA Data/CIH, Inc. v. U.S. Dep't of Labor*, 220 F.3d 153, 162 n.23 (3d Cir. 2000).

Most relevant here, using the aforementioned considerations, information supplied to an agency through negotiations for use in a contract, including the final contract terms, have been found to be "obtained from a person." In *Public Citizen Health Research Group v. National Institutes of Health*, 209 F. Supp. 2d 37, 44 (D.D.C. 2002), the FOIA requester challenged the application of Exemption 4 to final royalty rate information in a licensing agreement between an agency and a third party licensee in part because "the requested information was not obtained from outside the government since the royalty rate is negotiated between the licensee and the government." The court found otherwise, stating that, for the final royalty rate arrived at through negotiation in the licensing agreement, "the agency obtained this information from a person within the meaning of exemption 4." *Id.* at 45. Specifically, the court applied the standard that Exemption 4 applied to summaries or reformulations of information supplied by a source outside of the agency, and noted that, "[e]ven though the final royalty rate is arrived at through negotiation," the

7

facts that "the licensee is the ultimate source of this information" and that "the licensee still must provide the information in the first instance" qualified it for protection under Exemption 4. *Id.* at 44-45. Accordingly, *Public Citizen v. NIH* illustrates that final terms in an agreement with an agency can be subject to Exemption 4 under the "obtained from a person" standard.

SELC's attempt to characterize the "obtained from a person" requirement any other way is incorrect, as demonstrated by its selective citing and quoting of cases that, if fully reviewed, reveal themselves as inapplicable and actually supportive of the standard explained above. SELC first implies that caselaw stating that "[i]nformation which the government itself creates is not 'obtained' from another person" is somehow applicable to third-party information provided to an agency that is included in an agreement with that third party. SELC Memo. in Supp. of Mot. for Summ. J. (Dkt. No. 26) ("SELC Memo.") at 5. However, the two cases that SELC cites— *Bloomberg, L.P. v. Board of Governors of the Federal Reserve System*, 601 F.3d 143 (2d Cir. 2010), and *Southern Alliance for Clean Energy v. United States Department of Energy*, 853 F. Supp. 2d 60 (D.D.C. 2012)—do not state that an agency is presumed to have created information in a contract negotiated with a third party. Instead, both of these cases involved information generated solely by an agency in a manner separate from contractual negotiations, and both even acknowledge the actual "obtained from a person" standard described above—namely, that information submitted to an agency for incorporation into a contract or an agency-authored document can be subject to Exemption 4. Therefore, neither of these cases' conclusions on agency creation of information is instructive with regard to third-party information provided to an agency that is included in an agreement between that third party and the agency.

First, in *Bloomberg*, the FOIA requester sought Remaining Term Reports which were "documents that show what loans the Federal Reserve Banks actually made" and that were

8

"generated within a Federal Reserve Bank upon its decision to grant a loan." 601 F.3d at 148. Therefore, although the court found that the Remaining Term Reports were not subject to Exemption 4, it did so because the Remaining Term Reports merely contained information *about* loans and did not contain the terms from the loan documents themselves. While *Bloomberg* makes one passing reference to the Remaining Term Reports revealing "the fact of" loan terms (*id.*), the underlying district court case makes clear that the Remaining Term Reports at issue in the decision did not contain the actual terms of the final loan documents with the agency. In other words, the information at issue in *Bloomberg* was not the terms of an agreement with a third party. As stated by the district court, "the Remaining Term Reports describe the originating FRB districts of the loans, individual loan amounts extended by the FRBs, the types of FRB lending program borrowed from, and loan origination and maturity dates" and "[t]he only information in the Remaining Term Reports that the FRBNY and other FRBs could possibly have obtained from the borrows [sic] is the borrowers' names; the FRBs generated all the other information from internal data regarding their lending programs." *Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 277 (S.D.N.Y. 2009).

Further, and importantly, the Second Circuit in *Bloomberg* acknowledged prior caselaw finding that Exemption 4 may apply "to information beyond the raw data gathered from persons by the government," such as information that is "merely the information collected and slightly reprocessed by the government." 601 F.3d at 148. But, the court did not need to decide whether to follow such caselaw, because it found that the information in question was not derived from information submitted by third parties, but was instead "disclosure of the agency's own executive actions," *i.e.*, the agency's generation of information from its own internal data. *Id.* at 148-49. In other words, nothing in *Bloomberg* or its underlying district court decision even suggests that the

9

information at issue in the case was initially submitted to the agency from a third party and/or resulted from negotiations between the agency and third parties. Accordingly, *Bloomberg* does not stand for the bright-line rule for which SELC advocates, namely that information in a contract between a third party and an agency cannot qualify as "obtained from a person."

Second, in *Southern Alliance*, the court found that it could not make a decision on the applicability of Exemption 4 for most of the information withheld by an agency because there was no information in the record "concerning the origins of most of this redacted information," leaving the court unable to determine whether the information met the "obtained from a person" requirement. *S. All. for Clean Energy*, 853 F. Supp. 2d at 74-75. For one type of information related to credit fee subsidy cost estimates, the court determined that these cost estimates were not "obtained from a person" because they "were clearly generated within DOE" and "were not mere modifications through negotiation of Applicant information, but . . . the agency's own 'analysis.'" *Id.* at 75. In coming to this conclusion, the court considered the actual standard for assessing compliance with the "obtained from a person" requirement (the very one that SELC ignores, despite citing this case), and even explicitly noted that the standard applies to information resulting from negotiations between an agency and a third party. *Id.* at 68 ("Nor does the fact that information was negotiated preclude the proper application of Exemption 4, at least in circumstances where the information was initially obtained from outside the agency and was then modified through negotiations."). Ultimately, on the facts unique to the case, the court concluded that the information at issue did not result from negotiations and was solely generated by the agency, and so it was not "obtained from a person." *Id.* at 75. Accordingly, and similarly to *Bloomberg*, *Southern Alliance* does not stand for the rigid application of the "obtained from a

person" requirement for which SELC advocates, and instead explicitly acknowledges that information negotiated between an agency and a third party can still be subject to Exemption 4.

SELC essentially bases the rest of its argument surrounding the "obtained from a person" requirement on *Detention Watch Network v. United States Immigration & Customs Enforcement*, 215 F. Supp. 3d 256 (S.D.N.Y. 2016) (*see* SELC Memo. at 6), a case that is neither binding on this Court nor persuasive in its reasoning. Overall, *Detention Watch* fails to engage with the appropriate standard in considering the "obtained from a person" requirement and provides questionable analysis of the caselaw—specifically *Bloomberg*—on which it relies. In *Detention Watch*, the court considered whether, under FOIA Exemption 4, "the Government may withhold information showing unit prices, 'bed-day rates' and 'staffing plans' in government contracts with private detention facility contractors." 215 F. Supp. 3d at 259. The court ultimately decided that "the ultimate terms of the government contracts" were "not 'obtained from' the contractors," and thus were not protected under Exemption 4. *Id.* at 263. In coming to this conclusion, the court did not address the aforementioned body of caselaw that explains how third-party information provided to an agency that is then used in the agency's own documents can and has been found to be subject to Exemption 4, nor did the court address *Public Citizen v. NIH* and its application of this standard to find negotiated contract terms subject to Exemption 4.

Instead, *Detention Watch* relied entirely on *Bloomberg*, but as previously explained, *Bloomberg* did not involve a situation where information provided to an agency is then included in a contract. In *Bloomberg*, the information at issue was in Remaining Term Reports and described originating districts of loans, individual loan amounts extended, the types of lending programs, and loan origination and maturity dates, all of which the district court found to be generated by the agency from the agency's own internal data. 649 F. Supp. 2d at 277. Under these

11

facts, to the extent such information was included in final loan documents between the agency and third parties, the information would still be government-generated, and thus would not be "obtained from a person." The *Detention Watch* decision did not consider these facts, and in fact, it assumed the opposite in coming to its conclusion on Exemption 4. Specifically, the court in *Detention Watch* stated that "[i]n *Bloomberg*, the borrowers presumably proposed the loan amount and collateral in their loan applications, just as the private contractors here proposed pricing and staffing parameters" and then used this presumption to conclude that information provided to the agency and then included in a contract with the agency could not be considered "obtained from a person." 215 F. Supp. 3d at 263.

*Detention Watch*'s presumption that the borrowers in *Bloomberg* provided information in the Remaining Term Reports, on which it bases its entire holding, is demonstrably incorrect. As explained in the underlying *Bloomberg* district court opinion: "When borrowers applied to the FRBs for loans, the borrowers provided certain financial information including, *inter alia*, identification information, pledged collateral, and requested loan amounts. However, none of this information is contained in the Remaining Term Reports, other than borrower names." 649 F. Supp. 2d at 277. Accordingly, the information sought in the Remaining Term Reports that was found to not be "obtained from a person" did not include anything that was submitted from the third party to the agency via a loan application. Accordingly, *Detention Watch*'s key presumption is in direct contradiction with the very case on which its final holding is based, leaving SELC with no persuasive authority for its position that terms in an agreement with an agency cannot be considered "obtained from a person."[1]

---

[1] SELC also cites a string of other cases to claim that "Exemption 4 does not allow an agency to withhold every detail of business deals that it makes with private parties." *See* SELC Memo. at 6-7. What SELC ignores, however, is that unlike *Detention Watch*, these cases properly considered

Fortunately, as a nonbinding district court decision from outside this circuit, this Court need not follow *Detention Watch*. Instead, this Court should follow the greater body of caselaw that considers any information submitted to an agency from a third party that is then incorporated in the agency's own documents, even if after negotiation between the agency and the third party, to be potentially subject to Exemption 4. As previously described, these cases explain that such information—including when in agreements between an agency and a third party—can be considered "obtained from a person," depending on whether the information is "repeated verbatim or slightly modified by the agency" or "is substantially reformulated by the agency, such that it is no longer a 'person's' information but the agency's information," with the former being subject to Exemption 4. *See, e.g.*, *S. All. for Clean Energy*, 853 F. Supp. 2d at 68. And, to be clear, such cases have resulted in courts affirming the withholding of information in an agreement with an agency under Exemption 4. *See Public Citizen*, 209 F. Supp. 2d at 44-45.

---

how information submitted to an agency for incorporation into a contract or an agency-authored document can be subject to Exemption 4, and came to conclusions after applying the entire Exemption 4 standard to the relevant facts. *See Cause of Action Inst. v. Exp.-Imp. Bank of the U.S.*, No. 19-1915 (JEB), 2022 WL 252028, at *17 (D.D.C. Jan. 27, 2022) (ordering disclosure of "the terms of a guarantee" made by agency to private company because the terms were prepared by the agency, not the private party); *Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 525 F. Supp. 3d 90, 95 (D.D.C. 2021) (ordering disclosure of names and addresses of labs for not being commercial or financial, and disclosure of unit prices and line-item amounts in contracts for not being confidential); *WP Co. LLC v. U.S. Small Bus. Admin.*, 502 F. Supp. 3d 1, 12 (D.D.C. 2020)) (ordering disclosure of information in loans because such information was not customarily and actually treated as private); *Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin.*, 559 F. Supp. 4, 6 (D.D.C. 1981) (ordering disclosure of contract prices because disclosure of such prices would not result in substantial competitive harm in accordance with then binding, but since overruled, precedent). None of these cases actually state or stand for the proposition that certain details of business deals that an agency makes with private parties inherently cannot be subject to FOIA Exemption 4, and only one found Exemption 4 did not apply because the information was not "obtained from a person."

**B.     The FIA does not require an agency to establish foreseeable harm to a FOIA exemption-protected interest when an agency withholds information pursuant to Exemption 4, because disclosure of such information is prohibited by law; and even if so, the disclosure of such information does in fact harm the FOIA exemption-protected interest of confidentiality.**

The plain language of the FIA states that an agency can properly withhold records if either the agency reasonably foresees that disclosure of the records would harm an interest protected by a FOIA exemption or disclosure of the records is prohibited by law.  *See* 5 U.S.C. § 552(a)(8)(A)(i).  Despite this clear language, SELC claims that the FIA requires an agency to establish foreseeable harm to an interest protected by a FOIA exemption, without ever acknowledging that another option—disclosure being prohibited by law—exists to satisfy the FIA. *See* SELC Memo. at 10-12.  As required by the statute, the Court should consider both of these options for compliance with the FIA, and not just whether the agency reasonably foresees harm to a FOIA exemption-protected interest.

In the context of Exemption 4, this Court's application of the FIA should be straightforward.  Most clearly, if information is subject to Exemption 4, disclosure is prohibited by law under the Trade Secrets Act, 18 U.S.C. § 1905, thereby satisfying the prerequisite for withholding under the FIA.  Under the Trade Secrets Act, any officer or employee of the United States who "publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law" certain information concerning or relating to "trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association" commits a criminal violation.  18 U.S.C. § 1905.  The application of the Trade Secrets Act has been held as co-extensive with the application of FOIA Exemption 4, and so information subject to Exemption 4 is also subject to the Trade Secrets Act.  *See Chrysler Corp. v. Brown*, 441 U.S. 281, 299 n.29 (1979); *Synopsys, Inc. v. U.S. Dep't of Labor*, Nos. 20-16414,

20-16416, 2022 WL 1501094, at *4 (9th Cir. May 12, 2022) ("we and our sister circuits have long held that 'the scope of section 1905 and exemption (4) of the FOIA are the same or coextensive'" (quoting *Pac. Architects & Eng'rs Inc. v. U.S. Dep't of State*, 906 F.2d 1345, 1347 (9th Cir. 1990))). SELC itself even acknowledges the coextensive nature of FOIA Exemption and the Trade Secrets Act. *See* SELC Memo. at 7 n.2. Therefore, if information is found subject to Exemption 4, it is prohibited by law from being disclosed, and the FIA is satisfied.

Even if this Court were inclined to consider the FIA's alternate foreseeable harm requirement (which is not necessary here), SELC exaggerates the agency's burden. As is evident from the statutory language, Exemption 4 protects the interest of confidentiality, and thus the release of confidential information is harmful to that interest. One district court considering the FIA has concluded as much: "[T]he plain and ordinary meaning of Exemption 4 indicates that the relevant protected interest is that of the information's *confidentiality* — that is, its private nature. Disclosure would necessarily destroy the private nature of the information, no matter the circumstance." *Am. Small Bus. League v. U.S. Dep't of Def.*, 411 F. Supp. 3d 824, 836 (N.D. Cal. 2019). While SELC attempts to distract from this simple harm to the Exemption 4 interest of confidentiality by focusing solely on the concept of competitive harm and assessing whether the Supreme Court's decision in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019) eliminates the FIA's foreseeable harm test (*see* SELC Memo. at 12), such an exercise is unnecessary. The FIA should not be used "to circumvent the Supreme Court's rejection" of requiring finding competitive harm to prove confidentiality. *Am. Small Bus. League*, 411 F. Supp. 3d at 836. Instead, the mere disclosure of confidential information is foreseeable harm to the Exemption 4 interest of confidentiality, thus satisfying the second option for compliance with the FIA.

**II.** **Under the Correct Legal Standards, TVA Has Properly Withheld Information in the Ridgeline Precedent Agreement Under FOIA Exemption 4.**

TVA properly withheld the redacted information in the Ridgeline Precedent Agreement because the requested information constitutes commercial or financial information obtained from a person that is privileged or confidential.  5 U.S.C. § 552(b)(4).  Accordingly, the information satisfies FOIA Exemption 4, and TVA is not required to release it.

**A.** **The redacted information in the Ridgeline Precedent Agreement constitutes commercial or financial information.**

First, East Tennessee's attached Declaration of Anne N. Moore ("Moore Decl.") demonstrates that the redacted information is commercial or financial within the meaning of FOIA Exemption 4.  As previously stated, commercial or financial information is considered to apply broadly, including "when the provider of the information has a commercial interest in the information submitted to the agency." *Baker & Hostetler*, 473 F.3d at 319.  This understanding of commercial or financial information is consistently applied to contract terms.  *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 567 F. Supp. 3d 204, 212-13 (D.D.C. 2021) ("Contract terms, strategy, pricing, testing protocols, and the like are well within the ambit of information this court has long recognized  as 'commercial.'").  Moreover, business decisions, practices, and conduct are generally considered commercial or financial information.  *See Pub. Citizen v. U.S. Dep't of Health and Hum. Servs.*, 975 F. Supp. 2d 81, 105 (D.D.C. 2013) (finding information related to "decisions about managing and conducting . . . business operations" was "sufficiently commercial" under Exemption 4); *Dow Jones Co. v. Fed. Energy Reg. Comm'n*, 219 F.R.D. 167, 176 (C.D. Cal. 2003) (finding that information relating "to business decisions and practices regarding the sale of power, and the operation and maintenance" of generators was commercial and financial in nature); *Merit Energy Co. v. U.S. Dep't of Interior*, 180 F. Supp. 2d

1184, 1188 (D. Colo. 2001) ("Information regarding oil and gas leases, prices, quantities and reserves is obviously commercial in character.").

The information in each of the disputed sections of the Ridgeline Precedent Agreement is commercial or financial under the broad definition applicable to Exemption 4. Not only is the information in the form of contract terms, but the terms represent East Tennessee's "playbook" for developing natural gas pipeline projects, as specifically modified for this project with TVA, with the terms ensuring that the project is successful. *See* Moore Decl. ¶ 7. Specifically:

- Section 4, Shipper Approvals, includes information reflecting East Tennessee's project development and risk allocation strategies (*id.* ¶ 27);

- Section 7, Transporter's Preliminary Activities, sub-section (B), addresses obligations and commitments that East Tennessee provided to TVA that reflect the particular circumstances of the Ridgeline Expansion Project (*id.* ¶ 32);

- Section 10, Pre-service Costs, addresses East Tennessee's financial and risk allocation decisions in connection with the project development process (*id.* ¶ 38); and

- Section 11, Termination, sub-sections (B) and (C), are termination rights that reflect specific financial and timing constraints that East Tennessee has considered important in its project development process (*id.* ¶ 44).

Accordingly, the information in the disputed sections of the Ridgeline Precedent Agreement all relates to East Tennessee's business decisions, practices, and conduct, and therefore qualifies as commercial or financial information under FOIA Exemption 4.

**B.** **TVA obtained the redacted information in the Ridgeline Precedent Agreement from East Tennessee—a person within the meaning of FOIA Exemption 4.**

Second, the redacted information in the Ridgeline Precedent Agreement was obtained from a "person"—East Tennessee. Limited liability companies, like East Tennessee, are considered persons for the purposes of Exemption 4. *See* 5 U.S.C. § 551(2); *Gulf & W. Indus.*, 615 F.2d at 529 n.5. Further, information is "obtained" from a person "if such information was supplied to the agency by a person." *Ctr. for Auto Safety*, 133 F. Supp. 3d at 123. This includes information that may be considered negotiated between parties because "the fact that information was negotiated [does not] preclude the proper application of Exemption 4, at least in circumstances where the information was initially obtained from outside the agency and was then modified through negotiations." *S. All. for Clean Energy*, 853 F. Supp. 2d at 68; *see Pub. Citizen Health Rsch. Grp.*, 209 F. Supp. 2d at 44-45 (finding license agreement terms "negotiated between the licensee and the government" to be obtained from a person). As explained in East Tennessee's attached declaration, East Tennessee was the drafter of each of the sections of the Ridgeline Precedent Agreement still in dispute. Moore Decl. ¶¶ 24-26, 29-31, 35-37, 41-43. East Tennessee provided the language for those sections, which in each case was accepted by TVA either without change or with a minor clarifying change. *Id.*[2] In other words, East Tennessee was the source of virtually all of the language in the disputed sections. Specifically:

- Section 4, Shipper Approvals, consists entirely of language submitted by East Tennessee that was accepted by TVA (*id.* ¶¶ 24-26);

---

[2] Although in three instances, TVA proposed revisions that were not merely clarifying, East Tennessee either rejected TVA's proposed language or replaced it with language prepared by East Tennessee. Moore Decl. ¶¶ 24, 29, 35.

18

- Section 7, Transporter's Preliminary Activities, sub-section (B), consists entirely of language submitted by East Tennessee to TVA (*id.* ¶¶ 29-31);

- Section 10, Pre-service Costs, consists entirely of language submitted by East Tennessee to TVA, with the exception of one minor clarifying change made by TVA (*id.* ¶¶ 35-37); and

- Section 11, Termination, sub-sections (B) and (C), consist entirely of language submitted by East Tennessee to TVA, with the exception of one minor clarifying change made by TVA (*id.* ¶¶ 41-43).

Put another way, the information in the disputed sections was not "substantially reformulated by the agency, such that it is no longer a 'person's' information but the agency's information." *S. All. for Clean Energy*, 853 F. Supp. 2d at 68. Instead, the information was "repeated verbatim or slightly modified" in the final Ridgeline Precedent Agreement. *Id.* Accordingly, while the Ridgeline Precedent Agreement may be the product of negotiations, it is abundantly clear that the information in the disputed sections was "obtained from a person" under FOIA Exemption 4.[3]

---

[3] SELC distracts from this analysis by citing section 17, sub-section (C), which states: "Each and every provision of this Precedent Agreement shall be considered as prepared through the joint efforts of the Parties and shall not be construed against either Party as a result of the preparation or drafting thereof." SELC Memo. at 4. However, such language merely aims to alleviate any concern that a party would be considered the drafter of the agreement, and as the drafter, have ambiguous terms construed against it in the case of a dispute between the parties. *See, e.g.*, *McKee Foods Corp. v. Aryzta, LLC*, No. 1:17-cv-00280-CHS, 2020 WL 9074718, at *4 (E.D. Tenn. Sept. 14, 2020) ("A careful review of Tennessee contract law indicates the doctrine of *contra proferentem* is appropriately applied when other methods of interpretation have failed. *Contra proferentem* is a rule of contract construction in which an ambiguous contractual provision is construed against the drafter."). Such language does not speak to the "obtained from a person" standard, which, as previously described, focuses on which party submitted the information, and if submitted by a non-government party, whether the information was substantially altered by the government.

19

**C.** **East Tennessee customarily keeps the redacted information in the Precedent Agreement with TVA confidential, and East Tennessee provided such information to TVA under the assurance of privacy.**

The redacted information is confidential within the meaning of FOIA Exemption 4 because East Tennessee customarily keeps the information closely held and private, and East Tennessee provided the information to TVA under assurances of confidentiality from TVA. *See Argus Leader*, 139 S. Ct. at 2366 ("At least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4.").

Various facts can prove that information is customarily and actually treated as private. At the outset, information is confidential when a person holding the information internally limits the dissemination of such information. *See Fed. Trade Comm'n v. GlaxoSmithKline*, 294 F.3d 141, 147-48 (D.C. Cir. 2002) (finding confidential documents disseminated on a need-to-know basis for which recipients were bound to keep the documents confidential). To the extent it is shared externally, such information is still considered confidential if only shared pursuant to limited disclosure via nondisclosure and confidentiality agreements meant to avoid dissemination to the general public. *See Seife v. Food & Drug Admin.*, 492 F. Supp. 3d 269, 276-77 (S.D.N.Y. 2020) ("Seife contends that Sarepta publicly shared the information at issue when it collaborated with third parties. But '[t]hese types of limited disclosures,' subject to nondisclosure agreements and 'not made to the general public, do not preclude Exemption 4 protection.'" (quoting *Parker v. Bureau of Land Mgmt.*, 141 F. Supp. 2d 71, 79 (D.D.C. 2001))).

When preparing a precedent agreement, East Tennessee has internal processes that require individuals from different departments to review and sign off on the terms and conditions of a precedent agreement prior to execution, and East Tennessee followed this process for the Ridgeline Precedent Agreement. Moore Decl. ¶¶ 21-22. Once executed, East Tennessee does not widely

20

share executed precedent agreements internally, and absent extraordinary circumstances like a parental merger where there would be a confidentiality agreement in place, East Tennessee does not share precedent agreements externally (other than with external counsel), until such agreements must be filed with the Federal Energy Regulatory Commission ("FERC"). *Id.* ¶ 21. Even when required to file precedent agreements with FERC, East Tennessee does so under seal and only allows access to the agreements to third parties if those parties execute a nondisclosure agreement. *Id.* ¶¶ 13-15, 21; *see also* 18 C.F.R. § 388.112 (regulation providing for private treatment of privileged documents submitted to FERC). While East Tennessee has consented to TVA's disclosure of certain sections of the Ridgeline Precedent Agreement in connection with SELC's FOIA request, East Tennessee has not shared the redacted sections of the Ridgeline Precedent Agreement with any non-counsel external parties. Moore Decl. ¶ 20. East Tennessee is not yet required to file the Ridgeline Precedent Agreement with FERC, but when it does so, East Tennessee will file a non-public version under seal as is East Tennessee's standard practice, and limit access to those that sign nondisclosure agreements in accordance with FERC regulations. *Id.* ¶¶ 14, 22. Through its efforts to maintain the confidentiality of the redacted provisions of the Ridgeline Precedent Agreement, as it generally does with all precedent agreements, East Tennessee customarily and actually treats the information in the redacted sections of the Ridgeline Precedent Agreement private. This confidential treatment makes logical sense, because public release of such information to East Tennessee's competitors and future potential customers would be competitively harmful to East Tennessee, and so East Tennessee has every incentive to keep the information private. *See id.* ¶¶ 10-11, 27, 32-33, 38-39, 44-45.

Information can be provided to the government under assurances of confidentiality that are either express or implied, and the appropriate test is whether the entity reasonably understood it

was providing information to the agency "in confidence." *See Argus Leader*, 139 S. Ct. at 2363; *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Com.*, No. 1:18-cv-03022 (CJN), 2020 WL 4732095, at *3 (D.D.C. Aug. 14, 2020) (holding that an "assurance of confidentiality [can be] either express or implied"). Implied assurances of confidentiality can be supported by the context of how information is submitted to an agency, with one court noting that the fact that a business provides commercial information to an agency supports the existence of implied assurances of confidentiality: "Without such an assurance, companies . . . would not seek [the agency]'s assistance because the information they provided could be revealed by simply submitting a FOIA request. The information thus could easily fall into the hands of competitors or other entities that sought it." *Citizens for Resp. & Ethics in Wash.*, 2020 WL 4732095, at *4.

East Tennessee provided information to TVA for inclusion in the Ridgeline Precedent Agreement under assurances of confidentiality. East Tennessee's employee primarily responsible for negotiating the agreement had regular conversations with her counterpart at TVA, and there were several instances in which they discussed the shared expectation that the terms and conditions of the Ridgeline Precedent Agreement, and especially the most commercially sensitive provisions, would remain confidential. Moore Decl. ¶ 19. For example, East Tennessee's representative described to her counterpart that East Tennessee planned to file the Ridgeline Precedent Agreement at FERC under seal. *Id.* Further, the situation logically supports that East Tennessee understood that the commercially sensitive information it was providing to TVA would be kept confidential, because if the information were to become public and available to competitors and future potential customers, then companies like East Tennessee would have little incentive to engage in contracts with TVA in the first place. *See Citizens for Resp. & Ethics in Wash.*, 2020

22

WL 4732095, at *4 (explaining similar logic).  As such, East Tennessee provided the information in the Ridgeline Precedent Agreement to TVA under assurances of confidentiality.

**D.      TVA's withholding of the redacted information in its Precedent Agreement with East Tennessee meets any requirement provided for in the FIA.**

As previously explained, the FIA states that an agency can properly withhold records in one of two situations: if the agency reasonably foresees that disclosure of the records would harm an interest protected by a FOIA exemption, or if disclosure of the records is prohibited by law. *See* 5 U.S.C. § 552(a)(8)(A)(i).  At the outset, TVA's withholding of the Ridgeline Precedent Agreement easily satisfies the second situation envisioned by the FIA.  TVA's withholding under Exemption 4—which is proper for the reasons explained above—means that the withheld information is also subject to the Trade Secrets Act, which is coextensive with Exemption 4.  *See Chrysler Corp.*, 441 U.S. at 299 n.29; *Synopsys*, 2022 WL 1501094, at *4.  The Trade Secrets Act prohibits the information from being disclosed, meaning that information withheld under Exemption 4 cannot be disclosed as a matter of law, thus satisfying the FIA.

Even considering the first situation envisioned by the FIA (although not necessary here), TVA's disclosure of the Ridgeline Precedent Agreement would harm an interest protected by a FOIA Exemption.  Also as previously explained, "the plain and ordinary meaning of Exemption 4 indicates that the relevant protected interest is that of the information's *confidentiality* — that is, its private nature.  Disclosure would necessarily destroy the private nature of the information, no matter the circumstance." *Am. Small Bus. League*, 411 F. Supp. 3d at 836.  Accordingly, disclosure of the Ridgeline Precedent Agreement would destroy the interest in confidentiality under Exemption 4, thus satisfying the first option for compliance with the FIA.

To the extent an agency is required to identify competitive harm to the submitter of the information in order to satisfy the FIA's foreseeable harm requirement (a test that would

23

Case 3:22-cv-00108-DCLC-DCP     Document 44     Filed 07/15/22     Page 28 of 30
PageID #: 532

circumvent the Supreme Court's decision in *Argus Leader*), then TVA meets that test as well. Disclosure of the disputed sections of the Ridgeline Precedent Agreement would harm East Tennessee by revealing how East Tennessee protects itself from risk, how East Tennessee structures its projects, and how East Tennessee has managed to successfully build projects. Moore Decl. ¶¶ 27, 32-33, 38-39, 44-45. A competitor's knowledge of such information would allow the competitor to offer similar or better terms for a project, thus harming East Tennessee's competitive market position. *Id.* ¶ 10. Moreover, the disputed sections of the Ridgeline Precedent Agreement contain unique provisions that East Tennessee drafted to address the particular circumstances and risks inherent in TVA's project. *Id.* ¶¶ 27, 32-33, 38-39, 44-45. A future customer's knowledge of such information would encourage the customer to demand similar terms for its own project, thus harming East Tennessee's ability to propose appropriate terms based on each project's unique situation and East Tennessee's capabilities. *Id.* ¶ 11.

## CONCLUSION

For the foregoing reasons, East Tennessee respectfully requests that the Court enter summary judgment in favor of East Tennessee and TVA, and against SELC.

24

Respectfully submitted,

VINSON & ELKINS LLP

Dated: July 15, 2022

s/ Jamie F. Tabb
Jamie F. Tabb
Admitted *pro hac vice*
Virginia State Bar No. 73464
District of Columbia Bar No. 500770
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: (202) 639-6773
Fax: (202) 879-8873
Email: jtabb@velaw.com

*Counsel for Intervenor East Tennessee Natural Gas, LLC*

25