# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

| | | |
|---|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 3:22-cv-00108 |
| TENNESSEE VALLEY AUTHORITY, | ) ) | Hon. Clifton L. Corker |
| Defendant, | ) ) | U.S. District Judge |
| EAST TENNESSEE NATURAL GAS, LLC, and TENNESSEE GAS PIPELINE COMPANY LLC, | ) ) ) | Hon. Debra C. Poplin U.S. Magistrate Judge |
| Intervenor Defendants. | ) ) ) | |

## DECLARATION OF ANNE N. MOORE

I, Anne N. Moore, pursuant to the provisions of 28 U.S.C. § 1746, declare as follows:

1. My full name is Anne N. Moore. I am the Director, Marketing & Business Development, Southeast at Enbridge Inc. ("Enbridge"). I have held this position since January 2019, and I have worked in business development roles for Enbridge since its merger with Spectra Energy Corp in February 2017. Prior to working for Enbridge, I spent over 15 years working at Spectra Energy Corp.

2. In my role at Enbridge, I am responsible for the marketing of capacity and commercial activities for Enbridge's gas transmission business in the Southeast region, including for Enbridge's wholly-owned subsidiary, East Tennessee Natural Gas, LLC ("East Tennessee"), an intervenor in the above-captioned case. East Tennessee owns, operates and maintains a natural

1

gas pipeline system that stretches through Tennessee, Virginia, and parts of North Carolina and Georgia.

3.      I was the primary East Tennessee point of contact for the discussions with the Tennessee Valley Authority ("TVA") regarding the Precedent Agreement between East Tennessee and TVA dated August 12, 2021 (hereinafter the "Ridgeline Precedent Agreement").

**Background on Precedent Agreements and East Tennessee's Confidential Treatment**

4.      Precedent agreements are the financial underpinning for a pipeline company's substantial capital investment (tens of millions to more than a billion dollars for each project) in expansions of its natural gas pipeline system.  Precedent agreements include the terms and conditions under which the pipeline, subject to conditions precedent, will design, obtain permits for, and construct project facilities to provide firm natural gas transportation service required by the shipper.  In turn, the shipper commits, subject to conditions precedent, to enter into a firm transportation service agreement to take such transportation service for a term of typically 15 or more years, and to pay reservation and usage charges for such service based upon the fixed and variable costs, respectively, of the construction, operation and maintenance of the project facilities. The shipper's obligation to pay for the project through its multi-year service commitment is supported by the credit requirements in the precedent agreement, which require the shipper to either maintain its credit above a certain threshold during the entire term of service or to provide credit support typically in the form of a parental guaranty or bank-issued letter of credit.

5.      The overall structure of precedent agreements across pipeline companies may be similar and contain common terms related to the parties' rights and obligations; however, each pipeline has developed its own form of precedent agreement and variations in language to address the particular characteristics of the shipper and the unique complexities of each project.  The

2

specific terms and conditions included in East Tennessee's and its affiliates' precedent agreements have been refined over time based on their experience and the need for the precedent agreement to be adaptable to changes that occur in the years between execution of the precedent agreement and the project milestones, such as receipt of necessary permits, commencement of construction and placing the facilities into service. For example, the terms and conditions East Tennessee has crafted address, among other things, potential increases in the costs of materials, equipment and labor, changes in customer credit, changes in permitting requirements and/or agency implementation of applicable requirements, and opposition to and appeal of permits and authorizations from governmental agencies.

6.     East Tennessee's precedent agreement provisions balance East Tennessee's risks associated with the development of the project in a multi-year process (in this case more than five years from execution of the Ridgeline Precedent Agreement until planned service commencement) and competition with other pipelines for the project shipper's business. Accordingly, commercially sensitive information in a precedent agreement includes more than just pricing and other monetary figures, as each provision contains commercially sensitive information related to East Tennessee's development of projects and competition for shippers' business.

7.     A precedent agreement, in short, represents East Tennessee's "playbook" for developing natural gas pipeline projects. There are many participants in the market that would be very interested in seeing certain provisions of East Tennessee's precedent agreements to learn how East Tennessee protects itself from risk, how East Tennessee structures its projects, and how East Tennessee has managed to successfully build projects, especially since many other companies have not had similar success in project development.

3

8.      As a result, East Tennessee's standard practice is to keep precedent agreements confidential, as they contain commercially sensitive information in the form of terms and conditions that East Tennessee has developed over time, and that may be tailored for specific customers or specific situations.

9.      The Ridgeline Precedent Agreement in particular includes several unique terms that East Tennessee developed to address the changing regulatory and commercial landscape for natural gas pipelines, as well as those developed specifically for TVA and the Ridgeline Expansion Project (discussed below), and it would be competitively harmful to East Tennessee if competitors and future customers are able to see these unique terms.

10.     For example, if a competitor were to see the unique terms that East Tennessee offered to TVA, that competitor could use that knowledge to propose similar or better terms on a future project, thereby undermining East Tennessee's competitive position.

11.     Similarly, if East Tennessee's future customers were to see the unique terms that East Tennessee offered to TVA, those customers could use that knowledge to demand that East Tennessee provide similar terms on their projects, even if not appropriate under the circumstances. This creates a situation where a customer has unreasonable expectations, and the release of the unique terms of the Ridgeline Precedent Agreement would adversely affect East Tennessee's ability to propose terms, and the customers' willingness to agree to terms, that are more appropriate to the circumstances.

**The FERC Process**

12.     Under the Natural Gas Act of 1938, natural gas companies such as East Tennessee are required to receive a certificate of public convenience and necessity ("Certificate") from the Federal Energy Regulatory Commission ("FERC") to construct, operate and maintain interstate

4

pipeline facilities. As part of this regulatory process to receive a Certificate, pipeline companies are required to submit precedent agreements to FERC. FERC's issuance of a Certificate is also dependent on the pipeline's demonstration of the need for a project and FERC has long considered precedent agreements to be significant evidence of project need.

13. Consistent with East Tennessee's practice of keeping precedent agreements confidential, since 2010, every precedent agreement that East Tennessee has filed with FERC as part of a certificate application has been filed as privileged material, which is the equivalent of filing under seal. The relevant FERC dockets are as follows:

- Loudon Expansion Project (2015) – FERC Docket No. CP15-91

- Kingsport Expansion Project (2013) – FERC Docket No. CP13-534

- Wacker Project (2012) – FERC Docket No. CP12-484

- Northeastern Tennessee (NET) Project (2010) – FERC Docket No. CP10-89

14. Like the precedent agreements in these prior dockets, East Tennessee plans to file the Ridgeline Precedent Agreement with FERC as privileged material/under seal. Per FERC's regulations, East Tennessee will also file a public version of the Ridgeline Precedent Agreement that redacts the sections that have not been publicly released through the FOIA process.

15. As part of the FERC process, non-government participants are able to view documents filed under seal as long as they execute a protective agreement, which is similar to a non-disclosure agreement ("NDA"). In other words, the plaintiff in this case will have an opportunity to view additional sections of the Ridgeline Precedent Agreement in connection with the FERC process under an NDA.

5

**The Ridgeline Precedent Agreement**

16. In January 2020, TVA informed East Tennessee that, consistent with its 2019 Integrated Resource Plan published in June 2019, TVA was evaluating potential coal retirements at multiple sites, including its Cumberland and Kingston plants, and was considering various options to replace the electric generating capacity of the retired plants. One alternative would be to replace the retired coal-fired generating plants with natural gas-fired generating plants at the same sites, which would require pipeline service to transport natural gas to those sites. East Tennessee presented proposed approaches for developing facilities and services to support each of these potential projects. TVA chose to negotiate a precedent agreement with East Tennessee for natural gas transportation service to its Kingston Plant, which TVA would need if it chose to replace its coal-fired generating capacity with natural gas-fired generating capacity at the Kingston site.

17. In connection with this process, East Tennessee began preparing a precedent agreement addressing the future natural gas transportation facilities and services needed to deliver fuel to TVA's Kingston plant. This project became known as the "Ridgeline Expansion Project." East Tennessee submitted an initial draft of the Ridgeline Precedent Agreement to TVA on January 21, 2021, and discussions with TVA continued through July 2021.

18. While section 17, sub-section (C) of the Ridgeline Precedent Agreement states that "[e]ach and every provision . . . shall be considered as prepared through the joint efforts of the Parties," the reality is that East Tennessee was the primary drafter of the document. As mentioned above, East Tennessee prepared and submitted the initial draft of the Ridgeline Precedent Agreement to TVA in January 2021, and thereafter prepared and submitted updated drafts to TVA

6

with revised or additional sections or provisions to address the unique circumstances of the Ridgeline Expansion Project and the unique characteristics of TVA as a counterparty.

19. During this time period, I had regular conversations with Paul Smith, Sr. Manager, Natural Gas Commercial Operations, Commercial Energy Solutions Fuels & Hedging at TVA regarding the terms of the Ridgeline Precedent Agreement. Over the course of those conversations, there were several instances in which we discussed the shared expectation that the terms and conditions of the Ridgeline Precedent Agreement, and especially the most commercially sensitive provisions, would remain confidential. To that end, I explained that East Tennessee would not publicly release the executed document, and would file it under seal with FERC.

20. Since the execution of the Ridgeline Precedent Agreement, East Tennessee has not shared the Ridgeline Precedent Agreement outside the Enbridge corporate family, other than its outside counsel.

21. East Tennessee has internal processes that require individuals from different departments to review and signoff on the terms and conditions of a precedent agreement prior to execution. Once executed, precedent agreements are not widely shared within East Tennessee and, absent an extraordinary circumstance (such as a parental merger) where it would be shared pursuant to an NDA, there would be no circumstance under which an executed precedent agreement would be shared outside of the Enbridge corporate family and its external legal counsel until it is required to be filed with FERC as part of an application for a Certificate. Even after it is filed under seal with FERC, except for copies provided under the NDA to participants in the FERC proceeding, East Tennessee does not provide copies of executed precedent agreements to any other third parties. East Tennessee maintains its precedent agreements as private even after the underlying project is placed into service.

7

22.      East Tennessee has handled the Ridgeline Precedent Agreement in the customary manner outlined above, and is not yet required to file the Ridgeline Precedent Agreement with FERC.  Information regarding specific sections of the Ridgeline Precedent Agreement is provided below.

### Section 4 – Shipper Approvals

23.      Section 4 of the Ridgeline Precedent Agreement is titled "Shipper Approvals."  It discusses TVA's and East Tennessee's obligations relating to certain approvals that TVA would obtain in order for TVA to construct, own, operate and maintain the gas-fired capability at the Kingston plant.

24.      Section 4 is divided into three sub-sections – (A), (B), and (C).  East Tennessee submitted the language of sub-section (A) and sub-section (C) (which was initially designated as sub-section (B)) to TVA in the initial draft of the Ridgeline Precedent Agreement on January 21, 2021.  TVA sent a minor change to sub-section (A) to East Tennessee on March 29, 2021, but East Tennessee did not accept that change.  East Tennessee submitted an initial draft of sub-section (B) to TVA on July 16, 2021, and submitted a slightly revised version of sub-section (B) to TVA on July 19, 2021.

25.      Aside from the March 29, 2021 minor change to sub-section (A) that was not accepted, TVA did not send East Tennessee proposed changes or revisions to any of East Tennessee's drafts of section 4.

26.      The language of section 4 of the executed Ridgeline Precedent Agreement is identical to the language in the drafts submitted by East Tennessee on January 21, 2021 (for sub-sections (A) and (C)) and July 19, 2021 (for sub-section (B)).

8

27. Sub-section (B) of section 4 is a provision that East Tennessee drafted to address the particular circumstances of the Ridgeline Expansion Project. All of section 4 includes financial and commercial information that East Tennessee treats as confidential and commercially sensitive, as the release of such information would provide competitors and future customers with insight into East Tennessee's project development and risk allocation strategies, which would cause competitive harm to East Tennessee.

### Section 7 – Transporter's Preliminary Activities, Sub-section (B)

28. Section 7 of the Ridgeline Precedent Agreement is titled "Transporter's Preliminary Activities." It discusses certain preliminary activities that East Tennessee is required to perform.

29. Section 7 is divided into two sub-sections – (A) and (B). TVA initially proposed language for what later became sub-section (B) on June 7, 2021, but East Tennessee submitted entirely different language for sub-section (B) to TVA on July 16, 2021.

30. TVA did not send East Tennessee proposed changes or revisions to East Tennessee's draft of sub-section (B).

31. The language of section 7, sub-section (B) of the executed Ridgeline Precedent Agreement is identical to the language submitted by East Tennessee on July 16, 2021.

32. Sub-section (B) of section 7 is a unique provision that East Tennessee drafted to address the particular circumstances of the Ridgeline Expansion Project. It includes obligations and commitments that East Tennessee does not typically offer to customers, but were offered and agreed upon due to TVA's unique needs. East Tennessee treats the information in sub-section (B) of section 7 as confidential and commercially sensitive, as its release would cause competitive harm to East Tennessee.

33.     For example, if a future customer were to learn that East Tennessee agreed to the obligations and commitments in sub-section (B) of section 7, that customer would likely demand that East Tennessee agree to similar obligations and commitments.  In other words, the release of sub-section (B) of section 7 would put East Tennessee at a competitive disadvantage in future precedent agreement negotiations and could require it to commit to unnecessary obligations, which could adversely affect the development timeline and cost of the future project.

**Section 10 – Pre-service Costs**

34.     Section 10 of the Ridgeline Precedent Agreement is titled "Pre-service Costs."  It includes terms discussing the reimbursement of the costs East Tennessee will incur in performing its obligations under the Ridgeline Precedent Agreement under certain scenarios where the precedent agreement is terminated.

35.     Section 10 is divided into two sub-sections – (A) and (B).  The initial draft of the Ridgeline Precedent Agreement submitted by East Tennessee to TVA on January 21, 2021 included drafts of both sub-sections.  TVA proposed a minor clarifying change and an additional sentence to sub-section (A) and proposed deleting sub-section (B) on March 29, 2021.  East Tennessee submitted a revised draft of sub-section (A) to TVA on May 6, 2021 that accepted the minor clarifying change, completely replaced TVA's proposed sentence with entirely new language, and reinserted sub-section (B) as originally drafted.  East Tennessee submitted a further revised draft of sub-section (A) to TVA on July 16, 2021, and a slightly revised draft of sub-section (B) to TVA on June 16, 2021.

36.     Aside from the changes submitted on March 29, 2021, which were either minor, replaced with different language, or not accepted, TVA did not send East Tennessee proposed changes or revisions to East Tennessee's drafts of section 10.

10

37.     The language of section 10 of the executed Ridgeline Precedent Agreement is identical to the language in the drafts submitted by East Tennessee on July 16, 2021 (for sub-section (A)) and June 16, 2021 (for sub-section (B)).

38.     Section 10, and particularly sub-section (A), is a provision that East Tennessee drafted, based on its experience and expertise, to address the particular circumstances of the development of the Ridgeline Expansion Project.  It includes financial and risk allocation information that East Tennessee treats as confidential, as the release of such information would provide competitors and future customers with commercially sensitive information, thereby causing competitive harm to East Tennessee on future business opportunities.

39.     For example, the release of section 10 would put East Tennessee at a competitive disadvantage in future precedent agreement negotiations as the future customer would seek similar terms from East Tennessee even where those project risks are different from the risks associated with the Ridgeline Expansion Project, which could adversely affect risk sharing and the cost of the future project.

### Section 11 – Termination, Sub-sections (B) and (C)

40.     Section 11 of the Ridgeline Precedent Agreement is titled "Termination."  It discusses the circumstances under which the Ridgeline Precedent Agreement may be terminated by the parties.

41.     Section 11 is divided into four sub-sections – (A), (B), (C), and (D).  The initial draft of the Ridgeline Precedent Agreement submitted by East Tennessee to TVA on January 21, 2021 included an initial version of the termination right in sub-section (B) as part of sub-section (A).  On May 6, 2021, East Tennessee submitted a revised draft of the Precedent Agreement to TVA that moved the termination right to sub-section (B).  On June 9, 2021, TVA sent one minor

11

clarifying change on sub-section (B) to East Tennessee. On June 16, 2021, East Tennessee submitted a revised draft of the Ridgeline Precedent Agreement to TVA that added sub-section (C). On July 16, 2021, East Tennessee submitted a revised version of sub-section (B) to TVA.

42. Aside from the one minor clarifying change on sub-section (B) submitted on June 9, 2021, TVA did not send East Tennessee proposed changes or revisions to East Tennessee's drafts of sub-sections (B) and (C).

43. The language of section 11, sub-section (B) of the executed Ridgeline Precedent Agreement is identical to the language in the draft submitted by East Tennessee on July 16, 2021, and the language of section 11, sub-section (C) of the executed Ridgeline Precedent Agreement is identical to the language in the draft submitted by East Tennessee on June 16, 2021.

44. Sub-sections (B) and (C) of section 11 are termination rights that reflect specific financial and timing constraints in the development of the project. East Tennessee treats this information as confidential and commercially sensitive, as the release of such information would cause competitive harm to East Tennessee.

45. For example, if a competitor were to see sub-sections (B) and (C) of section 11, that competitor could use that knowledge to propose similar or better terms on a future project, thereby undermining East Tennessee's competitive position.

*     *     *

[signature page follows]

12

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: July 14, 2022

_anne N. Moore_
Anne N. Moore