

East Tennessee Natural Gas, LLC
5400 Westheimer Court
Houston, TX 77056-5310
(713) 627-5400

September 1, 2021

Denise Smith
Freedom of Information Officer
Tennessee Valley Authority 400
West Summit Hill Dr.
Knoxville, TN 37902-1401

Re:   Response to SELC FOIA Request

Dear Ms. Smith:

This letter responds to your letter dated August 31, 2021 ("August 31 Letter") regarding Southern Environmental Law Center's ("SELC") Freedom of Information Act ("FOIA") request ("SELC Request") to the Tennessee Valley Authority ("TVA").  East Tennessee Natural Gas, LLC ("East Tennessee") appreciates the opportunity to provide a written statement regarding the potential release of information contained in the Precedent Agreement between East Tennessee and TVA dated August 12, 2021 ("Requested Agreement") in response to the SELC Request.  East Tennessee respectfully objects to the release of any information from the Requested Agreement as every provision of that agreement includes confidential commercial information exchanged by East Tennessee and TVA as part of non-public, bilateral negotiations of commercial agreements and is protected from disclosure by 5 U.S.C. § 552(b)(4) and 18 C.F.R. § 1301.7 ("FOIA Exemption 4").  Because the release of such information would result in significant financial injury to East Tennessee with respect to its competition with other natural gas pipelines and its negotiation of similar commercial agreements with other customers, and in accordance with applicable law, TVA should withhold disclosure of the information in the Requested Agreement.

A.   **Legal Standard Prohibiting Release of the Requested Agreement Under FOIA Exemption 4 and the Trade Secrets Act**

1.   FOIA Exemption 4

Under FOIA Exemption 4, the mandatory FOIA disclosure provisions do not apply to "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4); *see also* 18 C.F.R. § 1301.8 (TVA regulations implementing FOIA Exemption 4).  Exemption 4 thus protects information "which is (a) commercial or financial, (b) obtained from a person, and (c) confidential or privileged." *Landfair* v. *Dep't of the Air Force*, 645 F. Supp. 325, 327 (D.D.C. 1986).

Commercial or financial information submitted voluntarily to the government is confidential if it is of the type that "would customarily not be released to the public by the person from whom it was obtained." *McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin.*, 180 F.3d 304 (D.C. Cir. 1999) (quoting *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992)); *see also Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 709 (D.C. Cir. 1971).

Under FOIA Exemption 4, the Requested Agreement is commercial and financial information obtained from a person and is considered confidential under the "voluntary submission test," because it is not of the type of information East Tennessee customarily releases to the public. Therefore, the Requested Agreement falls within FOIA Exemption 4 and is required to be withheld by the Trade Secrets Act, for reasons explained further below.

2.  Requirement to Withhold Under the Trade Secrets Act

The Trade Secrets Act, 18 U.S.C. § 1905, independently prohibits disclosure of information that falls within FOIA Exemption 4. Because the Trade Secrets Act is considered "co-extensive with" Exemption 4, this Act "effectively prohibits an agency from releasing information subject to" Exemption 4. *The Boeing Co. v. U.S. Dep't of the Air Force*, 616 F. Supp. 2d 40, 46 (D.D.C. 2009) (quoting *McDonnell Douglas Corp. v. Dep't of the Air Force*, 375 F.3d 1182, 1186 (D.C. Cir. 2004)); *see also Canadian Commercial Corp. v. Dep't of the Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008); *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1151-52 (D.C. Cir. 1987). As demonstrated below, the Requested Agreement constitutes confidential commercial or financial information of East Tennessee, and is exempt from disclosure under FOIA Exemption 4. As such, TVA is **required** by the Trade Secrets Act to withhold that information from disclosure.

3.  The Office of the Attorney General Guidelines and the Department of Justice Office of Information Policy Guidance Further Support Withholding

FOIA Guidelines published by the Office of the Attorney General ("OAG") in March 2009 maintained the established understanding of the scope of Exemption 4 and the Trade Secrets Act. In its Guidelines, the OAG provided that it will defend an agency's denial of a FOIA request if "(1) the agency reasonably foresees that disclosure would harm an interest protected by one of the statutory exemptions, or (2) disclosure is prohibited by law." OAG, *Memorandum for Heads of Executive Departments and Agencies* (Mar. 19, 2009), https://www.justice.gov/sites/default/files/ag/legacy/2009/06/24/foia-memo-march2009.pdf. As such, the OAG (which has not issued subsequent superseding FOIA policies) has maintained the scope of Exemption 4 and the Trade Secrets Act as its policy.

Additionally, on October 3, 2019, the Department of Justice's Office of Information Policy issued guidance addressing the Supreme Court decision in *Food Marketing Institute v. Argus Leader Media,* 139 S. Ct. 915 (2019). This guidance contains a detailed discussion of the decision in *Food Marketing Institute v. Argus Leader,* as well as the scope of Exemption 4 before and after the Supreme Court decision. The guidance explains that information is exempted from disclosure pursuant to FOIA Exemption 4 when two conditions are met:

> (1) The submitter treats the information as private; and
>
> (2) The government provides express or implied assurance that the information will not be publicly disclosed.

On the latter condition, the guidance explains that the assurances can be found expressly in direct communications with the submitted, through general notices on an agency's website,

through regulations indicating that the information will not be publicly disclosed, or implied through factors such as the context in which the information was provided to the government, the government's treatment of similar information and its broader treatment of information related to the program or initiative to which the information relates, and whether there is a reasonable expectation that the information would be maintained confidential. Office of Information Policy, *Exemption 4 After the Supreme Court's Ruling in Food Marketing Institute v. Argus Leader Media,* (Oct. 3, 2019), https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media.

**B.     The Requested Agreement Contains Confidential Commercial or Financial Information Falling Under FOIA Exemption 4**

As previously stated, the Requested Agreement is commercial or financial information that TVA obtained from a person and is considered confidential under the voluntary submission test.

1.     Commercial or Financial Information

As a preliminary matter, the Requested Agreement constitutes "commercial or financial information" for purposes of Exemption 4. "Commercial information" is broadly construed and generally includes any information that "relates to business and trade." *U.S. DOJ Guide to the FOIA*, 2009 Ed., at 266, https://www.justice.gov/archive/oip/foia_guide09/exemption4.pdf; *see also Baker & Hostetler LLP* v. *U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006). East Tennessee competes in the natural gas transportation industry against a number of companies. Each provision contained in the Requested Agreement reveals East Tennessee's unique negotiation strategies that are necessary to compete with strategies that other entities and their affiliates implement in natural gas transportation industry. All such information relates to business and trade. Many of the provisions in the Requested Agreement also reflect the negotiations and communications between East Tennessee and TVA during which East Tennessee shared its strategies for the development of the Ridgeline Project, including strategies for receiving regulatory approvals, project timelines and milestones, rates for services, and creditworthiness requirements. The Requested Agreement, in its entirety, thus is considered "commercial or financial information" under Exemption 4 and the Trade Secrets Act.

2.     Obtained from a Person

The Requested Agreement was obtained by TVA from a "person"—East Tennessee. East Tennessee is a limited liability company, and limited liability companies are considered persons for purposes of FOIA Exemption 4. *See* 5 U.S.C. § 551(2); *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 529 n.5 (D.C. Cir. 1979).

3.     Confidential or Privileged

Thus, the only remaining question in determining the applicability of FOIA Exemption 4 to the Requested Agreement is whether it is "confidential." The answer is yes—under both the voluntary submission test and the involuntary submission test, the Requested Agreement is confidential and thus should be withheld under FOIA Exemption 4.

The Requested Agreement is "confidential" under the involuntary submission test of Exemption 4 because such information was—and is—customarily and actually treated as private by East Tennessee and was provided to TVA with the expectation that TVA would maintain the privacy of the information. *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (finding USDA properly withheld food stamp participation data of grocery retailers where retailers never disclosed the information publicly and the government did not intend for the information to be disclosed). East Tennessee expected this information to be treated as protected because it was provided to the government under assurances of confidentiality.

The Requested Agreement is similarly "confidential" information submitted to the government under the voluntary submission test of Exemption 4 because it is of the type that "would customarily not be released to the public by the person from whom it was obtained." *McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin.*, 180 F.3d 303, 304 (D.C. Cir. 1999). East Tennessee has every reason to treat such information confidentially, as East Tennessee faces actual competition in the energy infrastructure market. A number of competitors operate natural gas transportation projects similar to those operated by the East Tennessee. Accordingly, East Tennessee faces direct competition from these companies. *See, e.g.*, *Gulf & W. Indus.*, 615 F.2d at 530 (citing to presence of just one competitor in finding actual competition); *Landfair*, 645 F. Supp. at 329 (citing to presence of three competitors).

The Requested Agreement is the result of negotiations between East Tennessee and TVA, which reflect East Tennessee's strategies for the development of the Ridgeline Project. The provisions contained in this agreement reflect commercial decisions made by East Tennessee, and the Requested Agreement contains commercial or financial information that reflects East Tennessee's process when seeking government authorizations and permits. Specifically, the terms and conditions of the agreement reflect the expertise and experience of East Tennessee's personnel and counsel in the energy infrastructure industry and the strategies crafted in order to achieve government approvals for East Tennessee's business operations. East Tennessee customarily keeps such agreements confidential in order to protect the business decision making and related considerations revealed in the agreements, as well as information related to its business operations referenced in the agreements.

The Requested Agreement, if made public, would reveal many aspects of East Tennessee's unique approach for planning, structuring, and operating natural gas transportation projects. Here, the disclosure of the Requested Agreement would release the private information of East Tennessee that it had intended to keep private, and information with which East Tennessee's competitors are not currently familiar. This disclosure would reveal numerous aspects of East Tennessee's approach to negotiations and pursuit of government authorizations, information which is protected from disclosure under FOIA Exemption 4. *See Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 150-51 (D.C. Cir. 2001); *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1288 (D.C. Cir. 1983) (considering "trade secrets" for Exemption 4 purposes to include a "commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be the end product of . . . substantial effort"); *see also Airline Pilots Ass'n, Int'l v. U.S. Postal Serv.*, No. CIV. A. 03-2384 (ESH), 2004 WL 5050900, at *5 (D.D.C. June 24, 2004)

(holding that "methods of operation" qualify for Exemption 4). A competitor of East Tennessee should not be allowed to usurp these plans, which were the product of East Tennessee's experience and effort, for use in its own business operations.

In light of the foregoing, East Tennessee respectfully requests that TVA withhold from public disclosure, as authorized by FOIA Exemption 4, the Requested Agreement. Please contact the undersigned at (713) 627-5396 should you have any questions regarding this response.

Sincerely,
East Tennessee Natural Gas, LLC

_/s/ P. Martin Teague_
P. Martin Teague
Vice President US Gas Law