SOUTHERN ENVIRONMENTAL
LAW CENTER,

    Plaintiff,

    v.

TENNESSEE VALLEY AUTHORITY,

    Defendant,

EAST TENNESSEE NATURAL GAS, LLC,

    Intervenor Defendant,

and,

TENNESSEE GAS PIPELINE COMPANY,
L.L.C.,

    Intervenor Defendant.

Case No. 3:22-cv-00108-DCLC-DCP

District Judge Clifton L. Corker
Magistrate Judge Debra C. Poplin

Oral Argument Requested

_____

**TVA'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND IN SUPPORT OF TVA'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

_____

David D. Ayliffe, Director, Litigation
Steven C. Chin, Attorney
Sydney D. Nenni, Attorney
TVA GENERAL COUNSEL'S OFFICE
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.3052
scchin@tva.gov

Attorneys for Tennessee Valley Authority

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 6

    I.      The Freedom of Information Act ("FOIA") ........................................... 6

    II.     Under FOIA Exemption 4, TVA Properly Withheld Portions of the Precedent Agreements Reflecting Confidential Commercial or Financial Information Submitted to TVA by each Intervenor-Defendant ........................... 8

    A.     TVA Complied with Its FOIA Regulations under 18 C.F.R. § 1301.8, and Withheld Confidential Commercial Information Upon Request by Submitters ........................................................................................... 9

    B.     Plaintiff's Argument that the Redacted Information Was Not Submitted by a Person is Plainly Wrong ................................................................... 12

    III.    TVA and the Intervenors Have Demonstrated that the Disclosure of Redacted Information Would Cause Foreseeable Harm. ................................. 15

CONCLUSION ............................................................................................................... 18

i

# INTRODUCTION

Defendant Tennessee Valley Authority ("TVA") respectfully submits this brief opposing the motion for summary judgment filed by Plaintiff, Southern Environmental Law Center ("SELC") and in support of TVA's cross-motion for summary judgment on Plaintiff's Complaint (Doc. 46) under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

In August 2021, Plaintiff submitted a FOIA request for TVA's records of communications with gas pipeline companies, including Intervenor-Defendant East Tennessee Natural Gas, LLC ("East Tennessee") and Intervenor-Defendant Tennessee Gas Pipeline Company, L.L.C. ("Tennessee Gas") (collectively, the "Intervenors"), regarding possible or planned gas infrastructure projects. In October 2021, TVA provided Plaintiff with copies of two precedent agreements[1] with certain portions of the records withheld from disclosure under applicable FOIA Exemptions. In January 2022, Plaintiff withdrew the remainder of its FOIA request, (TVA's Statement of Additional Material Facts ¶ 8),[2] and requested TVA's final determination as to the

---

[1]  TVA has entered into a precedent agreement with East Tennessee and a precedent agreement with Tennessee Gas. "A precedent agreement between a transporter and shipper of natural gas is a preliminary agreement to enter into a future firm gas transportation agreement if certain conditions precedent are met." Draft Environmental Impact Statement, Cumberland Fossil Plant Retirement, at 10 n.1 (Apr. 2022), https://tva-azr-eastus-cdn-ep-tvawcm-prd.azureedge.net/cdn-tvawcma/docs/default-source/environment/cuf-deis-report-only-20220421.pdf?sfvrsn=61161246_3.
    Courts may take judicial notice of facts available on government websites, including TVA's website. *See Mitchell v. TVA*, No. 3:14-cv-360, 2015 WL 1962203, at *4 n.2 (E.D. Tenn. Apr. 30, 2015) (taking judicial notice of information on TVA's website). Additionally, "[t]he basic facts as to the activities of TVA, including the development of its power program and other statutory programs, are matters of public record and common knowledge . . . and are judicially known[.]" *U.S. ex rel. TVA v. Easement & Right-of-way Over Two Tracts of Land*, 246 F. Supp. 263, 269 (W.D. Ky. 1965), aff'd 375 F.2d 120 (6th Cir. 1967).

[2]  TVA's Response to SELC's Statement of Undisputed Material Facts and TVA's Statement of Additional Material Facts is being filed contemporaneously herewith. (Doc. 48.)

validity of those redactions. After TVA's FOIA appeals officer upheld TVA's redactions, Plaintiff filed this lawsuit seeking an order requiring TVA to disclose certain portions of the redacted precedent agreements.

On July 12, 2022, TVA, East Tennessee, and SELC jointly agreed to a partial settlement regarding certain portions of the redacted East Tennessee Precedent Agreement that are still in dispute. (Docs. 40, 41.) On July 14, 2022, TVA, Tennessee Gas, and SELC jointly agreed to a partial settlement regarding certain portions of the redacted Tennessee Gas Precedent Agreement that are still in dispute. (Doc. 42.) As to these remaining sections in dispute, there is no genuine issue of material fact. (TVA's Statement of Additional Material Facts, Doc. 48.)

Plaintiff demands redacted information that, if disclosed, would reveal confidential commercial and financial information that is protected from disclosure under FOIA Exemption 4 because it would result in competitive harm to East Tennessee and Tennessee Gas, the submitters of the information, and to TVA. If TVA were to disclose confidential commercial or financial information provided to TVA, the foreseeable harm is obvious—disclosure would enable the competitors of the Intervenor-Defendants to take advantage of the Intervenors' confidential trade secret and commercial or financial information. FOIA's plain language prohibits this result. And the foreseeable harm would not be limited to Intervenors as disclosure of this confidential information would jeopardize TVA's ability to contract with business partners for whom confidentiality is essential to operate in highly competitive markets and, thus, would undermine TVA's ability to carry out its statutory mission to provide affordable, reliable, and resilient electric power to the people of the Tennessee Valley region. 16 U.S.C. §§ 831 et seq.

Nowhere in Plaintiff's memorandum of law does Plaintiff contest that any of the redacted information is commercial or confidential in nature. Rather Plaintiff's sole argument against

2

TVA's application of FOIA Exemption 4 is that the information was not obtained from a person but rather negotiated between two parties. This argument is incorrect. Accordingly, because TVA has properly applied Exemption 4 to the redacted portions of the Precedent Agreements,[3] the Court should deny Plaintiff's motion for summary judgment and grant TVA's cross-motion for summary judgment.

## FACTUAL BACKGROUND

On August 5, 2021, SELC submitted a request for records pursuant to FOIA. (Declaration of Denise Smith, Doc. 47, ¶ 4) (hereinafter referred to as "Smith Decl.").) SELC requested the following records:

> Records of communications, including all attachments thereto, with Tennessee Gas Pipeline, Kinder Morgan, Texas Eastern Transmission, East Tennessee Natural Gas, or Enbridge regarding possible or planned gas infrastructure projects, including pipelines, compressor stations, and gas plants, to be constructed after January 2021.

(*Id.* at ¶ 5; Doc. 1-6.) The FOIA request was submitted by Mr. Trey Bussey, on behalf of SELC. (*Id.* at ¶ 4.)

In a call on August 25, 2021, SELC requested, and TVA agreed to prioritize, the scope of the FOIA request to be for two agreements TVA had recently executed with gas pipeline companies: one with East Tennessee and one with Tennessee Gas. (*Id.* ¶¶ 6, 7.) At that time, TVA had reasonable belief that both these agreements, or portions thereof, had been designated as confidential and protected from disclosure under FOIA Exemption 4. (*Id.* ¶ 6.)

---

[3] TVA initially withheld information under FOIA Exemption 5 pursuant to the Government's confidential commercial information privilege; however, after further review of the portions of the precedent agreements till in dispute TVA is withdrawing its assertion of FOIA Exemption 5. (*See* Smith Decl. ¶¶ 20–21.)

As required by TVA's FOIA regulations, 18 C.F.R. § 1301.8, TVA provided notice to East Tennessee and Tennessee Gas that TVA had received a FOIA request for records regarding possible or planned gas infrastructure projects with East Tennessee and Tennessee Gas and gave East Tennessee and Tennessee Gas an opportunity to object to the disclosure of the precedent agreements or any portions thereof pursuant to FOIA Exemption 4. (Smith Decl. ¶ 8.) Both East Tennessee and Tennessee Gas responded and indicated that the confidential commercial or financial information contained within each respective precedent agreement was protected from disclosure pursuant to FOIA Exemption 4. (*Id.* ¶¶ 9-11.) TVA considered East Tennessee's and Tennessee Gas's objections, and the specific information provided by both East Tennessee and Tennessee Gas as grounds for nondisclosure and reasonably believed that both East Tennessee and Tennessee Gas had articulated good-faith bases for withholding the redacted portions of the precedent agreements as trade secrets and/or confidential commercial or financial information protected from disclosure under FOIA Exemption 4. (*Id.* ¶ 12.)

On October 28, 2021, Denise Smith, TVA FOIA Officer, sent Mr. Bussey a letter regarding TVA's interim response to the request and provided Mr. Bussey with copies of the two precedent agreements responsive to SELC's request. (*Id.* at ¶ 13; Doc. 16-1.) Ms. Smith informed Mr. Bussey that the information requested involved information obtained from an outside source and that FOIA and TVA regulations require that TVA provide notice to submitters before the release of business information that may be confidential or competitively sensitive and protected by Exemption 4. (Smith Decl. ¶ 13.) She therefore indicated to Mr. Bussey that the information redacted from the precedent agreements is such confidential information. (*Id.*) Ms. Smith informed Mr. Bussey that he would have an opportunity to appeal any adverse determination on this request once the final response is made. (*Id.*)

4

In response to TVA's interim determination, on November 1, 2021, Mr. Bussey sent an email to Ms. Smith inquiring as to how Exemption 4 applied to certain redactions within the two precedent agreements. (*Id.* ¶ 14; Doc. 47-6.) Ms. Smith responded to Mr. Bussey on November 16, 2021, informing him that in response to his email, TVA undertook a second review of the information contained within the two precedent agreements and did not find additional information that could be publicly released. (Smith Decl. ¶ 14.) Ms. Smith again informed him that once a final response was made, SELC would have the opportunity to appeal any adverse determination. (*Id.*)

On January 27, 2022, Mr. Bussey contacted Ms. Smith to withdraw the remainder of the FOIA request, thus limiting the scope of its FOIA request to the East Tennessee Precedent Agreement and to the Tennessee Gas Precedent Agreement and to request TVA's final determination. (*Id.*) Ms. Smith responded to Mr. Bussey's request on February 2, 2022, informing him that if he did not require further records, TVA would send a letter completing the request which would include his right to appeal the redactions from the precedent agreements provided. (*Id.*) Mr. Bussey thereinafter indicated that he did not require further records and requested a final determination. (*Id.*)

On February 4, 2022, Ms. Smith sent Mr. Bussey a letter regarding TVA's final determination. (Smith Decl. ¶ 15; Doc. 1-9 at PageID # 137.) In that letter, Ms. Smith informed Mr. Bussey that it processed notices to the parties to the two precedent agreements and information each party identified as confidential commercial information was withheld under FOIA Exemption 4. (Smith Decl. ¶ 15.) Ms. Smith further explained that Exemption 4 protects such confidential commercial, financial, and trade secret information submitted to the government by an outside source. (*Id.*)

After receiving TVA's final determination, George Nolan, an attorney employed by SELC, filed an administrative appeal. (*Id.* ¶¶ 16-17; Docs. 1-7, 47-7.) On March 7, 2022, TVA denied the appeal, and cited to Exemption 4 and Exemption 5 as the basis for the redactions. (Smith Decl. ¶ 18; Doc. 1-11.) On March 24, 2022, SELC filed this present suit seeking to cast aside TVA's determination that the redacted confidential commercial and financial information contained within each precedent agreement was properly withheld under FOIA. (Doc. 1.) East Tennessee and Tennessee Gas moved to intervene in this action (Docs. 19, 29) and the Court granted both motions (Docs. 24, 33).

On July 12, 2022, TVA, East Tennessee, and SELC jointly agreed to a partial settlement regarding certain portions of the redacted East Tennessee Precedent Agreement that are still in dispute, which include Section 4 (Shipper Approvals), Section 7(B) (Transporter's Preliminary Activities), Section 10 (Pre-service Costs), and Section 11(B), (C) (Termination). (Docs. 40, 41.) Similarly, on July 14, 2022, TVA, Tennessee Gas, and SELC jointly agreed to a partial settlement regarding certain portions of the redacted Tennessee Gas Precedent Agreement that are still in dispute, which include Section 1(b)(ii) (Required Interim Service), Section 2 (The Open Season), Sections 3 (Foundation Shipper Status), Section 4(E) (Transporter Stakeholder Engagement), Section 7(A)(i) (Shipper Management Approval), Section 9 (Reimbursement by Shipper of Reimbursable Costs) and Exhibit D (¶¶ 1-2) (FT-IL Negotiated Rate Agreement) (Doc. 42.)

## ARGUMENT

### I.    The Freedom of Information Act ("FOIA")

FOIA provides a mechanism for the public to access certain records from federal agencies, including TVA, 5 U.S.C. § 552, and "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information

Case 3:22-cv-00108-DCLC-DCP   Document 49   Filed 07/15/22   Page 8 of 21
PageID #: 609

confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep' of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). While FOIA requires disclosure under certain circumstances, "Congress recognized [ ] that public disclosure is not always in the public interest[.]" *Cent. Intelligence Agency v. Sims*, 471 U.S. 159, 166–67 (1985). Agency records that fall within one of the nine enumerated exemptions, 5 U.S.C. § 552(b)(1)–(9), need not be disclosed. And "FOIA expressly recognizes that 'important interests [are] served by [its] exemptions,' and '[t]hose exemptions are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement.'" *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (internal citations omitted) ("*Argus Leader*").

In FOIA cases, "district courts typically dispose of [such] cases on summary judgment before a plaintiff can conduct discovery." *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001) (internal citation omitted). First, the court must determine whether the agency has made "reasonable efforts to search for the records" requested by the plaintiff. *See* 5 U.S.C. § 552(a)(3)(C); *see also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).[4] Second, if an agency's search locates records responsive to a request, the court determines whether the government has properly withheld records or information under any of FOIA's exemptions. *See* 5 U.S.C. § 552(a)(4)(B).

An agency bears the burden of justifying its non-disclosure, and it sustains this burden by submitting detailed affidavits identifying the documents at issue and the reasons why a claimed exemption applies. *See* 5 U.S.C. § 552(a)(4)(B); *Carney*, 19 F.3d at 812. In meeting its burden, an agency may rely on declarations of government officials, which courts accord a presumption of

---

[4]     Plaintiff has not contested that TVA did not conduct a reasonable search. In fact, Plaintiff withdrew its FOIA request immediately after TVA provided redacted versions of the Precedent Agreements. (Smith. Decl. ¶ 14; Doc. 48, TVA's Statement of Additional Materials Facts ¶ 8.)

7

good faith. *See Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994); *Carney,* 19 F.3d at 812 (explaining that an agency's declarations in support of its determination are "accorded a presumption of good faith.") (citation omitted). "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." *Rugiero*, 257 F.3d at 544 (citation omitted).

Here, TVA complied with its FOIA regulations, 18 C.F.R. § 1301.8, and has met its burden by identifying the specific portions of the two precedent agreements that remain in dispute and by providing a reasonable justification under FOIA Exemption 4 as to why these portions have been withheld.

> **II.    Under FOIA Exemption 4, TVA Properly Withheld Portions of the Precedent Agreements Reflecting Confidential Commercial or Financial Information Submitted to TVA by each Intervenor-Defendant.**

FOIA Exemption 4 protects from public disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4); *see also* 18 C.F.R. § 1301.8 (TVA regulations implementing FOIA Exemption 4). the Supreme Court recently clarified when information is confidential under Exemption 4: "At least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Argus Leader*, 139 S. Ct. at 2366. To qualify for protection under Exemption 4, records must fall under one of two broad categories: (1) trade secrets; or (2) information that is (a) commercial or financial and (b) obtained from a person and (c) privileged or confidential. 5 U.S.C. § 552(b)(4); *see also Public Citizen Health Research Grp. v. Food and Drug Admin.*, 704 F.2d 1280, 1288–90 (D.C. Cir. 1983).

The plain text of Exemption 4 ensures that federal agencies will continually be able to obtain necessary and reliable commercial and financial information from outside the government. *See Critical Mass Energy Project v. NRC*, 975 F.2d 871, 877–78 (D.C. Cir. 1992) ("Critical Mass") ((citing *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 767 (D.C. Cir. 1974)). Exemption 4 also protects those whose information is sought from the competitive disadvantages that would result from disclosure. *Critical Mass*, 975 F.2d. at 877-78. The legislative history of Exemption 4 reveals that Congress did not intend the FOIA to be used to facilitate disclosure of proprietary information that would not be accessible under the normal rules of the business world. *See* S. Rep. No. 89-813, at 9 (1965) (Exemption 4 intended to protect information "which would customarily not be released to the public by the person from whom it was obtained").

### A. TVA Complied with Its FOIA Regulations under 18 C.F.R. § 1301.8, and Withheld Confidential Commercial Information Upon Request by Submitters

TVA, upon receiving SELC August 5, 2021, FOIA request, reasonably determined the request pertained to two precedent agreements TVA had recently and separately executed with East Tennessee and with Tennessee Gas. (Smith Decl. ¶ 6.) In compliance with TVA's FOIA regulations, 18 C.F.R. § 1301.8, TVA contacted East Tennessee and Tennessee Gas to inform them of the FOIA recent and notify them of their opportunity to provide TVA with "a written statement objecting to the release of any information in the [precedent] agreement that your firm considers confidential or competitively sensitive" and that "[a]ny statement should be specific as to why the release of the information is likely to cause substantial competitive harm to your company." (Smith Decl. ¶ 8; *see also* Docs. 47-1, 47-2.) In response, East Tennessee and Tennessee Gas separately requested that TVA withhold certain portions of the respective precedent agreements from disclosure pursuant to FOIA Exemption 4, which exempts from disclosure trade secret or

9

confidential commercial or financial information. (Smith Decl. ¶¶ 9-11; *see also* Docs. 47-3, 47-4, and 47-5.) In consideration of those requests and written statements, TVA determined that both had articulated good-faith basis for withholding the redacted portions of the precedent agreements as trade secrets and/or confidential commercial or financial information protected from disclosure under FOIA Exemption 4. (Smith Decl. ¶ 12.)

As required under a traditional FOIA Exemption 4 analysis, the information withheld is confidential commercial and financial information. Commercial or financial information are interpreted broadly to encompass "information that is 'instrumental' to a commercial interest" or services a related interest. *100 Reporters, LLC v. U.S. Dep't of Justice*, 248 F. Supp. 3d 115, 137 (D.D.C. 2017). Examples include "business sales statistics, research data, technical designs, overhead and operating costs, and information on financial condition", *Landfair v. U. S. Dep't of the Army*, 645 F. Supp. 325, 327 (D.D.C. 1986) (citation omitted), but also includes contract terms, business operations and decisions, and pricing information. *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 567 F. Supp. 3d 204, 212–13 (D.D.C. 2021) (contract terms and pricing); *Pub. Citizen Health Research. Grp. v. U.S. Health and Human Serv.*, 975 F. Supp. 2d 81, 105 (D.D.C. 2013) (business operations and decisions); *Merit Energy Co. v. U.S. Dep't of Interior*, 180 F. Supp. 2d 1184, 1188 (D. Colo. 2001) (leasing and pricing information). The portions of the information withheld from disclosure under the East Tennessee Precedent Agreement and the Tennessee Gas Precedent Agreement—business decisions, practices, and conduct along with financial commitments and project and construction timelines—qualify as commercial or financial information under FOIA Exemption 4. (Smith Decl. ¶¶ 20-21; Declaration of Anne N. Moore, Doc. 44-1 ¶¶ 7, 27, 32, 38, 44 (East Tennessee) (hereinafter referred to as "Moore Decl.");

Declaration of Preston Troutman[5] ¶¶ 15, 30-38 (Tennessee Gas) (hereinafter referred to as "Troutman Decl.").)

The information withheld is confidential under FOIA Exemption 4 because it is "customarily kept private, or at least closely held, by the person imparting it," and "if the party receiving it provides some assurance that it will remain secret." *Argus Leader*, 139 S. Ct. at 2363. Information that is identified as confidential and provided to an agency under an assurance of privacy—either express or implied—will be upheld as confidential for purposes of Exemption 4. *See e.g., Argus Leader*, 139 S. Ct. at 2363; *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Com.*, No. 1:18-cv-03022 (CJN), 2020 WL 4732095, at *3 (D.D.C. Aug. 14, 2020) (holding that an "assurance of confidentiality [can be] either express or implied"). It does not matter that the information is contained in a contract. Substance prevails over form. The correct inquiry is whether the submitter reasonably understood it was providing information to the agency "in confidence." *Argus Leader*, 139 S. Ct. at 2363 (citations omitted).

Here, East Tennessee and Tennessee Gas each submitted commercial and financial information to TVA with an understanding that TVA would keep and provide assurances that the information would be kept private. For example, East Tennessee submitted information to TVA for inclusion in the East Tennessee Precedent Agreement under assurances of confidentiality. (Moore Decl. ¶ 19.) Similarly, Tennessee Gas submitted information to TVA for inclusion in the Tennessee Gas Precedent Agreement under the shared expectation that the terms and conditions would remain confidential. (Troutman Decl. ¶¶ 13, 15.) Moreover, both East Tennessee and Tennessee Gas customarily and actually treat the information contained within each Precedent

---

[5] The Declaration of Preston Troutman is attached to Tennessee Gas's cross-motion for summary judgment.

Agreement as private. (Moore Decl. ¶ 21; Troutman Decl. ¶ 14.) If TVA were to disclose East Tennessee's and Tennessee Gas's confidential information, companies would be deterred from seeking out contracts with TVA as opposed to other entities that would not disclose confidential information with whom they could do business. The foreseeable loss of future business will interfere with TVA's ability to carry outs its statutory mission. (Smith Decl. ¶ 18; *see also*, Doc. 1-11 at PageID # 146.)

Thus, as attested in the declaration of TVA's FOIA Officer, Denise Smith, East Tennessee and Tennessee Gas provided TVA with ample justification for the segregation and withholding of trade secret and/or confidential commercial and financial information in the precedent agreements, and TVA properly withheld the redacted portions of the precedent agreements under Exemption 4. (Smith Decl. ¶ 12.)

Intervenors also have submitted declarations and memorandums of law confirming that the redacted portions of the precedent agreements should be withheld. Under Exemption 4 and that TVA obtained the information in the precedent agreements.

### B. Plaintiff's Argument that the Redacted Information Was Not Submitted by a Person is Plainly Wrong.

Plaintiff's sole argument is that Exemption 4 does not apply because the information resides in a final contract and was not obtained from a person. They do not contest that any of the redacted information is commercial or confidential in nature. Instead, Plaintiff argues that such information was not "obtained from a person" and therefore Exemption 4 does not apply. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Memo."), Doc. 26 at PageID # 265–67.

Plaintiff is wrong. Information is "obtained from a person" if "such information was supplied to the agency by a person." *Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133 F. Supp.

12

3d 109, 123 (D.D.C. 2015) ("*Auto Safety*"). For purposes of FOIA, limited liability corporations like East Tennessee and Tennessee Gas are considered "persons" for Exemption 4 purposes. *See* 5 U.S.C. § 551(2). Confidential commercial and financial information shared with TVA from limited liability corporations like East Tennessee and Tennessee Gas is not stripped of Exemption 4 protections by mere virtue of *how* that information is ultimately used by an agency. Rather, "[i]nformation [ ] initially obtained from outside the agency and [ ] then modified through negotiations" still qualifies for Exemption 4 protection. *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 68 (D.D.C. 2012) (citing *Pub. Citizen Health Research Grp. v. Nat'l Institute of Health,* 209 F. Supp. 2d 37, 45 (D.D.C. 2002) ("*NIH*"); *see also*, *Auto Safety,* 133 F. Supp. 3d at 123 (same). Even negotiated provisions may include information provided by a counterparty which would reveal confidential commercial information if disclosed, and such material may still be subject to Exemption 4 and withheld. *NIH*, 209 F. Supp. 2d at 44, 49–51 (holding that even though a final royalty rate was achieved through negotiation, the submitter was required to provide the information to the government in order to enter into an agreement and therefore it came from the submitter. Given that the information was confidential and could harm the submitter if released, Exemption 4 applied to the negotiated item).

While the Precedent Agreements at issue here were in fact prepared as a result of bilateral negotiations with East Tennessee and with Tennessee Gas, respectively, TVA received confidential commercial and financial information from each Defendant-Intervenor, and such information was thereinafter included in the final precedent agreements. (Moore Decl. ¶ 19; Troutman Decl. ¶ 15.)

For each of the redacted sections and sub-sections of the East Tennessee Precedent Agreement that remain in dispute, East Tennessee was the primary drafter. (Moore Decl. ¶ 24-26,

29-31,35-37,41-43.) East Tennessee provided language to TVA, which TVA accepted either without change or with a minor clarifying change. (*Id.*) The information in the disputed sections and sub-sections of the East Tennessee Precedent Agreement were not "substantially reformulated" or modified in a way by TVA that would cause such information to belong to TVA. Rather, the confidential commercial information was "repeated verbatim or slightly modified" in the final agreement such that the same information still belonged to the submitter of the information. *See S. All. for Clean Energy*, 853 F. Supp. 2d at 68. FOIA Exemption 4 continues to apply and protect the commercial confidential information from public disclosure in the sections and sub-sections of the East Tennessee Precedent Agreement.

For each of the redacted sections and sub-sections in the Tennessee Gas Precedent Agreement that remain in dispute, Tennessee Gas submitted confidential commercial information to TVA, which is a type of information customarily not released to the public. (Troutman Decl. ¶ 15.) The information in the disputed sections and sub-sections of the Tennessee Gas Precedent Agreement were not "substantially reformulated" or modified in a way by TVA that would render such information to have been originated from TVA. *See, e.g., NIH,* 209 F. Supp. 2d at 45; *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 529–30 (D.C. Cir. 1979). FOIA Exemption 4 continues to apply and protect the commercial confidential information from public disclosure in the sections and sub-sections of the Tennessee Gas Precedent Agreement.

For the reasons stated above, TVA properly applied Exemption 4 to the confidential commercial and financial information contained within each Precedent Agreement and that remain in dispute.

## III. TVA and the Intervenors Have Demonstrated that the Disclosure of Redacted Information Would Cause Foreseeable Harm.

The application of the FOIA Improvement Act ("FIA") does not change the result. The FIA provides that an agency may withhold information pursuant to a FOIA exemption "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption . . . or disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). TVA's withholding of the certain confidential and commercial information in the precedent agreements satisfies these requirements under either prong.[6] Since its enactment, courts have been divided on the application of the foreseeable harm requirement to confidential commercial and financial information. Some courts hold that in the context of confidential commercial or financial information, the very nature of such private information "necessarily satisf[ies] FIA's foreseeable harm requirement." *New York Times Co. v. U.S. Food and Drug Admin.*, 529 F. Supp. 3d 260, 288 (S.D.N.Y. 2021); *see also Am. Small Bus. League v. U.S. Dep't of Defense*, 411 F. Supp. 3d 824, 836 (N.D. Cal. 2019) (holding that the FIA foreseeable harm requirement was satisfied because, by definition, disclosure of confidential information would destroy the confidential nature of the information at issue). Other courts have held that an agency may satisfy the foreseeable harm requirement by showing that disclosure would cause "genuine harm to economic or business interests, and thereby disuad[e] others from submitting similar information to the government." *Ctr. for Investigative Reporting v.*

---

[6]    TVA incorporates by reference East Tennessee's argument that TVA's withholding under Exemption 4—which is proper for the reasons explained above—means that the withheld information is also subject to the Trade Secrets Act. The Trade Secrets Act is coextensive with Exemption 4. *See e.g., Pac. Architects & Eng'rs Inc. v. U.S. Dep't of State*, 906 F.2d 1345, 1347 (9th Cir. 1990) (noting that Exemption 4 and the Trade Secrets Act are coextensive and where a statute bars disclosure under FOIA, "the agency does not have discretion to release it."). The Trade Secrets Act prohibits information from being disclosed, meaning that information withheld under Exemption 4 cannot be disclosed as a matter of law, therein satisfying the requirements of the FIA. *See* Doc. 44 at PageID # 523–24.

*U.S. Customs and Border Prot.*, 436 F. Supp. 3d 90, 113 (D.D.C. 2019) (internal quotation marks and citations omitted). Here, this court need not resolve the differences in approach by courts because TVA easily satisfies the FIA's foreseeable harm requirement under both approaches.

As to the first approach, "the plain and ordinary meaning of Exemption 4 indicates that the relevant protected interest is that of the information's confidentiality—that is, its private nature. Disclosure would necessarily destroy the private nature of the information, no matter the circumstance." *Am. Small Bus. League*, 411 F. Supp. 3d at 836. Information contained within each precedent agreement is confidential. Disclosure of that confidential information would destroy the very interest in confidentiality under Exemption 4, thereby satisfying the first approach to the FIA.

If TVA were required to identify competitive harm to the submitter or agency in order to satisfy the second approach for establishing FIA's foreseeable harm requirement, then TVA satisfies such requirements for two reasons. First, TVA, East Tennessee and Tennessee Gas would be harmed by disclosure because the disclosure would impair their ability to negotiate future business dealings with an assurance of confidentiality. Exemption 4, at its core, ensures that federal agencies will continually be able to obtain necessary and reliable commercial and financial information from outside the government. *See Critical Mass,* 975 F.2d at 877–78. As TVA explained during the administrative appeal process, the information contained within each Precedent Agreement for which Exemption 4 applies, if publicly released, would harm TVA by impairing its ability to obtain information from counterparties in the future. (Smith Decl. ¶ 18; Doc. 1-11.) For example, if TVA were to disclose confidential commercial information which was provided to TVA under an assurance of privacy, companies would be deterred from seeking out contracts with TVA as opposed to other entities that would not disclose confidential commercial

16

information with whom they could do business, which would have the foreseeable harm of interfering with TVA's ability to carry out its statutory mission. (*Id.*)

Second, such disclosure will substantially harm East Tennessee and Tennessee Gas by weakening their negotiating positions with future customers and their position against competitors. If a competitor of the Intervenors were to learn the unique terms that they offered to TVA in these precedent agreements, that competitor can exploit that knowledge to propose similar but slightly better term on a future project, thereby undermining each Intervenor's competitive position. (*See e.g.*, Moore Decl. ¶ 10; Troutman Decl. ¶¶ 12, 31-38.) On the flip side, if a future customer of East Tennessee or Tennessee Gas were to see the unique terms offered to TVA in the precedent agreements, those customers could then use that knowledge to demand a similar set of favorable or more favorable terms on their projects, even if not appropriate under the circumstances. Not only would this create unreasonable expectations, but it would also affect each Intervenor's ability to negotiate appropriate terms favorable to themselves and impair their customers' willingness to agree to those terms. (*See e.g.*, Moore Decl. ¶ 11; Troutman Decl. ¶ 28.) Moreover, disclosure of the disputed section of the Precedent Agreements would harm the Inventors by revealing how each protects itself from risk, how it structures large-scale capital projects, and how it manages to successfully build those projects. (*See e.g.*, Moore Decl. ¶¶ 27, 32-33, 38-39, 44-45; Troutman Decl. ¶¶ 31-38.) Such disclosure would circumvent the very thing Exemption 4 seeks to protect— confidential commercial information pertaining to a submitter's business dealings and decisions. *See e.g., Pub. Citizen Health Research. Grp. v. U.S. Health and Human Serv.*, 975 F. Supp. 2d at 105 (finding information related to "decisions about managing and conducting . . . business operations" was "sufficiently commercial" under Exemption 4.")

In light of the obvious and foreseeable harm that would result from the disclosure of the redacted information contained within each section and sub-sections of the two precedent agreements that remain in dispute, TVA correctly determined that FOIA Exemption 4 justified the withholding of this confidential commercial or financial information.

## CONCLUSION

Upon the authorities cited and for the reasons stated herein, the Court should grant TVA's cross-motion for summary judgment and deny Plaintiff's motion for summary judgment.

Respectfully submitted,

*s/ Steven C. Chin*
David D. Ayliffe (TN BPR 024297)
Director, Litigation
Steven C. Chin (TN BPR 030011)
Sydney D. Nenni (TN BPR 038898)
TVA GENERAL COUNSEL'S OFFICE
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.3052
ddayliffe@tva.gov
scchin@tva.gov
sschaefer0@tva.gov

Attorneys for Tennessee Valley Authority

111808364

18

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer. Notice of this filing will be sent by operation of the Court's ECF system to all parties as indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

*s/ Steven C. Chin*  
Attorney for Tennessee Valley Authority
