**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | |
|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| v.      ) | **Case No. 3:22-cv-00108-DCLC-DCP** |
| ) | |
| TENNESSEE VALLEY AUTHORITY,      ) | **District Judge Clifton L. Corker** |
| ) | **Magistrate Judge Debra C. Poplin** |
| Defendant,      ) | |
| ) | |
| EAST TENNESSEE NATURAL GAS, LLC,      ) | |
| ) | |
| Intervenor Defendant,      ) | |
| ) | |
| and      ) | |
| ) | |
| TENNESSEE GAS PIPELINE COMPANY, L.L.C.,      ) | |
| ) | |
| Intervenor Defendant.      ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**TENNESSEE GAS PIPELINE COMPANY, L.L.C.'S**
**CROSS MOTION FOR SUMMARY JUDGMENT**

---

Tennessee Gas Pipeline Company, L.L.C. ("Tennessee Gas") files this Memorandum of Law in Support of its contemporaneously filed Cross Motion for Summary Judgment against Plaintiff Southern Environmental Law Center ("Plaintiff") under Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1. Plaintiff seeks disclosure of certain redacted portions of the Precedent Agreement between Tennessee Valley Authority ("TVA") and Tennessee Gas under the Freedom of Information Act ("FOIA"). The Court should grant Tennessee Gas's Cross Motion because the withheld information is protected from FOIA disclosure under Exemption 4 as set

4893-1090-6920

1

forth in TVA's separately filed Brief (Doc. 49), which Tennessee Gas adopts and incorporates by reference herein, and as additionally set forth below. Because Exemption 4 applies to the redacted portions of the Precedent Agreement, TVA properly withheld such information, and Plaintiff's suit seeking to compel disclosure should be summarily dismissed.

## FACTS AND BACKGROUND

Tennessee Gas's proposed Cumberland Project ("Project") involves the potential construction and operation of a new 32-mile-long, 30-inch-diameter pipeline lateral in Dickson, Houston, and Stewart counties, Tennessee. (Tennessee Gas's Statement of Undisputed Material Facts ("SUMF") ¶ 1.) The Project is in support of TVA's proposed action to retire the two units at its coal-fired plant at Cumberland City, Tennessee, and to replace the generation from one of the retired units. (*Id.* ¶ 2.) The construction and operation of a combined cycle combustion turbine gas plant at the same site where the coal-fired plant units are to be retired ("TVA Alternative A") is one of the alternatives being considered by TVA in the ongoing National Environmental Policy Act ("NEPA") review for this proposal. (*Id.* ¶ 3.) The Project will enable Tennessee Gas to provide firm transportation service to TVA on Tennessee Gas's pipeline system to serve TVA Alternative A, in the event that TVA Alternative A is selected by TVA to replace generation for one of the retired units. (*Id.* ¶ 4.) Two other alternatives also are being considered by TVA in its NEPA review to replace the generation from one of the retired units. (*Id.* ¶ 5.)

On August 11, 2021, TVA and Tennessee Gas entered into a Pipeline Precedent Agreement, which sets forth the terms and conditions under which Tennessee Gas would transport natural gas to TVA's Cumberland facility, in the event that TVA chooses Alternative A after completion of its NEPA analysis and TVA Board action regarding the potential new Cumberland facility. (*Id.* ¶ 6.) For potential large pipeline construction projects, Tennessee Gas uses precedent

4893-1090-6920

agreements, among other things, to set forth rates, terms, and conditions related to the natural gas transportation service that it provides on its pipeline system, ensuring investment expenditures are covered in the early phases and throughout the life of large pipeline construction projects. (*Id.* ¶ 7.) Tennessee Gas uses the precedent agreement negotiating process to perform project risk analysis and make good business decisions in the context of the specific circumstances of a project. (*Id.* ¶ 8.) Tennessee Gas customizes and tailors precedent agreements for individual projects by including terms and conditions based on the needs of the project, the requirements of the project customers (known as "shippers"), and the risk allocation between the parties, among other things. (*Id.* ¶ 9.)

The Precedent Agreement contains terms and conditions based on the geographical challenges, permitting requirements, costs of labor and materials, and other Project-specific considerations. (*Id.* ¶ 10.) Because of the competitive nature of the natural gas market, Tennessee Gas protects the confidentiality of information relating to its planning, construction, and operation of its pipeline system and the potential sale of capacity to shippers for the transportation of natural gas through its pipeline system. (*Id.* ¶ 11.) Tennessee Gas also ensures that its confidential information is not made available to the public. (*Id.* ¶ 12.)

Disclosing confidential information regarding Tennessee Gas's project development, implementation, and operations would place it at a competitive disadvantage vis-à-vis competitors. (*Id.* ¶ 13.) If competitors know Tennessee Gas's costs for project development, project implementation, operations, cost structures, pricing strategies, credit requirements, and other types of business strategies, these competitors can underbid Tennessee Gas in future natural gas projects and damage Tennessee Gas's ability to earn a reasonable rate of return, as regulated by the FERC, from the operations of its pipeline system. (*Id.* ¶ 14.) Tennessee Gas routinely negotiates with

shippers and consistently requires that the prospective project partners maintain the confidentiality of information provided to the prospective partners and designated confidential by Tennessee Gas (Tennessee Gas likewise holds confidential information that is provided to it by shippers that such shippers have designed as confidential). (*Id.* ¶ 15.) Tennessee Gas typically requires contractually binding assurances from its prospective project partners that they will keep Tennessee Gas's confidential information confidential, and that Tennessee Gas will hold shippers' confidential information as confidential. (*Id.* ¶ 16.)

The type of information deemed confidential may vary by project. (*Id.* ¶ 17.) However, Tennessee Gas routinely treats the following types of commercial and financial information as confidential: (a) costs, cost estimates, cost reimbursements, and cost-sharing arrangements; (b) volumetric production data; (c) delivery and receipt points; (d) various timelines and dates, including those related to construction, approvals, and conditions precedent; (e) various service-related information, including the term, optional service, and interim service; (f) formulas and processes for negotiating rates, and the negotiated contractual rates themselves; (g) creditworthiness requirements; and (h) termination rights. (*Id.*) During the negotiation of the Precedent Agreement, Tennessee Gas submitted confidential information to TVA, which is a type of information customarily not released to the public. (*Id.* ¶ 18.)

On August 5, 2021, Plaintiff submitted a request under the Freedom of Information Act ("FOIA") to Defendant Tennessee Valley Authority ("TVA") requesting "Records of communications, including all attachments thereto, with Tennessee Gas Pipeline, Kinder Morgan . . . regarding possible or planned gas infrastructure projects, including pipelines, compressor stations, and gas plants, to be constructed after January 2021." (*Id.* ¶ 19.) On August 31, 2021, TVA notified Tennessee Gas that TVA, as a quasi-governmental corporation, had received

Plaintiff's FOIA request for the Precedent Agreement. On that date, TVA asked Tennessee Gas for its comment on the potential release of the Precedent Agreement under FOIA. (*Id.* ¶ 20.)

On September 9, 2021, Tennessee Gas responded to TVA's request for comment on release of the Precedent Agreement and attached a copy of a redacted Precedent Agreement as a recommendation to TVA for its release in response to the FOIA request. (*Id.* ¶ 21.) In the September 9, 2021 response to TVA, Tennessee Gas provided the basis for Tennessee Gas's proposed redactions of the Precedent Agreement:

> The redacted information is protected confidential commercial and financial information in accordance with FOIA exemption 4. The redacted information includes detail associated with an open season to be held to solicit interest in capacity associated with the Precedent Agreement. TGP will evaluate the bids as a whole to determine the highest value for the capacity. Disclosing the redacted information could provide potential third party bidders information about how the capacity has been valued. The redacted information also includes project facilities and locations to be determined that cannot be made available until the facilities have been finalized. This project information can be identified when TGP submits a certificate application to the Federal Energy Regulatory Commission.

(*Id.* ¶ 22.)

On October 28, 2021, TVA made an interim response to Plaintiff and provided a copy of the redacted Precedent Agreement. (*Id.* ¶ 23.) On February 4, 2022, TVA made a final response to SELC's FOIA request. (*Id.* ¶ 24.) In that response, TVA stated:

> As indicated in our October 28, 2021, interim response, we processed notices to the parties to the agreements and information they identified as confidential commercial information was withheld under FOIA Exemption 4. Exemption 4 protects such confidential commercial, financial and trade secret information submitted to the government by an outside source.

4893-1090-6920

(*Id.*)[1]  On February 7, 2022, Plaintiff appealed TVA's final response. (*Id.* ¶ 25.)  On March 7, 2022, TVA upheld its February 4, 2022 final response. (*Id.* ¶ 26.)

Tennessee Gas, as an interstate pipeline company regulated by the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act ("NGA"), is not subject to FOIA as Tennessee Gas is not a regulatory agency. (*Id.* ¶ 27.) Tennessee Gas, as part of applications for certificates of public convenience and necessity filed with the FERC pursuant to Section 7(c) of the NGA (and other applications and filings with the FERC), may submit certain information as privileged pursuant to FERC regulations or statutory requirements, or if such information contains commercially sensitive information. (*Id.*) In the event that a request for such privileged information is submitted to the FERC FOIA office by a third-party, the FERC FOIA office routinely asks Tennessee Gas its opinion whether FERC should release the requested privileged information that Tennessee Gas submitted to the FERC. (*Id.*) Tennessee Gas generally responds to such inquiries from the FERC FOIA office with Tennessee Gas's opinion regarding why the information was submitted to the FERC as privileged and whether such information should remain privileged and not provided to the public. (*Id.*) FERC, as the federal agency subject to FOIA, evaluates the request under FOIA and makes the decision whether or not to release any of the requested privileged information that Tennessee Gas submitted to the FERC. (*Id.*)

Tennessee Gas understands that TVA's processes for responding to FOIA information requests are similar to those followed by the FERC. (*Id.* ¶ 28.) After receiving a FOIA information request, TVA will request that the entity or individual that submitted confidential information to

---

[1] TVA's determination on appeal added Exemption 5 as an additional basis for withholding the redacted portions of the Precedent Agreement. (Doc. 1-11, PageID 146; Doc. 16 ¶ 27; Doc. 27 ¶ 14.) TVA has since withdrawn Exemption 5 as a basis for withholding information.

TVA provide its opinion regarding the release of privileged information to a FOIA requestor. (*Id.*) TVA takes into consideration a submitter's recommendations, along with any other information that it may gather or obtain, then decides which information to release and which to withhold under an applicable FOIA exemption(s). (*Id.*) Any disclosure of the redacted sections of the Precedent Agreement will cause substantial harm to Tennessee Gas by allowing competitors and potential shippers to obtain valuable commercial and financial information. (*Id.* ¶ 29.) If competitors gain knowledge of Tennessee Gas's costs, they may be able to underbid Tennessee Gas for providing transportation capacity for potential shippers. (*Id.* ¶ 30.) If potential shippers gain knowledge of Tennessee Gas's costs, they will have a distinct advantage when negotiating rates and terms of service with Tennessee Gas. (*Id.* ¶ 31.) Tennessee Gas understands the type of competitive harm that can result from the disclosure of confidential and financial information, and this harm is foreseeable based on Tennessee Gas's experience. (*Id.* ¶ 32.)

TVA, SELC, and Tennessee Gas have agreed to narrow the provisions of the Precedent Agreement at issue in this FOIA litigation. (*Id.* ¶ 33.) More specifically, SELC has agreed that it seeks only the redacted information contained in certain sections of the Precedent Agreement, specifically Sections 1(B)(ii), 2, 3, 4(E), 7(A)(i), 9, and Exhibit D, paragraphs 1 and 2. (*Id.*)

Section 1(B)(ii), "Required Interim Service," discusses rates and terms regarding Tennessee Gas's providing interim service to TVA. (*Id.* ¶ 34.) This section provides confidential commercial and financial information that would cause Tennessee Gas competitive harm if the redacted portions were disclosed to the public. (*Id.*) If Tennessee Gas's competitors obtained Tennessee Gas's rates for the Project, it would place Tennessee Gas at a competitive disadvantage in bidding for transportation capacity on other natural gas projects. (*Id.*)

4893-1090-6920

Section 2, "The Open Season," discusses the terms, procedures, and mechanisms for Tennessee Gas conducting an open season to provide a portion of the Project capacity on the open market. (*Id.* ¶ 35.) This section provides confidential commercial and financial information that would cause Tennessee Gas competitive harm if the redacted portions were disclosed to the public. (*Id.*)

Section 3, "Foundation Shipper Status," discusses specific terms applicable to a "foundation shipper" such as TVA. (*Id.* ¶ 36.) This section provides confidential commercial and financial information that would cause Tennessee Gas competitive harm if the redacted portions were disclosed to the public. (*Id.*) For example, if other potential shippers who wished to bid during the open season knew the terms applicable to the foundation shipper, the knowledge would assist potential bidders in making bids to the financial detriment of Tennessee Gas. (*Id.*)

Section 4(E), "Transporter Stakeholder Engagement," discusses Tennessee Gas's responsibility and process for engaging stakeholders regarding the Project. (*Id.* ¶ 37.) This section provides confidential commercial information that would cause Tennessee Gas competitive harm if the redacted portions were disclosed to the public. (*Id.*) For example, this section identifies specific activities that Tennessee Gas will undertake to obtain Project approvals. (*Id.*)

Section 7(A)(i), "Shipper Management Approval," redacts the date by which Tennessee Gas may terminate the Precedent Agreement if certain conditions are not met. (*Id.* ¶ 38.) This section provides confidential commercial information that would cause Tennessee Gas competitive harm if the redacted portion was disclosed to the public. (*Id.*) For example, the market for transporting natural gas is very competitive. (*Id.*) If other transporters obtain an indication of the timeframe for Tennessee Gas's increased capacity, Tennessee Gas's competitors may use this information to the financial detriment of Tennessee Gas. (*Id.*)

4893-1090-6920

Section 9, "Reimbursement by Shipper of Reimbursable Costs," discusses reimbursable costs, reimbursable cost sharing, and the reimbursement process. (*Id.* ¶ 39.) This section provides confidential commercial and financial information that would cause Tennessee Gas competitive harm if the redacted portions were disclosed to the public. (*Id.*) For example, this section contains terms negotiated between Tennessee Gas and TVA that would place Tennessee Gas at a competitive disadvantage if other natural gas companies knew the terms that are acceptable to Tennessee Gas in its contractual relationship with TVA. (*Id.*) Competitor natural gas companies could use this information to their advantage when competing with Tennessee Gas for the same business. (*Id.*)

Exhibit D, paragraphs 1 and 2, discuss rates paid for natural gas. (*Id.* ¶ 40.) This section provides confidential commercial and financial information that would cause Tennessee Gas competitive harm if the redacted portions were disclosed to the public. (*Id.*) If Tennessee Gas's competitors obtained Tennessee Gas's rates for the Project, it would place Tennessee Gas at a competitive disadvantage in bidding for other natural gas projects. (*Id.*)

The release of the confidential commercial and financial information submitted to TVA in the Precedent Agreement regarding the Project would cause substantial harm to Tennessee Gas's competitive position in the natural gas transportation market. (*Id.* ¶ 41.) Competitors and potential shippers could use this confidential commercial and financial information to compete with Tennessee Gas in the market or obtain pricing advantages during negotiations leading to the transport of natural gas. (*Id.*)

Tennessee Gas additionally adopts and incorporates by reference herein information set forth by TVA in its "Introduction" and "Factual Background" sections of its Brief. (Doc. 49, PageID 604-609.)

4893-1090-6920

## ARGUMENT

**I.    LEGAL STANDARD**

Tennessee Gas adopts and incorporates by reference herein Part I of the Argument section set forth by TVA in its Brief. (Doc. 49, PageID 609-611.)

**II.    TVA PROPERLY WITHHELD SECTIONS 1(B)(ii), 2, 3, 4(E), 7(A)(i), 9, AND EXHIBIT D, PARAGRAPHS 1 AND 2 OF THE PRECEDENT AGREEMENT UNDER FOIA EXEMPTION 4.**

TVA properly applied FOIA Exemption 4 to withhold Sections 1(B)(ii), 2, 3, 4(E), 7(A)(i), 9, and Exhibit D, paragraphs 1 and 2, of the Precedent Agreement. To qualify for FOIA Exemption 4 protection, the information must be (1) commercial or financial, (2) obtained from a person, and (3) privileged and confidential. *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 529 (D.C. Cir. 1979). The terms of Exemption 4 are given their ordinary meanings. *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019). Tennessee Gas adopts and incorporates by reference herein Part II of the Argument section set forth by TVA in its Brief regarding TVA's proper withholding of Sections 1(B)(ii), 2, 3, 4(E), 7(A)(i), 9, and Exhibit D, paragraphs 1 and 2, of the Precedent Agreement under Exemption 4. (Doc. 49, PageID 611-617.) Additionally, Tennessee Gas affirmatively states that Exemption 4 applies to the redacted sections at issue in Tennessee Gas's Precedent Agreement with TVA because the information contained therein is commercial or financial, obtained from a person, and privileged and confidential.

**A.    The confidential information in the redacted sections of the Precedent Agreement is commercial or financial.**

The redacted sections of the Precedent Agreement contain commercial or financial information. Information is commercial under Exemption 4 if "in and of itself," it serves a "commercial function," is of a "commercial nature," or if the submitter has a "commercial interest" in it. *Pub. Citizen v. United States Dep't of Health & Hum. Servs.*, 66 F. Supp. 3d 196, 206 (D.D.C.

4893-1090-6920

10

2014). "Exemption 4 is *not* confined only to records that 'reveal basic commercial operations . . . or relate to the income-producing aspects of a business." *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 319 (D.C. Cir. 2006) (quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)). "The exemption reaches more broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency." *Id.* "A company may have a commercial stake in requested information when its disclosure would cause commercial consequences." *Besson v. United States Dep't of Com.*, No. 18-CV-02527 (APM), 2020 WL 4500894 (D.D.C. Aug. 5, 2020).

Here, the redacted sections of the Precedent Agreement are commercial or financial. Specifically:

- Section 1(B)(ii), "Required Interim Service," discusses rates and terms regarding Tennessee Gas's providing interim service to TVA. If Tennessee Gas's competitors obtained Tennessee Gas's rates for the Project, it would place Tennessee Gas at a competitive disadvantage in bidding for transportation capacity on other natural gas projects. (SUMF ¶ 34.)

- Section 2, "The Open Season," discusses the terms, procedures, and mechanisms for Tennessee Gas conducting an open season to provide a portion of the Project capacity on the open market. This section provides confidential commercial and financial information that would cause Tennessee Gas competitive harm if the redacted portions were disclosed to the public. (*Id.* ¶ 35.)

- Section 3, "Foundation Shipper Status," discusses specific terms applicable to a "foundation shipper" such as TVA. If other potential shippers who wished to bid during the

4893-1090-6920

11

open season knew the terms applicable to the foundation shipper, the knowledge would assist potential bidders in making bids to the financial detriment of Tennessee Gas. (*Id.* ¶ 36.)

- Section 4(E), "Transporter Stakeholder Engagement," discusses Tennessee Gas's responsibility and process for engaging stakeholders regarding the Project. This section identifies specific activities that Tennessee Gas will undertake to obtain Project approvals. (*Id.* ¶ 37.)

- Section 7(A)(i), "Shipper Management Approval," redacts the date by which Tennessee Gas may terminate the Precedent Agreement if certain conditions are not met. The market for transporting natural gas is very competitive. If other transporters obtain an indication of the timeframe for Tennessee Gas's increased capacity, Tennessee Gas's competitors may use this information to the financial detriment of Tennessee Gas. (*Id.* ¶ 38.)

- Section 9, "Reimbursement by Shipper of Reimbursable Costs," discusses reimbursable costs, reimbursable cost sharing, and the reimbursement process. This section contains terms negotiated between Tennessee Gas and TVA that would place Tennessee Gas at a competitive disadvantage if other natural gas companies knew the terms that are acceptable to Tennessee Gas in its contractual relationship with TVA. Competitor natural gas companies could use this information to their advantage when competing with Tennessee Gas for the same business. (*Id.* ¶ 39.)

- Exhibit D, paragraphs 1 and 2, discuss rates paid for natural gas. If Tennessee Gas's competitors obtained Tennessee Gas's rates for the Project, it would place Tennessee Gas at a competitive disadvantage in bidding for other natural gas projects. (*Id.* ¶ 40.)

Tennessee Gas has a commercial interest in the redacted information because the disclosure of these sections would cause commercial consequences as set forth above. *See, e.g., Baker &*

*Hostetler LLP*, 473 F.3d 312, 320 (D.C. Cir. 2006) ("U.S. lumber companies have a 'commercial interest' in . . . letters [that] describe favorable market conditions for domestic companies, and their disclosure would help rivals to identify and exploit those companies' competitive weaknesses."); *Zirvi v. United States Nat'l Institutes of Health*, No. CV 20-7648, 2022 WL 1261591, at *5 (D.N.J. Apr. 28, 2022) ("[The provider of information] has a 'commercial interest' in its own manufacturing and design process."); *Landfair v. U.S. Dep't of Army*, 645 F. Supp. 325, 327 (D.D.C. 1986) ("Examples of items generally regarded as commercial or financial information include: business sales statistics, research data, technical designs, overhead and operating costs, and information on financial condition.").

### B. The confidential information in the redacted sections of the Precedent Agreement was obtained from a person.

The confidential information in the redacted sections of the Precedent Agreement was obtained from a person. "Information 'obtained from a person' under Exemption 4 includes information obtained from an 'individual, partnership, corporation, association, or public or private organization other than an agency.'" *Zirvi v. United States Nat'l Institutes of Health*, No. CV 20-7648, 2022 WL 1261591, at *4 (D.N.J. Apr. 28, 2022) (quoting *Flightsafety Servs. Corp. v. Dep't of Lab.*, 326 F.3d 607, 611 (5th Cir. 2003)). "Information is considered 'obtained from a person' if the information originated from an individual, corporation, or other entity, and so long as the information did not originate within the federal government." *Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 63 (D.D.C. 2015). "However, government-prepared records may be protected if they summarize information obtained from another person." *COMPTEL v. F.C.C.*, 910 F. Supp. 2d 100, 115 (D.D.C. 2012); *Jud. Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000) ("[D]ocuments prepared by the federal government may be covered by Exemption 4 if they contain summaries or reformulations of information supplied by

a source outside of the government."). Exemption 4 protection applies to information in an agency-generated report if such information was obtained from a person or allow others to "extrapolate[]" such information. *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 530 (D.C. Cir. 1979).

The fact that "information was negotiated" does not "preclude the proper application of Exemption 4, at least in circumstances where the information was initially obtained from outside the agency and was then modified through negotiations." *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 68 (D.D.C. 2012). "[T]he key distinction—which will obviously be blurry in many instances—is between information that is either repeated verbatim or slightly modified by the agency, and information that is substantially reformulated by the agency, such that it is no longer a 'person's' information but the agency's information." *Id.*

Courts have held that Exemption 4 applies to certain information contained in government-created documents, including negotiated contracts, because the information within such documents was obtained from a person and did not originate within the government. *See, e.g.*, *Gulf & W. Indus., Inc.*, 615 F.2d at 529-30 ("It is apparent that the ASBCA deleted portions of the [Defense Contract Audit Agency Audit Report] which contained information supplied by Norris or from which information supplied by Norris could be extrapolated. The deleted portions of the report included, among other things, 'actual costs for units produced,' 'actual scrap rates,' 'break-even point calculations' and 'actual cost data.' Therefore, the release of this information would disclose data supplied to the government from a person outside the government." (citation omitted)); *Pub. Citizen Health Rsch. Grp. v. Nat'l Institutes of Health*, 209 F. Supp. 2d 37, 45 (D.D.C. 2002) ("While the final royalty rates may reflect negotiation between the agency and the licensee, the licensee still must provide the information in the first instance. Therefore, the Court finds that the agency obtained this information from a person within the meaning of exemption 4.").

4893-1090-6920

14

Here, Tennessee Gas is a "person" within the meaning of Exemption 4. Tennessee Gas customizes and tailors precedent agreements for individual projects by including terms and conditions based on the needs of the project, the requirements of the project customers (known as "shippers"), and the risk allocation between the parties, among other things. (SUMF ¶ 9.) The Precedent Agreement contains terms and conditions based on the geographical challenges, permitting requirements, costs of labor and materials, and other Project-specific considerations. (*Id.* ¶ 10.) During the negotiation of the Precedent Agreement, Tennessee Gas submitted confidential information to TVA that was eventually incorporated into the Precedent Agreement. (*See id.* ¶ 18.) Thus, TVA obtained the confidential commercial and financial information in the Precedent Agreement from Tennessee Gas. (*See* SUMF ¶¶ 6-18, 28, 34-40.)

**C.** **The information in the redacted sections of the Precedent Agreement is confidential.**

The information in the redacted sections of the Precedent Agreement is confidential. "[W]here commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019). Where information is confidential and voluntarily supplied to the government, the supplying party need only establish that this information would not customarily be released or made available to the public. *Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992). As a federal court recently explained:

> information is "confidential" under Exemption 4 "at least where commercial or financial information" is (1) "customarily and actually treated as private by its owner" and (2) "provided to the government under an assurance of privacy." *Food Mktg. Inst.*, 139 S. Ct. at 2366. The first condition—that the information owner treat the information as private—is mandatory. *Id.* at 2363. It is an open question as to whether a government promise of privacy is also required. *Id.* To determine whether the information is "customarily" or "actually" treated as private, courts consider the practices of the information owner. Relevant factors include (1)

whether the information owner internally restricts access to the records to certain personnel; (2) whether restrictive markings are applied to the documents; (3) whether the information is protected using secure information technology systems or password protection; and (4) whether the information owner requires confidentiality agreements to access the information. *See Am. Small Bus. League v. United States Dep't of Def.*, 411 F. Supp. 3d 824, 831 (N.D. Cal. 2019).

*Zirvi v. United States Nat'l Institutes of Health*, No. CV 20-7648, 2022 WL 1261591, at *4 (D.N.J. Apr. 28, 2022).

Here, the redacted sections of the Precedent Agreement are privileged and confidential. During the negotiation of the Precedent Agreement, Tennessee Gas submitted confidential information to TVA, which is a type of information customarily not released to the public. (SUMF ¶ 18.) Because of the competitive nature of the natural gas market, Tennessee Gas protects the confidentiality of information relating to its planning, construction, and operation of its pipeline system and the potential sale of capacity to shippers for the transportation of natural gas through its pipeline system. (*Id.* ¶ 11.) Tennessee Gas also ensures that its confidential information is not made available to the public. (*Id.* ¶ 12.) Tennessee Gas routinely negotiates with shippers and consistently requires that the prospective project partners maintain the confidentiality of information provided to the prospective partners and designated confidential by Tennessee Gas (Tennessee Gas likewise holds confidential information that is provided to it by shippers that such shippers have designed as confidential). (*Id.* ¶ 15.) And Tennessee Gas typically requires contractually binding assurances from its prospective project partners that they will keep Tennessee Gas's confidential information confidential, and that Tennessee Gas will hold shippers' confidential information as confidential. (*Id.* ¶ 16.)

Tennessee Gas routinely treats the following types of commercial and financial information as confidential: (a) costs, cost estimates, cost reimbursements, and cost-sharing arrangements; (b) volumetric production data; (c) delivery and receipt points; (d) various timelines and dates,

including those related to construction, approvals, and conditions precedent; (e) various service-related information, including the term, optional service, and interim service; (f) formulas and processes for negotiating rates, and the negotiated contractual rates themselves; (g) creditworthiness requirements; and (h) termination rights. (*Id.* ¶ 17.) The redacted sections fall under these categories. (*See id.* ¶¶ 34-40.)

## III. TVA REASONABLY FORESAW THAT DISCLOSURE OF THE REDACTED INFORMATION WOULD CAUSE FORESEEABLE HARM TO TENNESSEE GAS.

The FOIA Improvement Act ("FIA") provides that an agency may withhold information pursuant to a FOIA exemption "if the agency reasonably foresees that disclosure would harm an interest protected by an exemption . . . or disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). Tennessee Gas adopts and incorporates by reference herein Part III of the Argument section set forth by TVA in its Brief. (Doc. 49, PageID 618-621.)

Additionally, Tennessee Gas affirmatively states that the release of the confidential commercial and financial information submitted to TVA in the Precedent Agreement regarding the Project would cause substantial harm to Tennessee Gas's competitive position in the natural gas transportation market. (SUMF ¶¶ 29, 34-41.) Competitors and potential shippers could use this confidential commercial and financial information to compete with Tennessee Gas in the market or obtain pricing advantages during negotiations leading to the transport of natural gas. (SUMF ¶¶ 29, 34-41.)

## CONCLUSION

Based on the foregoing, the Court should grant Tennessee Gas's Cross Motion for Summary Judgment. The undisputed material facts show that the redacted information Plaintiff

4893-1090-6920

seeks is protected from FOIA disclosure under Exemption 4 and disclosure would harm Tennessee Gas. Accordingly, Tennessee Gas is entitled to judgment against Plaintiff.

Dated: July 15, 2022.

Respectfully submitted,

*/s/ Michael K. Stagg*
Michael K. Stagg (Tenn. BPR No. 017159)
Quynh-Anh D. Kibler (Tenn. BPR No. 035096)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
michael.stagg@wallerlaw.com
qa.kibler@wallerlaw.com

*Attorneys for Intervenor,*
*Tennessee Gas Pipeline Company, L.L.C.*

4893-1090-6920

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above document was filed electronically on July 15, 2022, through the court's CM/ECF system, which will serve notice of same to counsel of record as indicated below.

Amanda Garcia
George Nolan
Daniel J. Metzger
SOUTHERN ENVIRONMENTAL LAW
    CENTER
1033 Demonbreun Street, Suite 205
Nashville, TN 37203
agarcia@selctn.org
gnolan@selctn.org
danieljmetzger@gmail.com

*Counsel for Southern Environmental Law Center*

David D. Ayliffe
Steven C. Chin
Sydney D. Nenni
TENNESSEE VALLEY AUTHORITY
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
ddayliffe@tva.gov
scchin@tva.gov
sschaefer0@tva.gov

*Counsel for Tennessee Valley Authority*

Jamie F. Tabb
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
jtabb@velaw.com

*Counsel for East Tennessee Natural Gas, LLC*

*/s/ Michael K. Stagg*