# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

| | |
|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER, )<br><br>Plaintiff, )<br><br>v. )<br><br>TENNESSEE VALLEY AUTHORITY, )<br><br>Defendant, )<br><br>and )<br><br>EAST TENNESSEE NATURAL GAS, LLC, and TENNESSEE GAS PIPELINE COMPANY LLC, )<br><br>Intervenor Defendants. ) | Case No.: 3:22-cv-00108<br><br>Hon. Clifton L. Corker<br>U.S. District Judge<br><br>Hon. Debra C. Poplin<br>U.S. Magistrate Judge |

**INTERVENOR EAST TENNESSEE NATURAL GAS, LLC'S
REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

US 9159153v.10

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.      Under the Correct "Obtained from a Person" Legal Standard, Information in the
        Ridgeline Precedent Agreement Submitted to TVA by East Tennessee Is Exempt
        From Disclosure Under FOIA Exemption 4. ................................................................ 2

        A.      SELC still refuses to engage with the well-established legal standard for
                FOIA Exemption 4's "obtained from a person" requirement. ............................... 2

        B.      Detention Watch—the only case that supports SELC's summary judgment
                position on the "obtained from a person" standard—was wrongly decided,
                and the Court should not consider it persuasive. ..................................................... 5

        C.      Applying the Correct "Obtained From a Person" Standard, the Undisputed
                Facts of This Matter Make Clear That the Information at Issue in the
                Ridgeline Precedent Agreement Was Obtained From a Person. ........................... 10

II.     TVA Properly Withheld East Tennessee's Information in the Ridgeline Precedent
        Agreement in Accordance With the FIA's Requirements. .............................................. 12

        A.      Because the disputed information in the Ridgeline Precedent Agreement is
                protected under Exemption 4, disclosure of such  information is prohibited
                by law under the co-extensive Trade Secrets Act. ............................................... 13

        B.      Even if considering SELC's formulation of the FIA's foreseeable harm
                requirement, East Tennessee has demonstrated that it would be
                competitively harmed by the release of information in the Ridgeline
                Precedent Agreement. ........................................................................................... 14

CONCLUSION .................................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Cases**

*Bloomberg, L.P. v. Bd. of Governors of Fed. Rsrv. Sys.*,
601 F.3d 143 (2d Cir. 2010) ............................................................................................ 6

*Canadian Com. Corp. v. Dep't of Air Force*,
514 F.3d 37 (D.C. Cir. 2008) ...................................................................................... 9, 13

*Cause of Action Inst. v. Exp.-Imp. Bank of the U.S.*,
No. 19-cv-1915, 2022 WL 252028 (D.D.C. Jan. 27, 2022) ........................................ 3

*Changzhou Laosan Grp. v. U.S. Customs & Border Prot. Bureau*,
No. 04-cv-1919, 2005 WL 913268 (D.D.C. Apr. 20, 2005),
*as amended on recons.*, 374 F. Supp. 2d 129 (D.D.C. 2005) ..................................... 2

*COMPTEL v. FCC*,
910 F. Supp. 2d 100 (D.D.C. 2012) ............................................................................. 3

*Ctr. for Auto Safety v. U.S. Dep't of Treasury*,
133 F. Supp. 3d 109 (D.D.C. 2015) .............................................................................. 3

*Ctr. for Pub. Integrity v. Dep't of Energy*,
191 F. Supp. 2d 187 (D.D.C. 2002) ............................................................................. 10

*Det. Watch Network v. U.S. Immigr. & Customs Enf't*,
215 F. Supp. 3d 256 (S.D.N.Y. 2016) ...................................................................... 5, 6

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
117 F. Supp. 3d 46 (D.D.C. 2015) ............................................................................... 3

*Essex Electro Eng'rs, Inc. v. U.S. Sec'y of Army*,
686 F. Supp 2d 91 (D.D.C. 2010) ............................................................................... 9

*Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*,
Civil Action No. 19-cv-3749, 2021 WL 4206594 (D.D.C. Sept. 16, 2021),
*appeal filed*, No. 21-5257 (D.C. Cir. Nov. 15, 2021) ................................................. 3

*Food Marketing Institute v. Argus Leader Media*,
139 S. Ct. 2356 (2019) ......................................................................................... passim

*Gardiner, Kamya & Assocs., P.C. v. Jackson*,
369 F.3d 1318 (Fed. Cir. 2004) ................................................................................... 7

*In Def. of Animals v. Nat'l Insts. of Health*,
543 F. Supp. 2d 83 (D.D.C. 2008) ........................................................................... 4, 5

*Inter Ocean Free Zone, Inc. v. U.S. Customs Serv.*,
982 F. Supp. 867 (S.D. Fla. 1997) .............................................................................. 2

*Judicial Watch, Inc. v. Exp.-Imp. Bank*,
108 F. Supp. 2d 19 (D.D.C. 2000) .............................................................................. 3

*McDonnell Douglas Corp. v. NASA*,
180 F.3d 303 (D.C. Cir. 1999) .................................................................................... 9

*MCI WorldCom Commc'ns, Inc. v. United States*,
58 Fed. Cl. 287 (2003) ................................................................................................. 8

*Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*,
36 F. Supp. 3d 384 (S.D.N.Y. 2014) ........................................................................... 3

*Naumes v. Dep't of Army*,
No. 21-cv-1670, 2022 WL 594541 (D.D.C. Feb. 28, 2022) ....................................... 3

*Northrop Grumman Sys. Corp. v. NASA*,
346 F. Supp. 3d 109 (D.D.C. 2018) ............................................................................. 9

*Phila. Newspapers, Inc. v. Dep't of Health & Hum. Servs.*,
69 F. Supp. 2d 63 (D.D.C. 1999) ................................................................................. 3

*Pub. Citizen Health Rsch. Grp. v. Nat'l Insts. of Health*,
209 F. Supp. 2d 37 (D.D.C. 2002) .................................................................... 4, 5, 11

*Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin.*,
559 F. Supp. 4 (D.D.C. 1981) .................................................................................... 10

*Renewable Fuels Ass'n v. U.S. Env't Prot. Agency*,
519 F. Supp. 3d 1 (D.D.C. 2021) ................................................................................. 7

*Rice Sys., Inc. v. United States*,
62 Fed. Cl. 608 (2004) ................................................................................................. 8

*S. All. for Clean Energy v. U.S. Dep't of Energy*,
853 F. Supp. 2d 60 (D.D.C. 2012) ..................................................................... 2, 3, 11

*Seife v. U.S. Food & Drug Admin.*,
No. 20-cv-4072, 2022 WL 3130147 (2d Cir. Aug. 5, 2022) ............................... 15, 16

**<u>Statutes</u>**

5 U.S.C. § 552 ......................................................................................................................... 1

5 U.S.C. § 552(a)(8) ............................................................................................................... 1

5 U.S.C. § 552(a)(8)(A) .......................................................................................................... 2

5 U.S.C. § 552(a)(8)(A)(i)(I) ................................................................................................ 14

18 U.S.C. § 1905 ................................................................................................................... 13

42 U.S.C. § 4321 ..................................................................................................................... 1

Pub. L. No. 114-185, 130 Stat. 538 (2016) ............................................................................ 1

This litigation addresses the application of Exemption 4 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to certain information in the August 2021 precedent agreement between Tennessee Valley Authority ("TVA") and East Tennessee Natural Gas, LLC ("East Tennessee"), known as the "Ridgeline Precedent Agreement." In its Response Opposing TVA's and East Tennessee's Cross-Motions for Summary Judgment (Dkt. No. 55) ("SELC Response"), Plaintiff Southern Environmental Law Center ("SELC") does not provide any argument disputing that the information at issue is (1) commercial or financial in nature, or (2) confidential under the test set forth by the Supreme Court in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019). As such, the Court need resolve only two issues on summary judgment. First, the Court must decide whether the information was "obtained from a person" under FOIA Exemption 4. Second, the Court must decide whether TVA's withholding of such information meets the requirements of the FOIA Improvement Act of 2016 (the "FIA"), Pub. L. No. 114-185, 130 Stat. 538 (codified in relevant part at 5 U.S.C. § 552(a)(8)). As discussed in TVA's and East Tennessee's cross-motions for summary judgment and as further explained below, the answer to both questions is yes.

Information and argument not addressing these two issues are irrelevant, and the Court need not engage with SELC's attempts to distract with accusations and policy pronouncements. For example, the fact that SELC is seeking information in the Ridgeline Precedent Agreement to assess whether TVA has complied with the National Environmental Policy Act, 42 U.S.C. § 4321, is not relevant to determining whether the information was properly withheld from disclosure under FOIA Exemption 4. *See, e.g.*, *Changzhou Laosan Grp. v. U.S. Customs & Border Prot. Bureau*, No. 04-cv-1919, 2005 WL 913268, at *7 (D.D.C. Apr. 20, 2005) (stating that "the identity of the FOIA requester and the requester's reasons for making the request have no bearing upon its

1

entitlement to the information"), *as amended on recons.*, 374 F. Supp. 2d 129 (D.D.C. 2005); *Inter Ocean Free Zone, Inc. v. U.S. Customs Serv.*, 982 F. Supp. 867, 871 (S.D. Fla. 1997) (same). Moreover, while SELC spends a great deal of effort expressing doubt that release of the information would cause competitive harm to East Tennessee, the Court need not, under either Exemption 4 or the FIA, consider competitive harm at all. *See Argus Leader*, 139 S. Ct. at 2360-61 (finding a "'competitive harm' requirement inconsistent with the terms of the statute" when applying FOIA Exemption 4); 5 U.S.C. § 552(a)(8)(A) (allowing withholding of information under FOIA if "disclosure is prohibited by law").

TVA and East Tennessee have satisfied their burden to establish that the information in the Ridgeline Precedent Agreement sought by SELC is protected from disclosure under FOIA. As such, the Court should deny SELC's motion for summary judgment and grant TVA's and East Tennessee's cross-motions.

## ARGUMENT

**I.** **Under the Correct "Obtained from a Person" Legal Standard, Information in the Ridgeline Precedent Agreement Submitted to TVA by East Tennessee Is Exempt From Disclosure Under FOIA Exemption 4.**

**A.** **SELC still refuses to engage with the well-established legal standard for FOIA Exemption 4's "obtained from a person" requirement.**

As provided in previous briefing to the Court, when determining whether information in a jointly-prepared or agency-authored document is "obtained from a person," courts consider whether the information is "repeated verbatim or slightly modified by the agency" or "is substantially reformulated by the agency, such that it is no longer a 'person's' information but the agency's information." E. Tenn. Mem. in Supp. of Cross-Mot. for Summ. J. & Resp. in Opp'n to Pl.'s Mot. for Summ. J. (Dkt. No. 44) ("E. Tenn. Memo.") at 6-7 (quoting *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 68 (D.D.C. 2012)). SELC does not engage with this

standard even once in its Response, despite the body of FOIA case law employing this standard—including case law that SELC itself cites. *See Naumes v. Dep't of Army*, No. 21-cv-1670, 2022 WL 594541, at *6 (D.D.C. Feb. 28, 2022); *Cause of Action Inst. v. Exp.-Imp. Bank of the U.S.*, No. 19-cv-1915, 2022 WL 252028 (D.D.C. Jan. 27, 2022) (cited by SELC); *Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133 F. Supp. 3d 109, 123 (D.D.C. 2015); *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384, 400 (S.D.N.Y. 2014) (cited by SELC); *S. All. for Clean Energy*, 853 F. Supp. 2d at 68 (cited by SELC). Even if they do not use the exact same formulation of the standard, various other cases analyze the "obtained from a person" requirement by considering how much, if at all, the government altered information provided to it by a third party, with such information qualifying as being "obtained from a person" if the government did not change the information at all, or if it merely summarized or reformulated such information. *See, e.g.*, *Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*, No. 19-cv-3749, 2021 WL 4206594, at *5 (D.D.C. Sept. 16, 2021); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 63 (D.D.C. 2015); *COMPTEL v. FCC*, 910 F. Supp. 2d 100, 117 (D.D.C. 2012); *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000); *Phila. Newspapers, Inc. v. Dep't of Health & Hum. Servs.*, 69 F. Supp. 2d 63, 66-67 (D.D.C. 1999).

Instead of addressing this body of case law, SELC attempts to strike its own path and convince the Court that information in a signed agreement cannot be "obtained from a person" because the agreement is "created" by the parties that execute it. SELC Resp. at 7. In other words, SELC argues that the parties' signatures on a written agreement magically erases the prior history regarding the source of the information in the agreement. Under SELC's formulation, the Court must pretend that the information came into being the moment the contract was signed, despite

3

undisputed evidence that the information was previously submitted to the government by an outside source. SELC's position is both illogical and unsupported.

Contrary to SELC's argument, the correct standard has been explicitly applied to information in government contracts, both to find that information in a contract was obtained from a person, and to find that information in a contract was not. As previously described, in *Public Citizen Health Research Group v. National Institutes of Health*, 209 F. Supp. 2d 37 (D.D.C. 2002), a court found that royalty rate information in a licensing agreement was obtained from a person despite the fact that the information had been negotiated between the parties. *See* E. Tenn. Memo. at 7-8. Although SELC notes that the plaintiffs initially did not challenge whether the information was obtained from a person, *Public Citizen* still explicitly articulated a finding on this issue: "The Court finds that the royalty information in this case was, indeed, obtained from a person." *Public Citizen*, 209 F. Supp. 2d at 44. Also, while *Public Citizen* does not go into detail on the negotiations of the contract terms at issue (although it does acknowledge that the licensee "provide[d] the information in the first instance"), it correctly applied the standard that "summaries or reformulations of information supplied by a source outside of the government" were "obtained from a person" and protected under Exemption 4. *Id.* at 44-45 (citation omitted). Therefore, by finding the terms at issue meet that standard, the court implicitly determined that, despite negotiations, the terms were merely summaries or reformulations of information provided by the third party.

Further, in *In Defense of Animals v. National Institutes of Health*, 543 F. Supp. 2d 83 (D.D.C. 2008), the court provided a nuanced analysis on whether certain information in a contract negotiated and executed by the government and a non-government counterparty was "obtained from a person." The court ultimately found that the terms at issue were not "obtained from a

4

person," because, unlike in *Public Citizen*, the agency had "nowhere demonstrated that the contractor was the source of the information in the first instance and not the agency." 543 F. Supp. 2d at 103. Therefore, while *In Defense of Animals* distinguished *Public Citizen* and came to a different conclusion based on different facts, it did so by actually assessing the source of the information at issue. While SELC cites *In Defense of Animals* to try to cast *Public Citizen* as an outlier (SELC Resp. at 9-10), *In Defense of Animals* actually supports the application of the established "obtained from a person" standard to information in government contracts. And, importantly, both *Public Citizen* and *In Defense of Animals* are in line with "obtained from a person" case law cited by East Tennessee both above and previously (and which SELC refuses to engage) that considers how much, if at all, the government altered information provided to it by a third party.

> **B.** *Detention Watch*—**the only case that supports SELC's summary judgment position on the "obtained from a person" standard—was wrongly decided, and the Court should not consider it persuasive.**

Contrary to SELC's arguments, the real outlier in "obtained from a person" case law is *Detention Watch Network v. United States Immigration & Customs Enforcement*, 215 F. Supp. 3d 256 (S.D.N.Y. 2016), upon which SELC relies as the basis for its entire position in this litigation. *Detention Watch* does not engage with the previously described "obtained from a person" standard anywhere, and instead concludes that a different, inflexible rule applies for government contracts—that the execution of a contract with the government means that the information within it cannot be "obtained from a person." To be clear, *Detention Watch* is the only case that applies this standard. That is why, despite previous explanation as to why *Detention Watch* was wrongly decided (*see* E. Tenn. Memo. at 11-12), SELC latches onto *Detention Watch* in an attempt to save its case, as *Detention Watch* is the only authority, albeit not binding on this Court, that supports SELC's position.

5

SELC attempts to rehabilitate *Detention Watch*, but its efforts are as unpersuasive as *Detention Watch* itself. *See* SELC Resp. at 8. The court in *Detention Watch* relied entirely on *Bloomberg, L.P. v. Board of Governors of the Federal Reserve System*, 601 F.3d 143 (2d Cir. 2010), directly citing only *Bloomberg* in its "obtained from a person" analysis. *See Detention Watch*, 215 F. Supp. 3d at 262-63. Not only did *Detention Watch* rely on only one case despite the plethora of other "obtained from a person" cases available (such as those cited above), but *Detention Watch* read and applied *Bloomberg* incorrectly. Specifically, *Detention Watch* analogized the facts before it to *Bloomberg* under two incorrect assumptions that SELC fails to appreciate.

First, *Detention Watch* assumed that the information at issue in *Bloomberg* was provided by loan applicants, not the government. *Detention Watch*, 215 F. Supp. 3d at 263. However, as previously described, this assumption was wrong, because the FOIA request in *Bloomberg* was for information in reports (not contracts or loan agreements) generated solely by the government and not provided by loan applicants. *See* E. Tenn. Memo. at 12. Second, *Detention Watch* assumed that *Bloomberg* considered the government's "executive action" of executing a contract or loan to be relevant to the "obtained from a person" analysis. *Detention Watch*, 215 F. Supp. 3d at 263. This assumption was also wrong. The *Bloomberg* decision's references to "execution action" refer to information in the reports sought by the FOIA requester. As described in *Bloomberg*, "[t]he only information sought is a summary report of actions that were taken by the government," including "executive action by granting the loan." *Bloomberg*, 601 F.3d at 149. Where *Bloomberg* stated that the government must disclose information about its executive actions, it was discussing information about the loans contained in the reports, such as the fact of the government

6

having granted the loans.[1]  Contrary to *Detention Watch*'s reading of the case, *Bloomberg* did not consider the fact that the government executed a contract in its "obtained from a person" analysis, nor would it have made sense for it to do so, because executed loan agreements were not at issue in the case.

Accordingly, *Detention Watch*'s analysis and resulting conclusion based on *Bloomberg* is flawed, and the Court should decline SELC's invitation to become the first district court (aside from the *Detention Watch* court itself) to adopt an inflexible rule that Exemption 4 can never apply to information in an executed government contract.  Indeed, such a holding would send a shockwave through the federal government contracting community.  Government contracts frequently include highly sensitive technical or financial information submitted by contractors; if such information was automatically subject to disclosure under Exemption 4 simply because it appears in a fully executed government contract, many parties would be unwilling to do business with the government, thereby depriving the government of competitive and innovative solutions. For example, contractors and agencies often negotiate precise technical and financial terms that are required to ensure that the contractor meets the needs of the agency, but that also reveal the proprietary processes or strategies the contractor undertakes in providing its solution to the customer.  *See, e.g.*, *Gardiner, Kamya & Assocs., P.C. v. Jackson*, 369 F.3d 1318, 1320 (Fed. Cir. 2004) (noting that "contract work requirements, delivery schedule, funding arrangements, and travel requirements" and "labor categories and corresponding hourly pay rates" would be negotiated for incorporation into a government contract).  Similarly, government contracts often incorporate the technical and price proposals submitted by the contractor, which typically include

---

[1] Another court has read *Bloomberg* similarly (and correctly), analogizing "the fact that a petition was granted or denied" to the information at issue in *Bloomberg*.  *See Renewable Fuels Ass'n v. U.S. Envtl. Prot. Agency*, 519 F. Supp. 3d 1, 9 (D.D.C. 2021).

7

highly proprietary information regarding the contractor's technology, processes, and internal cost data. *See, e.g.*, *Rice Sys., Inc. v. United States*, 62 Fed. Cl. 608, 611 (2004) (noting that the government contract at issue incorporated the plaintiff's technical proposal into the contract, which included "detailed technical content" for project to "design, fabricate, test and deliver a low cost, compact, three axis accelerometer to measure drag cross winds on satellites"); *MCI WorldCom Commc'ns, Inc. v. United States*, 58 Fed. Cl. 287, 289 (2003) (noting that government contract at issue "incorporated MCI's Price Proposal by reference" and "also incorporated plaintiff's offer of year-end percentage discounts"). Under SELC's formulation of the "obtained from a person" requirement, such information would suddenly become available to the entire competitive industry just because both parties executed a contract including such information. There is no reasonable basis to conclude that Congress intended FOIA to operate in such a fashion, as such an outcome would undermine the very purpose of Exemption 4 to keep commercial or financial information provided to the government private. *See Argus Leader*, 139 S. Ct. at 2366 ("[W]hen Congress enacted FOIA it sought a 'workable balance' between disclosure and other governmental interests—interests that may include providing private parties with sufficient assurances about the treatment of their proprietary information so they will cooperate in federal programs and supply the government with information vital to its work.").

Contrary to this reality, and based on the erroneous reasoning of *Detention Watch*, SELC strays from its legal argument to advocate for a policy that information in government contracts should always be disclosed publicly, citing several cases that do not even address the "obtained from a person" standard. *See* SELC Resp. at 4-6. To the extent SELC is relying on an overarching FOIA policy and not its "obtained from a person" argument to state that government contract information should not be withheld from the public, this cuts against the history of information in

8

government contracts lawfully being withheld under FOIA, including information regarding payments made by the government. *See, e.g.*, *Canadian Com. Corp. v. Dep't of Air Force*, 514 F.3d 37, 43 (D.C. Cir. 2008) (finding that Exemption 4 protects contractor line-item pricing to be paid by the government contained in a government contract); *McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 306-07 (D.C. Cir. 1999) (same); *Northrop Grumman Sys. Corp. v. NASA*, 346 F. Supp. 3d 109, 121 (D.D.C. 2018) (finding that Exemption 4 protects tables in a government contract containing contractor rates to be paid by the government); *Essex Electro Eng'rs, Inc. v. U.S. Sec'y of Army*, 686 F. Supp 2d 91, 95 (D.D.C. 2010) (finding that Exemption 4 protects contractor unit pricing to be paid by the government contained in a government contract).

Further, the other case law on which SELC relies (in addition to *Detention Watch* which is addressed above) does not even support the position that government contract information should be disclosed under FOIA. At the outset, two citations are to concurrences in which the majority decisions held that information from a third party should in fact be withheld from disclosure under FOIA Exemption 4—including one decision involving information in a government contract. *See Argus Leader*, 139 S. Ct. at 2366 (majority opinion holding that contested information was confidential, thus qualifying it for protection under Exemption 4); *Canadian Com. Corp.*, 514 F.3d at 43 (majority opinion finding that Exemption 4 protects contractor line-item pricing contained in a government contract). SELC selectively quotes another case to suggest that a contractor would not be harmed by the release of contract information, but that case actually and ultimately held that information in a government contract *was* protected under Exemption 4. *See McDonnell Douglas Corp.*, 180 F.3d at 307 (finding that Exemption 4 protects contractor line-item pricing contained in a government contract). Lastly, SELC cites cases that released information because the agency failed to prove that the information was confidential under the pre-*Argus Leader*

9

confidentiality standard, which is no longer good law. *Compare Ctr. for Pub. Integrity v. Dep't of Energy*, 191 F. Supp. 2d 187, 189-90, 194-95 (D.D.C. 2002) (finding information not confidential under Exemption 4 because its release would not cause competitive harm or impair the government's future contracting ability), *and Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin.*, 559 F. Supp. 4, 5 (D.D.C. 1981) (same), *with Argus Leader*, 139 S. Ct. at 2366 (now requiring only that information be "both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy" to be confidential under Exemption 4). This leaves SELC without support for what is effectively a policy position.

C.    **Applying the Correct "Obtained From a Person" Standard, the Undisputed Facts of This Matter Make Clear That the Information at Issue in the Ridgeline Precedent Agreement Was Obtained From a Person.**

The Declaration of Anne N. Moore (Dkt. No. 44-1) provides facts, undisputed by SELC, that the information sought by SELC was provided to TVA by East Tennessee.[2]  The declaration further provides facts, also undisputed by SELC, that changes by TVA to the East Tennessee-submitted information were either minimal or non-existent.[3]  As previously argued to the Court, under the correct legal standard, these facts sufficiently qualify the disputed provisions of the Ridgeline Precedent Agreement as being "obtained from a person," because the provisions in the

---

[2]  Ms. Moore's declaration also provides uncontroverted evidence that the commercial and financial information sought by SELC is customarily and actually treated as private by East Tennessee, and that it was provided to the government under an assurance of privacy, thereby qualifying the information as "confidential" under the Supreme Court's test in *Argus Leader.  See Argus Leader*, 139 S. Ct. at 2366.  SELC has provided no legal argument or evidence disputing these facts in its Response.

[3]  Although not relevant to the "obtained from a person" analysis, SELC is incorrect in characterizing the negotiations between East Tennessee and TVA as lasting 20 months.  As provided in the declaration, East Tennessee provided the first Ridgeline Precedent Agreement draft, thus starting negotiations, in January 2021.  *See* Decl. of Anne N. Moore ("Moore Decl.") ¶ 17.  The time frame from January 2021 to execution of the Ridgeline Precedent Agreement is accordingly 8 months.

10

final document were merely repeated verbatim or slightly modified from what East Tennessee initially provided TVA. *See* E. Tenn. Memo. at 18-19.

Despite SELC's attempt to argue otherwise (*see* SELC Resp. at 2), the language in the Ridgeline Precedent Agreement about the contract being prepared through "joint efforts" does not mean that the specific information at issue was not obtained from a person. No cases analyzing whether information in jointly-prepared or agency-authored documents was "obtained from a person" have relied on the language of those documents themselves; instead, they have considered the actions of the parties and details of their interactions. *See, e.g.*, *S. All. for Clean Energy*, 853 F. Supp. 2d at 70 (ordering agency to provide information to explain the specific negotiations of the parties in devising term sheets to determine if the "information is only a minimally modified version of information that originally came from the Applicants"); *Public Citizen*, 209 F. Supp. 2d at 44-45 (considering the facts that the licensee provided information to and negotiated with the agency). These cases considered the facts surrounding the negotiations of the parties for good reason, because as explained previously, the "joint efforts" language is not intended to provide an accurate or complete history of the parties' interactions. Instead, it is standard language included in nearly every commercial contract to address contract ambiguity and prevent the operation of the doctrine of *contra proferentem*. *See* E. Tenn. Memo. at 19 n.3. This is apparent in the full, and not selectively quoted, text of Section 17(C) of the Ridgeline Precedent Agreement:

> (C) Each and every provision of this Precedent Agreement shall be considered as prepared through the joint efforts of the Parties and shall not be construed against either Party as a result of the preparation or drafting thereof. It is agreed that no consideration shall be given or presumption made on the basis of who drafted this Precedent Agreement or any specific provision hereof.

Indeed, the second sentence of Section 17(C) expressly recognizes that one party may have drafted specific provisions of the agreement, but indicates the parties' agreement that no "consideration"

or "presumption" shall attach to that fact for purposes of contract interpretation. Further, even if this language were somehow relevant to the FOIA analysis (which it is not), "joint efforts" can, and here does, encompass actions that would still be considered "obtained from a person." "Joint efforts" logically can mean a process where one party submits draft provisions, and the other reviews and agrees to those provisions without change or with minimal alteration—such as the process East Tennessee and TVA undertook for the Ridgeline Precedent Agreement provisions at issue in this litigation. This process is reasonably encompassed by the words "joint efforts," and such joint efforts would qualify as "obtained from a person" under Exemption 4.

Ultimately, before the Court are detailed and undisputed facts demonstrating how East Tennessee submitted information to TVA and how TVA either accepted or minimally edited such information before the parties executed the Ridgeline Precedent Agreement. *See* Moore Decl. ¶¶ 24-26, 29-31, 35-37, 41-43. Given these facts, and under the correct legal standard, the information at issue in the Ridgeline Precedent Agreement was "obtained from a person," meaning that it satisfies the only disputed requirement for protection under Exemption 4.

## II. TVA Properly Withheld East Tennessee's Information in the Ridgeline Precedent Agreement in Accordance With the FIA's Requirements.

As previously stated, there are two ways an agency's withholding of information from disclosure can be justified under the FIA: by showing foreseeable harm to a FOIA-protected interest, or if disclosure is prohibited by law. *See* E. Tenn. Memo. at 14-15. Although the Court need only find that one of these two requirements was satisfied, TVA's withholding of the disputed provisions of the Ridgeline Precedent Agreement satisfies both requirements.

12

**A.** **Because the disputed information in the Ridgeline Precedent Agreement is protected under Exemption 4, disclosure of such information is prohibited by law under the co-extensive Trade Secrets Act.**

As previously explained, Exemption 4 is co-extensive with the Trade Secrets Act, 18 U.S.C. § 1905,[4] and the plain language of the Trade Secrets Act prohibits disclosure of the information it protects. *See* E. Tenn. Memo at 23; *see also Canadian Comm. Corp.*, 514 F.3d at 39 (finding Exemption 4 and the Trade Secrets Act to be "co-extensive" and that "the Trade Secrets Act requires each agency to withhold any information it may withhold under Exemption 4 of the FOIA" (citation omitted)). Thus, if the information in the Ridgeline Precedent Agreement is protected under Exemption 4—and it is, for the reasons described above—then disclosure is prohibited by law under the Trade Secrets Act, and withholding is justified under the FIA's "prohibited by law" requirement. This argument is not circular. It is instead the logical outcome of a combined FOIA Exemption 4 and FIA analysis, because, as SELC argues, if a FOIA exemption applies, then an agency must also meet a requirement of the FIA to lawfully withhold the information. SELC's assertion that the Trade Secrets Act does not provide a separate basis for withholding information is irrelevant. *See* SELC Resp. at 13. What matters is that the Trade Secrets Act prohibits the release of information that qualifies for protection under Exemption 4, thereby satisfying the FIA. SELC likely now realizes that the FIA is no bar to the withholding of information protected under Exemption 4, because SELC fails to engage with this reality of Exemption 4 and the Trade Secrets Act being co-extensive and what it means for application of the FIA. Instead SELC's argument is entirely reliant on Exemption 4 not applying, citing case law in which the Trade Secrets Act did not apply because Exemption 4 did not apply. *See id.* But here, Exemption 4 does apply, and thus so does the Trade Secrets Act, meaning that disclosure of

---

[4] SELC itself has now twice conceded that Exemption 4 is co-extensive with the Trade Secrets Act. *See* SELC Resp. at 13; SELC Mem. in Supp. of Mot. for Summ. J. (Dkt. No. 26) at 7 n.2.

13

information in the Ridgeline Precedent Agreement is prohibited by law and meets that requirement of the FIA.

**B.** **Even if considering SELC's formulation of the FIA's foreseeable harm requirement, East Tennessee has demonstrated that it would be competitively harmed by the release of information in the Ridgeline Precedent Agreement.**

Even if this Court endeavors to consider the FIA's foreseeable harm requirement (which is not necessary here in light of the satisfying of the FIA's "prohibited by law" requirement), SELC assumes that the harm must be competitive harm to the submitter of the information. *See* SELC Resp. at 14-17. As previously described, this is not the only FOIA-protected interest that would be harmed by the disclosure of information protected under Exemption 4. *See* E. Tenn. Memo. at 23. But even assuming that avoiding competitive harm to the submitter of information is the appropriate harm to consider, East Tennessee has demonstrated that it would be competitively harmed by the release of the disputed information in the Ridgeline Precedent Agreement.[5]

As previously explained, the declaration of Anne N. Moore not only describes precedent agreements in general as revealing the "playbook" of pipeline companies, but it also details how release of each provision at issue in this case would cause competitive harm to East Tennessee. *See* E. Tenn. Memo. at 17, 23-24. The information in the provisions reflects East Tennessee's project development and risk allocation strategies that make East Tennessee competitive in its industry, and its competitors could foreseeably usurp such strategies if the information is released, thus foreseeably harming East Tennessee's competitive standing. *See* Moore Decl. ¶¶ 7, 10, 27,

---

[5] Additionally, SELC's competitive harm argument relies entirely on cases that applied the pre-*Argus Leader* "substantial competitive harm" requirement. *See* SELC Resp. at 16-17. This requirement for "substantial competitive harm" has since been abrogated by *Argus Leader*. Even if the FIA requires a showing of competitive harm, the FIA makes no reference to "substantial" harm akin to the pre-*Argus Leader* standard; instead, the FIA references only harm that an "agency reasonably foresees" to a FOIA-protected interest. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I). The evidence of harm that East Tennessee has provided to the Court is, at the very least, foreseeable.

32-33, 38, 44-45.  Additionally, the information in the provisions describes obligations and commitments not typically offered to customers, including terms (or concepts) developed specifically for TVA and the Ridgeline Expansion Project.  If this information is released, future customers could foreseeably demand such terms for their own agreements with East Tennessee, thus foreseeably harming East Tennessee's negotiation position with those customers.  *See* Moore Decl. ¶¶ 9-11, 27, 32-33, 38-39.  As provided with TVA's Declaration of Julia Denise Smith (Dkt. No. 47), East Tennessee also previously submitted a letter to TVA explaining how it would be competitively harmed by the release of information in the Ridgeline Precedent Agreement.  *See* Decl. of Julia Denise Smith, Ex. 3 (Dkt. No. 47-3).  Further, a court's consideration of foreseeable harm is not conducted "in a vacuum," with the Second Circuit applying common sense to a foreseeable competitive harm analysis to acknowledge that a business engaged in a competitive industry "would be foreseeably harmed by disclosure of information it developed and gathered," that its "competitors would benefit from disclosure," and that "a benefit to competitors would necessarily be a detriment causing harm to [the business]."  *Seife v. U.S. Food & Drug Admin.*, No. 20-cv-4072, 2022 WL 3130147, at *9 (2d Cir. Aug. 5, 2022).

SELC's uninformed opinion that release of information in the Ridgeline Precedent Agreement would not cause competitive harm to East Tennessee does not negate the evidence of foreseeable competitive harm provided to the Court.  SELC is not engaged in the same business and industry as East Tennessee and has no basis itself to claim what information, if released, would or would not be competitively harmful to East Tennessee.  Indeed, SELC has provided no evidence disputing the descriptions of competitive harm in East Tennessee's sworn declaration before the Court.  Instead, it relies on its own self-serving opinion that the declaration is "not believable."  SELC Resp. at 17.  This is not a sufficient basis to rebut sworn evidence of foreseeable competitive

15

harm under the FIA. *See Seife*, 2022 WL 3130147, at *9 (finding foreseeable harm to the submitter's commercial or financial interests under the FIA over the FOIA requester's objection where the requester "failed to present any evidence that meaningfully controverts Defendants' showing of foreseeable harm").

## CONCLUSION

For the foregoing reasons, East Tennessee respectfully requests that the Court enter summary judgment in favor of East Tennessee and TVA, and against SELC.

Respectfully submitted,

VINSON & ELKINS LLP

Dated: August 19, 2022

s/ Jamie F. Tabb
Jamie F. Tabb
Admitted *pro hac vice*
Virginia State Bar No. 73464
District of Columbia Bar No. 500770
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: (202) 639-6773
Fax: (202) 879-8873
Email: jtabb@velaw.com

*Counsel for Intervenor East Tennessee Natural Gas, LLC*

16